UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN SMITH, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>CITY OF OAKLAND,<br><br>          Defendant. | Case No. 19-cv-05398-JST<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 20 |

Before the Court is Defendant City of Oakland's motion to dismiss. ECF No. 20. The Court will deny the motion.

## I.     BACKGROUND

Plaintiffs Ian Smith, Sunday Parker, and Mitch Jeserich are disabled renters in Oakland, California. Complaint ("Compl."), ECF No. 1 ¶ 1. They have sued the City of Oakland on behalf of themselves "and other Oakland renters with mobility disabilities who need accessible housing," alleging that the City's "Rent Adjustment Program" violates the Americans with Disabilities Act ("ADA") and the California Disabled Persons Act. *Id.* ¶¶ 1-2.

### A.     The Rent Adjustment Program

Article I, Chapter 8.22 of the Oakland Municipal Code establishes a "Residential Rent Adjustment Program" ("RAP"), colloquially known as rent control. ECF No. 21 at 8.[1] This chapter provides:

---

[1] Pursuant to Federal Rule of Evidence 201, the City has filed an unopposed motion for judicial notice of Article I, Chapter 8.22 of the Oakland Municipal Code, City of Oakland Ordinance No. 10402 C.M.S., and California Assembly Bill No. 1482. ECF No. 21. The Court grants the request. *See Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1153 n.3 (9th Cir. 2017) ("The Court may take judicial notice of compacts, statutes, and regulations not included in the plaintiff's complaint.").

> Among the purposes of this Chapter are providing relief to residential tenants in Oakland by limiting rent increases for existing tenants; encouraging rehabilitation of rental units, encouraging investment in new residential rental property in the city; reducing the financial incentives to rental property owners who terminate tenancies under California Civil Code Section 1946 ('Section 1946') or where rental units are vacated on other grounds under state law Civil Code Sec. 1954.50, et seq. ("Costa-Hawkins") that permit the city to regulate initial rents to new tenants, and allowing efficient rental property owners the opportunity for both a fair return on their property and rental income sufficient to cover the increasing cost of repairs, maintenance, insurance, employee services, additional amenities, and other costs of operation.

*Id.* The RAP governs when and how Oakland landlords may increase rents on residential units. Among other restrictions, landlords may only increase rents on "continuously occupied covered units" once every twelve months, by no more than a set percentage based on the consumer price index ("CPI"). *Id.* at 14-16. Plaintiffs allege that the current allowable increase is 3.5 percent. Compl. ¶ 3. When a tenant vacates a unit, the landlord is permitted to increase the rent to market rate, subject to certain restrictions. ECF No. 21 at 18-19. The RAP also establishes a board to implement the program, *id.* at 12-13, requires notice of the program when a lease is signed, *id.* at 13-14, outlines procedures for adjudicating disputes arising out of the program, *id.* at 19-23, and requires annual reporting on the program to the City Council, *id.* at 25-26.

Certain residential units are exempt from the RAP, including those that "were newly constructed and received a certificate of occupancy on or after January 1, 1983." *Id.* at 11. Plaintiffs allege that this exemption is "reinforced, at the state level, by the Costa-Hawkins Rental Housing Act, which prohibits a local jurisdiction from regulating rents of any unit that 'has already been exempt from the residential rent control ordinance of a public entity on or before February 1, 1995, pursuant to a local exemption for newly constructed units.'" Compl. ¶ 40 (citing Cal. Civ. Code § 1954.52(a)(2)).

Plaintiffs allege that more than 60 percent of the City's private rental housing is covered by the RAP. Compl. ¶ 3. The RAP makes no reference to disabled tenants or accessibility standards. ECF No. 21 at 8-26.

### B. Factual Background

For the purposes of this motion to dismiss, the Court adopts the following factual

allegations from Plaintiffs' complaint. Since the mid-1980s, various laws and regulations have mandated that at least some newly constructed private rental units in California be handicap-accessible. Compl. ¶ 7. This means that the units must provide, among other features, a stair-free route into and through the unit; doorways that are wide enough for wheelchairs; light switches and outlets that are reachable from a wheelchair; reinforced bathroom walls to allow a tenant to install grab bars; and sufficient space in the kitchen and bathroom to maneuver a wheelchair. *Id.* ¶¶ 7. None of these laws or regulations went into effect until after January 1, 1983, the cut-off date for the RAP. *Id.* As a result, "all or nearly all of Oakland's accessible rental units" are not covered by the RAP. *Id.* ¶ 6.

Plaintiffs Ian Smith and Sunday Parker both use power wheelchairs. *Id.* ¶¶ 25-26. For this reason, they must live in accessible housing. *Id.* ¶ 9. Smith and Parker thus "have no choice but to live in accessible rental units that were built after the Rent Adjustment Program's current cutoff." *Id.* As a result, "they are excluded from the City's Program entirely, and from the protection against rising rents that nondisabled Oakland tenants have the opportunity to enjoy." *Id.* Since moving to his accessible apartment in 2012, Smith has seen his rent increase by more than 70 percent. *Id.* ¶ 10. Since moving to Oakland in 2014, Parker has "repeatedly been forced to find new housing because the accessible apartment she was living in became unaffordable" and must live with a roommate "to offset the high and ever-rising cost of living in [an] accessible apartment that is not covered by the City's program." *Id.* ¶ 12.

Plaintiff Mitch Jeserich uses a manual wheelchair. *Id.* ¶ 27. Because he currently "has enough strength, flexibility, and mobility to live in an inaccessible" unit, Jeserich rents an inaccessible apartment covered by the RAP. *Id.* However, he is not able to bring his wheelchair into the bathroom, fully access his refrigerator, or easily reach "outlets, faucets, and other features of his apartment." *Id.* He chooses to "'make do' with [an] inaccessible but rent-stabilized apartment[], even if doing so means struggling every day to do simple things like entering and exiting [his] home, using the bathroom, cooking a meal, or turning on the lights." *Id.* ¶ 13.

On June 6, 2019, Plaintiffs mailed the City a letter "requesting that it extend the January 1, 1983, cutoff date for its Rent Adjustment Program or otherwise reasonably modify its Program,

3

such that Plaintiffs and other people with disabilities who need accessible housing would have the same meaningful opportunity to live in rent-stabilized housing that the City's nondisabled renters currently enjoy." *Id.* ¶ 92. The City has not done so. *Id.*

Plaintiffs make their allegations in the context of a "severe housing affordability crisis" in Oakland. *Id.* ¶ 29 (footnote omitted). "Average market-rate rents in Oakland have almost doubled over the past decade," making the City "the sixth most expensive rental market in the United States." *Id.* Oakland also has a "'much greater' proportion of people with disabilities than the country as a whole." *Id.* ¶ 32.

### C. Procedural Background

Plaintiffs filed this class action complaint on August 28, 2019. Compl. They allege violations of Title II of the ADA, 42 U.S.C. §§ 12132, *et seq.*, and an accompanying regulation, 28 C.F.R. § 35.130(b)(7)(i), *id.* ¶¶ 79-95, as well as a violation of the California Disabled Persons Act ("CDPA"), Cal. Civ. Code §§ 54-54.3, *id.* ¶¶ 96-102.[2] They seek class certification, declaratory relief, attorney's fees and costs, and "[a]n order requiring the City of Oakland to bring its Rent Adjustment Program into compliance with state and federal law, such that people with disabilities who need accessible housing have a meaningful and equal opportunity to access the same Rent Adjustment Program benefits that the city affords to its nondisabled renters, on the same terms, and without having to endure the hardship of life in an inaccessible unit as a condition of coverage." *Id.* at 20-21.

The City moved to dismiss the complaint on October 29, 2019. ECF No. 20. Plaintiffs filed an opposition on November 19, 2019, ECF No. 23, and the City filed a reply on December 3, 2019, ECF No. 25. The Court held a hearing on the motion on December 18, 2019.

---

[2] Plaintiffs' complaint includes a third cause of action for "declaratory relief." Compl. ¶¶ 103-105. The Court construes this claim as part of Plaintiffs' prayer for relief rather than a distinct cause of action. "A claim for declaratory relief may be unnecessary where an adequate remedy exists under some other cause of action." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 889 (N.D. Cal. 2018) (internal quotation and citation omitted). Plaintiffs' first and second causes of action already seek this relief. ECF No. 1 ¶¶ 95 ("Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to declaratory and injunctive relief."), 101 ("Under the CDPA, Plaintiffs are entitled to declaratory and injunctive relief.").

## II.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because this case arises under federal law.  *See* 42 U.S.C. §§ 12132, *et seq.*  Though Oakland challenges Plaintiffs' standing, the Court has jurisdiction to determine its own jurisdiction.  *See Special Invs., Inc. v. Aero Air, Inc.*, 360 F.3d 989, 992 (9th Cir. 2004).

## III.  LEGAL STANDARD

### A.  Rule 12(b)(1)

If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Rule 12(b)(1).  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  Where, as here, the defendant makes a facial attack, the court assumes that the complaint's allegations are true and draws all reasonable inferences in the plaintiff's favor.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

### B.  Rule 12(b)(6)

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quotation marks and citation omitted).  In determining whether a plaintiff has met this plausibility

5

1  standard, the Court must "accept all factual allegations in the complaint as true and construe the
2  pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th
3  Cir. 2005).

**IV.  DISCUSSION**

The City argues that Plaintiffs have not stated a claim under the ADA and that they do not have Article III standing. ECF No. 20 at 10, 18. Because the City's standing argument is jurisdictional, the Court addresses it first.

**A.  Article III Standing**

**1.  Legal Standard**

Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Because "[t]he party invoking federal jurisdiction bears the burden of establishing these elements," they are "an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. Accordingly, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted).

Courts "take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

**2.  Discussion**

The City first argues that Plaintiffs have not alleged a concrete injury by claiming "that

6

either their rent is higher than they would prefer, or their unit is less accessible than they would prefer." ECF No. 20 at 18. The City argues that "Plaintiffs are able to rent a dwelling unit in Oakland" and that any allegation that, "were rent control modified, their dwelling situation might improve, is simply conjecture." *Id.* at 19 (emphasis omitted).

This argument mischaracterizes the alleged injury. Plaintiffs allege that they are denied equal opportunity to participate in and benefit from the RAP. A regulation discriminates under the ADA when "its enforcement burdens [the disabled] in a manner different and greater than it burdens others" and when this enforcement "effectively denies [the disabled] meaningful access to state services, programs, and activities while such services, programs, and activities remain open and easily accessible by others." *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996). This is precisely the kind of discrimination Plaintiffs allege. *See* Compl. ¶ 50 ("By operating a Rent Adjustment Program that covers over 60% of Oakland's rental housing but that exempts all or nearly all of its accessible rental units, the City discriminates against Plaintiffs and other people with mobility disabilities who need accessible housing, and it denies them meaningful access to the same benefit that the City's nondisabled renters enjoy.").

Plaintiffs are not required to identify the specific apartments they could move into to demonstrate standing – it is the program's accessibility that matters. *See Armstrong v. Davis*, 275 F.3d 849, 857, 864 (9th Cir. 2001), *abrogated on other grounds*, *Johnson v. California*, 543 U.S. 499 (2005) (holding that "discriminatory treatment on account of . . . disabilit[y] . . . is sufficient to constitute an actual injury" where disabled plaintiffs were subject to parole process that "depended to a great extent on written forms" and "disabled prisoners and parolees were provided with inadequate accommodations to help them understand the content of those forms"); *Davis v. Astrue*, 874 F. Supp. 2d 856, 864 (N.D. Cal. 2012) ("If Plaintiffs are subject to discrimination in the process and denied equal access as required under the Rehabilitation Act, they have standing to assert a Rehabilitation Act claim.").[3] Also, given the allegation that their accommodations are

---

[3] Analysis of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, is applicable to the ADA. *See Crowder*, 81 F.3d at 1484 ("Section 12133 of the ADA provides that '[t]he remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights' applicable to section 12132 discrimination claims.") (quoting 42 U.S.C. § 12133); *Collings*

7

more expensive or less accessible than they could or should be, the fact that Plaintiffs are currently renting apartments in Oakland is irrelevant. *See Davis*, 874 F. Supp. 2d at 864 ("The fact that the plaintiff in *Tennessee v. Lane* ultimately made it to the courtroom by crawling up the courthouse steps did not negate his claim of unequal access.") (citing *Tennessee v. Lane*, 541 U.S. 509 (2004)). Plaintiffs have sufficiently alleged a concrete injury in fact in the form of discriminatory access to the RAP.

The City next argues that Plaintiffs' alleged injuries are "not traceable to the conduct of the City" because the City "cannot control the supply and demand of its rental housing market." ECF No. 20 at 19. This argument also fails. For one thing, it ignores the fact that the City *is* controlling a key aspect of the housing market – price, for a subset of its housing stock. The argument also mischaracterizes Plaintiffs' alleged injury, which focuses on discriminatory access to a government program, not the underlying housing itself. Because the City passed and implements the RAP, Plaintiffs' alleged injury of unequal access to this program is fairly traceable to the City's conduct.[4]

Lastly, the City argues that Plaintiffs' injury is not redressable because even if the City were "to require the Program to apply to newer units, there is no plausible allegation that, amidst a competitive market, Plaintiffs could then find such a unit at an 'affordable' price, with sufficient accessibility features." ECF No. 20 at 19. Redressability requires a plaintiff to "show that 'a favorable decision will relieve' her injuries." *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017) (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)). As discussed, the injury alleged here is unequal opportunity to participate in and benefit from the RAP. The remedy Plaintiffs seek – an order requiring the City to bring the RAP into compliance with federal and state disability law such that disabled persons have meaningful access to the

---

*v. Longview Fibre Co.*, 63 F.3d 828, 832 n.3 (9th Cir. 1995) ("The legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act be incorporated by reference when interpreting the ADA.").

[4] The City cites *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 459 (9th Cir. 1977) for its traceability argument. That case held that consumers did not have Administrative Procedure Act standing to challenge the source of municipal water and power and is thus inapposite to Oakland's argument regarding ADA standing.

8

program, *see* Compl. at 20-21 – would redress this injury. *See Civil Rights Educ. & Enf't Ctr.*, 867 F.3d at 1102 (finding redressability where plaintiffs "requested that the court fashion an injunction mandating that [defendant] hotels comply with the ADA").

Plaintiffs have thus sufficiently alleged Article III standing.

### B. ADA Claims

Defendants argue that Plaintiffs have failed to state a claim under the ADA because (1) they "have equal access to the benefits of the City's Rent Adjustment Program," ECF No. 20 at 10; (2) "Plaintiffs' alleged inability to find affordable, accessible housing is not by reason of disability," *id.* at 14; and (3) no reasonable modification exists nor is one necessary to avoid discrimination, and "what Plaintiffs seek is a fundamental alteration of the City's Rent Adjustment Program," *id.* at 15. Because Plaintiffs' CDPA claim is contingent on their ADA claim, *see* Compl. ¶¶ 97-98; Cal. Civ. Code § 54.1(d) (stating that "[a] violation of the right of an individual under the Americans with Disabilities Act . . . also constitutes a violation of" the CDPA), the City argues that the CDPA claim must also be dismissed, ECF No. 20 at 18.

The Court first notes that Plaintiffs make two ADA-based claims, though they label them as a single cause of action, *see* Compl. ¶¶ 79-95: (1) violation of Title II of the ADA, 42 U.S.C. § 12132, and (2) a failure to make reasonable modifications as required by the ADA's implementing regulations, 28 C.F.R. § 35.130(b)(7)(i). *See McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004) ("[A] claim of discrimination based on a failure reasonably to accommodate is distinct from a claim of discrimination based on disparate impact.") (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 276-77 (2d Cir. 2003)).

Title II of the ADA proscribes that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim of disability discrimination under Title II, a plaintiff must allege four elements:

> (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was

> either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam). The City disputes the third and fourth elements of Plaintiffs' claim.

Additionally, the ADA's implementing regulations require public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). A "fundamental alteration" is one that would "compromise[] the essential nature of [the program] . . . ." *Alexander v. Choate*, 469 U.S. 287, 300 (1985) (quoting *Se. Cmty. College v. Davis*, 442 U.S. 397, 410 (1979)). "[T]he determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry." *Crowder*, 81 F.3d at 1486.

### 1. Denied Benefit

The City argues that, when the program at issue is properly defined, Plaintiffs have not alleged that they were excluded from participation in or denied the benefits of that program. ECF No. 20 at 10. It bases this argument on the Supreme Court's reasoning in *Alexander v. Choate*, 469 U.S. 287 (1985). *See* ECF No. 20 at 10-12.

In that case, the Court considered Tennessee's decision to reduce Medicaid coverage of inpatient hospital care from 20 to 14 days per year. *Alexander*, 469 U.S. at 289. Plaintiffs argued that the proposed reduction "would have a discriminatory effect on the handicapped," a higher proportion of whom required more than 14 days of in-patient care annually than non-handicapped patients. *Id.* at 289-90. They sued to enjoin the policy under Section 504 of the Rehabilitation Act. *Id.* at 290.[5]

The *Alexander* Court held that the policy did not effect cognizable discrimination under

---

[5] As noted above, courts apply the same analysis to claims brought under the Rehabilitation Act and the ADA. *See Crowder*, 81 F.3d at 1484; *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

10

Section 504 because it:

> is neutral on its face, is not alleged to rest on a discriminatory motive, and does not deny the handicapped access to or exclude them from the particular package of Medicaid services Tennessee has chosen to provide. The State has made the same benefit – 14 days of coverage – equally accessible to both handicapped and nonhandicapped persons, and the State is not required to assure the handicapped "adequate health care" by providing them with more coverage than the nonhandicapped.

469 U.S. at 309. Essential to this reasoning was the Court's definition of the benefit at issue:

> [T]he benefit provided through Medicaid is a particular package of health care services, such as 14 days of inpatient coverage. That package of services has the general aim of assuring that individuals will receive necessary medical care, but the benefit provided remains the individual services offered – not "adequate health care."

*Id.* at 303. However, the Court cautioned that "[t]he benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Id.* at 301; *see also id.* at 301 n.21 (citing with approval government's statement that "[a]ntidiscrimination legislation can obviously be emptied of meaning if every discriminatory policy is 'collapsed' into one's definition of what is the relevant benefit").

The City argues that the benefit at issue here is the regulation of "rent increases in private units built before 1983." ECF No. 20 at 11. Because "Plaintiffs are not excluded from the City's regulation of those units," the argument goes, they have not been excluded from or denied the benefits of the RAP. *Id.* The City characterizes Plaintiffs' claim as seeking "an additional benefit to disabled persons, in order to ensure not equal treatment, but equal results." *Id.* at 12.

Contrary to the City's claim, however, Plaintiffs allege that they *are* "excluded from the City's regulation of [pre-1983] units," *id.* at 11, because "every standard governing the accessibility of the City's private rental housing went into effect after [January 1, 1983] – thus leaving all or nearly all of Oakland's accessible rental units outside the Program's scope," Compl. ¶ 39. The City's insistence that "Plaintiffs have full access to" the RAP, ECF No. 25 at 2, amounts to an argument that a policy only violates Title II of the ADA when it facially

11

1  discriminates against the disabled. But the Supreme Court and the Ninth Circuit have repeatedly
2  held that a policy that is "facially neutral but may work to effectuate discrimination against
3  disabled persons" can violate the ADA. *Crowder*, 81 F.3d at 1483; *see also Alexander*, 469 U.S.
4  at 299 (holding that "§ 504 reaches at least some conduct that has an unjustifiable disparate impact
5  upon the handicapped").[6]

The problem with the City's definition of the benefit is that it is constructed "in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled." *Alexander*, 469 U.S. at 301. Key to *Alexander*'s holding was that the benefit at issue – 14 days of in-patient Medicaid coverage – was "equally accessible to both handicapped and nonhandicapped persons." 469 U.S. at 309. Here, Oakland "has chosen to provide" a "particular package of [services]," *id.* – regulation of rent increases on private housing units, but only as to a subset that is largely inaccessible to mobility-disabled renters. Plaintiffs allege that defining the benefit in that manner necessarily excludes or severely burdens them.

The City attempts to rely on three additional cases that also turn on the fact that the benefit at issue was not denied to disabled persons. In *Rodriguez v. City of New York*, 197 F.3d 611 (2d. Cir. 1999), New York's Medicaid program covered a set of in-home personal care services for disabled patients. A class of mentally disabled patients sued the city for not including safety monitoring services in this set, alleging that "the services provided are inadequate to meet their medical needs and to allow them to continue living in their homes." *Id.* at 614. The Second Circuit rejected this claim, noting that "[t]he ADA requires only that a particular service provided to some not be denied to disabled people." *Id.* at 618. Because "the services that New York provides to the mentally disabled are no different from those provided to the physically disabled

---

[6] Later in its motion, the City briefly argues that "Plaintiffs' major premise – that all rent-controlled units in Oakland are not accessible, and cannot be accessible, to persons with mobility disabilities – lacks plausibility." ECF No. 20 at 17. The City cites several federal and state regulations requiring landlords to permit reasonable modification of units constructed prior to March 13, 1991 and to "make reasonable accommodations to rules, policies, practices or services necessary to afford equal opportunity to use or enjoy a dwelling unit." *Id.* Accepting "all factual allegations in the complaint as true and constru[ing] the pleadings in the light most favorable" to Plaintiffs, however, *see Knievel*, 393 F.3d at 1072, the Court finds that Plaintiffs have plausibly alleged that all or nearly all of the units covered by the RAP are inaccessible. Whether the allegations are factually true must await a later stage of the proceedings.

12

. . . New York cannot have unlawfully discriminated against appellees by denying a benefit that it provides to no one." *Id.* By contrast, Oakland has chosen to provide a service to all renters that, in practice, is allegedly "denied to disabled people." *Id.* Oakland attempts to muddy the waters by framing Plaintiffs' claim as a request for an "additional benefit," ECF No. 20 at 12 – access to rent-controlled post-1983 housing – but Plaintiffs here have not in fact received the offered benefit: access to rent-controlled pre-1983 housing.

In *Does 1-5 v. Chandler*, 83 F.3d 1150, 1151-52 (9th Cir. 1996), Hawaii offered durationally unlimited general assistance benefits to people with dependent children, while limiting a separate category of benefits for disabled persons to no more than one year. The Ninth Circuit held that this discrepancy did not violate Title II because the aid to families and the aid to disabled persons were essentially two separate programs, and "[t]he ADA does not require equivalent benefits in different programs." *Id.* at 1155. The court noted "that Hawaii may have a benefit program aimed only at families with dependent children. Such a program would not violate the ADA as long as disabled people with children were not excluded from full participation in the program." *Id.* By contrast, Plaintiffs allege that Oakland's RAP program effectively excludes disabled persons from participation entirely.

Lastly, the City cites *Liberty Resources, Inc. v. Philadelphia Housing Authority ("PHA")*, 528 F. Supp. 2d 553 (E.D. Pa. 2007), an ADA and Rehabilitation Act challenge to Philadelphia's Section 8 housing voucher program. The Court first notes that this case was decided on summary judgment, with a factual record. Plaintiffs here must only allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Second, the *PHA* court defined the benefits at issue as a "package of services that provide assistance to voucher holders in locating affordable housing," including "inspection of premises for compliance with quality standards, training for landlords, a service representative who may be contacted for questions, weekly landlord briefings to educate landlords interested in participating in HCVP, a list of known available units, monthly housing fairs, and various other services." *PHA*, 528 F. Supp. 2d at 568. The court found that "[t]he record shows that mobility disabled voucher holders have successfully accessed" these services and noted that "[t]he crux of [plaintiff's] claim rests on the fact that

13

1  mobility disabled people are unable to locate and obtain accessible housing units because there are
2  so few available on the market." *Id.* at 568-69.  The court held that PHA had not violated the
3  ADA or the Rehabilitation Act because this claim rested on "the actions of private individuals,"
4  not unequal access to PHA's services.  *Id.* at 569-70.

Unlike in *PHA*, Plaintiffs' claim is premised on the actions of the City of Oakland, not private individuals.  While soaring housing costs and a lack of accessible private units may be attributable to outside forces, the City is responsible for choosing which units to include in its rent control program.  By choosing to regulate rent increases only on units that are not accessible, the City has allegedly denied Plaintiffs meaningful access to the benefit it has chosen to offer.  Unlike the disabled renters in *PHA*, who could take advantage of PHA's help in the housing search even if they were ultimately unable to secure affordable housing, Plaintiffs are allegedly unable to participate in the benefit offered by the City without incurring undue burden to their safety and wellbeing.

Plaintiffs have thus sufficiently alleged the third element of their ADA claim.

### 2. "By Reason of Disability"

The City argues that Plaintiffs have failed to state the fourth element of an ADA claim because their "alleged inability to find affordable, accessible housing is not by reason of disability."  ECF No. 20 at 14.  The City is surely correct that Plaintiffs' difficulties securing "affordable, accessible housing" are attributable to "market forces that impact affordability" as well as "accessibility requirements that do not apply to older buildings."  *Id.*  But, as discussed in the standing analysis, difficulty securing affordable, accessible housing is not the "exclusion, denial of benefits, or discrimination" that Plaintiffs allege violates the ADA.  *Thompson*, 295 F.3d at 895.  Rather, Plaintiffs allege that they are "uniquely excluded from" Oakland's RAP, Compl. at 11, because their mobility disabilities require them to live in accessible housing or "to endure the daily indignities, inconveniences, and potential dangers that living in an inaccessible unit inevitably entails," *id.* ¶ 15, and because the RAP excludes "all or nearly all of Oakland's accessible rental units," *id.* ¶ 6.

Where a city's facially neutral policy would "unduly burden disabled persons," that policy

14

discriminates "by reason of" disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *see also Crowder*, 81 F.3d at 1484 (120-day quarantine of all dogs entering Hawaii discriminated against blind plaintiffs "by reason of their disability" because "its enforcement burden[ed] visually-impaired persons in a manner different and greater than it burden[ed] others"). Plaintiffs have alleged that Oakland's RAP unduly burdens them because, as disabled individuals, they are not able to access the program or must do so at great cost. This is sufficient to allege discrimination "by reason of" disability.

The City's attempt to compare Plaintiffs' allegations to those in *Weinrich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976 (9th Cir. 1997) fails because it improperly frames the harm that Plaintiffs allege. In *Weinrich*, a public transit system's policy requiring disabled patrons to recertify their disabilities every three years in order to qualify for reduced fare discriminated against these patrons not "by reason of" their disability but based on their financial circumstances. *Id.* at 979. The City argues that, as in *Weinrich*, "Plaintiffs' alleged inability to obtain more affordable, accessible housing is a function of economics, specifically housing scarcity – not disability." ECF No. 20 at 14. However, as discussed above, Plaintiffs do not allege "inability to obtain more affordable, accessible housing" but rather exclusion from a municipal program that is available to non-disabled residents.

They have thus sufficiently alleged the fourth and final element of their ADA claim.[7]

### 3. Reasonable Modification

Plaintiffs allege that they requested that Oakland "extend the January 1, 1983, cutoff date for its Rent Adjustment Program or otherwise reasonably modify its Program," which Oakland has not done. Compl. ¶ 92. Plaintiffs argue that the City's obligation to make reasonable modifications under 28 C.F.R. § 35.130(b)(7)(i) "applies even if it would require the City to adopt a new Program exemption date that is inconsistent with state or local law, including California

---

[7] The City argues that Title II's "by reason of . . . disability" standard is "interchangeable" with Section 504's "solely by reason of . . . disability" standard. ECF No. 20 at 14; *compare* 42 U.S.C. § 12132 *with* 29 U.S.C. § 794. While not necessary to decide whether Plaintiffs have sufficiently alleged the fourth element of their ADA claim, the Court notes that the Ninth Circuit has explicitly rejected this approach. *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1048 (9th Cir. 2009) (adopting "motivating factor" standard for Title II liability).

15

Civil Code section 1954.52(a)(2), or any other provision of the Costa-Hawkins Rental Housing Act." Compl. ¶ 91. The City argues that Plaintiffs' reasonable modification claim fails because (1) no accommodation is necessary; (2) any accommodation would be unreasonable; and (3) any accommodation would fundamentally alter the RAP. ECF No. 20 at 16.

A modification is necessary if, "but for the modification," Plaintiffs would "effectively be excluded" from the benefit at issue. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004). But the ADA "guarantees the disabled more than mere access" to a public program or benefit – "it guarantees them 'full and equal enjoyment'" of that program or benefit. *Baughman v. Walt Disney World Co.*, 685 F.3d 1121 (9th Cir. 2012). The City argues that no modification is necessary because Plaintiffs Smith and Parker "live in accessible housing, which they are able to afford, even if rent is higher than they prefer," and Plaintiff Jeserich "is able to take advantage of the Rent Adjustment Program, though his unit lacks all of the accessible features he would prefer." ECF No. 20 at 16. This argument fails. Forgoing the RAP entirely, as Smith and Parker must do, or utilizing it at the cost of entering his bathroom on his hands and knees, as Jeserich must do, does not amount to "full and equal enjoyment" of the program. "After all, a paraplegic *can* enter a courthouse by dragging himself up the front steps." *Baughman*, 685 at 1121 (citing *Tennessee*, 541 U.S. at 513-14).

A modification is reasonable if it "seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002).[8] On summary judgment, the burden then shifts to the defendant to "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* at 402. On a motion to dismiss, however, the plaintiff need only allege that a modification is facially reasonable. *Id.* The City argues that Plaintiffs' suggested modification is unreasonable because "mandating lower rents for disabled individuals would fail the kind of reasonableness inquiry conducted in *Barnett*[, 535 U.S. 391]." ECF No. 20 at 16 (quoting *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1154 (9th Cir.

---

[8] *Barnett* concerns a claim under Title I of the ADA. However, the Ninth Circuit has held that the "reasonable accommodation" standard of Title I does not differ from the "reasonable modification" standard of Titles II and III and thus uses the terms "interchangeably." *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 n.26 (9th Cir. 1999).

16

United States District Court
Northern District of California

2003)).  In the case the City cites for this proposition, the Ninth Circuit makes the quoted observation briefly, non-definitively, and in dicta, with little context.  Moreover, rather than "mandating lower rents for disabled individuals," *Giebeler*, 343 F.3d at 1154, the modification Plaintiffs seek would extend a pre-existing rent control program to additional units that would be available to disabled and non-disabled renters alike.

The City also argues that "Plaintiffs' invitation to rewrite the Rent Adjustment Program would throw the Court into a political thicket of myriad housing regulations," which "defies the concept of a reasonable modification." *Id.* at 17.  What the City means by "political thicket" is unclear.  In any event, it is well established that the ADA's reasonable modification requirement may preempt state law.  *See Crowder*, 81 F.3d at 1485; *Mary Jo C. v. N.Y. State & Local Retirement Sys.*, 707 F.3d 144, 163 (2d Cir. 2013) (holding that "the ADA's reasonable modification requirement contemplates modification to state laws, thereby permitting preemption of inconsistent state laws, when necessary to effectuate Title II's reasonable modification provision"); *see also id.* at 164 (citing similar rules in the Seventh and Tenth Circuits).[9]  Accordingly, the possibility that a modification might preempt state law does not automatically render it unreasonable.

"Whether an accommodation fundamentally alters a service or facility is an affirmative defense" and "an intensively fact-based inquiry."  *Lentini*, 370 F.3d at 845 (quoting *Martin v. PGA Tour, Inc.*, 204 F.3d 994, 1001 (9th Cir. 2000)).  For this reason, courts typically resolve this question after findings of fact.  *See Crowder*, 81 F.3d at 1485-86; *Townsend v. Quasim*, 328 F.3d 511, 520 (9th Cir. 2003); *Hindel v. Husted*, 875 F.3d 344, 347 (6th Cir. 2017) ("Affirmative defenses to ADA claims such as this are typically fact-based and not capable of resolution on the basis of the pleadings alone."); *id.* (collecting cases from other circuits).  The Court thus declines to consider the City's fundamental alteration argument at this early point in the proceedings.

---

[9] In its reply brief, Oakland suggests that the Court certify the preemption question to the California Attorney General pursuant to 28 U.S.C § 2403(b) and Federal Rule of Civil Procedure 5.1. ECF No. 25 at 7 n.1.  Because these rules concern the *constitutionality* of a federal or state statute, which is not at issue here, and because the preemption question is not actually before the Court, it declines to do so.

For these reasons, Plaintiffs have sufficiently stated a claim under 28 C.F.R. § 35.130(b)(7)(i) for failure to make reasonable modifications.

## CONCLUSION

For the foregoing reasons, the Court denies the City's motion to dismiss.

**IT IS SO ORDERED.**

Dated:  April 2, 2020



_____
JON S. TIGAR
United States District Judge