UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN SMITH, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND,<br><br>    Defendant. | Case No. 19-cv-05398-JST<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>Re: ECF No. 52 |

Before the Court is Plaintiffs' motion for class certification. ECF No. 52. The Court will grant the motion.

## I. BACKGROUND

Plaintiffs Ian Smith and Mitch Jeserich are disabled renters in Oakland, California. Complaint ("Compl."), ECF No. 1 ¶ 1.[1] They have sued the City of Oakland on behalf of themselves "and other Oakland renters with mobility disabilities who need accessible housing," alleging that the City's "Rent Adjustment Program" violates the Americans with Disabilities Act ("ADA") and the California Disabled Persons Act ("CDPA"). *Id.* ¶¶ 1-2.

### A. The Rent Adjustment Program

Article I, Chapter 8.22 of the Oakland Municipal Code establishes a "Residential Rent Adjustment Program" ("RAP"), colloquially known as rent control. ECF No. 21 at 8.[2] The Court

---

[1] On February 21, 2020, Sunday Parker voluntarily dismissed her claims because she moved out of the state. ECF No. 32.

[2] Pursuant to Federal Rule of Evidence 201, the City has filed an unopposed motion for judicial notice of Chapter 8.22 of the Oakland Municipal Code. ECF No. 57. The Court grants the request. *See Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1153 n.3 (9th Cir. 2017) ("The Court may take judicial notice of compacts, statutes, and regulations not included in the plaintiff's complaint."). The City also asks the Court to take judicial notice of the City of Oakland's Access

summarized the RAP in its order denying the City's motion to dismiss. *See* ECF No. 38 at 1-2. In short, the RAP governs when and how Oakland landlords may increase rents on residential units. Certain residential units are exempt from the RAP, including those that "were newly constructed and received a certificate of occupancy on or after January 1, 1983." ECF No. 57-1 at 9. Plaintiffs allege that this exemption is "reinforced, at the state level, by the Costa-Hawkins Rental Housing Act, which prohibits a local jurisdiction from regulating rents of any unit that 'has already been exempt from the residential rent control ordinance of a public entity on or before February 1, 1995, pursuant to a local exemption for newly constructed units.'" Compl. ¶ 40 (citing Cal. Civ. Code § 1954.52(a)(2)).

Plaintiffs allege that more than 60 percent of the City's private rental housing is covered by the RAP. *Id.* ¶ 3. The RAP makes no reference to disabled tenants or accessibility standards. ECF No. 57-1 at 6-25.

### B.     Factual Background

Plaintiffs assert that since the mid-1980s, various laws and regulations have mandated that at least some newly constructed private rental units in California be accessible to people with mobility disabilities. Compl. ¶ 7. This means that the units must provide, among other features, a stair-free route into and through the unit; doorways that are wide enough for wheelchairs; light switches and outlets that are reachable from a wheelchair; reinforced bathroom walls to allow a tenant to install grab bars; and sufficient space in the kitchen and bathroom to maneuver a wheelchair. *Id.* None of these laws or regulations went into effect until after January 1, 1983, the cut-off date for the RAP. *Id.* As a result, Plaintiffs allege that "all or nearly all of Oakland's accessible rental units" are not covered by the RAP. *Id.* ¶ 6.

Plaintiff Ian Smith uses a power wheelchair. *Id.* ¶ 25. For this reason, he must live in accessible housing. *Id.* ¶ 9. Smith thus has "no choice but to live in accessible rental units that

---

Improvement (AIP) Grant Program Description, excerpts of the U.S. Department of Housing and Urban Development's Fair Housing Act Design Manual, and a City of Oakland Report of Residential Building Record for 1448 Madison Street, Oakland, California. ECF No. 57. Because the Court need not address those documents in its analysis, it does not consider these requests. For the same reason, the Court does not consider Plaintiffs' request for judicial notice, *see* ECF No. 53, or the City's objections to it, *see* ECF No. 54 at 11-12.

were built after the [RAP's] current cutoff." *Id.* As a result, he is "excluded from the City's Program entirely, and from the protection against rising rents that nondisabled Oakland tenants have the opportunity to enjoy." *Id.* Since moving to his accessible apartment in 2012, Smith has seen his rent increase by more than 70 percent. *Id.* ¶ 10.

Plaintiff Mitch Jeserich uses a manual wheelchair. *Id.* ¶ 27. Because he currently "has enough strength, flexibility, and mobility to live in an inaccessible" unit, Jeserich rents an inaccessible apartment covered by the RAP. *Id.* However, he is not able to bring his wheelchair into the bathroom, fully access his refrigerator, or easily reach "outlets, faucets, and other features of his apartment." *Id.* He chooses to "'make do' with [an] inaccessible but rent-stabilized apartment[], even if doing so means struggling every day to do simple things like entering and exiting [his] home, using the bathroom, cooking a meal, or turning on the lights." *Id.* ¶ 13.

On June 6, 2019, Plaintiffs mailed the City a letter "requesting that it extend the January 1, 1983, cutoff date for its Rent Adjustment Program or otherwise reasonably modify its Program, such that Plaintiffs and other people with disabilities who need accessible housing would have the same meaningful opportunity to live in rent-stabilized housing that the City's nondisabled renters currently enjoy." *Id.* ¶ 92. The City has not done so. *Id.*

Plaintiffs explain that they make their allegations in the context of a "severe housing affordability crisis" in Oakland. *Id.* ¶ 29 (footnote omitted). "Average market-rate rents in Oakland have almost doubled over the past decade," making the City "the sixth most expensive rental market in the United States." *Id.* (footnote omitted). Oakland also has a "'much greater' proportion of people with disabilities than the country as a whole." *Id.* ¶ 32 (footnote omitted).

### C. Procedural Background

Plaintiffs filed this class action complaint on August 28, 2019. Compl. They allege violations of Title II of the ADA, 42 U.S.C. §§ 12132, *et seq.*, and an accompanying regulation, 28 C.F.R. § 35.130(b)(7)(i), *id.* ¶¶ 79-95, as well as a violation of the CDPA, Cal. Civ. Code §§ 54-54.3, *id.* ¶¶ 96-102.[3] They seek class certification, declaratory relief, attorney's fees and costs, and

---

[3] Plaintiffs' complaint includes a third cause of action for "declaratory relief." Compl. ¶¶ 103-105. The Court construes this claim as part of Plaintiffs' prayer for relief rather than a distinct

3

1  "[a]n order requiring the City of Oakland to bring its Rent Adjustment Program into compliance
2  with state and federal law, such that people with disabilities who need accessible housing have a
3  meaningful and equal opportunity to access the same Rent Adjustment Program benefits that the
4  city affords to its nondisabled renters, on the same terms, and without having to endure the
5  hardship of life in an inaccessible unit as a condition of coverage." *Id.* at 20-21.

6  The City moved to dismiss the complaint on October 29, 2019. ECF No. 20. The Court
7  held a hearing, ECF No. 28, and denied the motion, ECF No. 38. Plaintiffs now move for
8  certification of a class of "all Oakland renters who have mobility disabilities and thus need
9  accessible rental units in the City of Oakland." ECF No. 52 at 8. The City opposes this motion,
10 ECF No. 54, and Plaintiffs have filed a reply, ECF No. 62. The Court held a hearing on the
11 motion on January 20, 2021.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## III. LEGAL STANDARD

Class certification under Rule 23 is a two-step process. First, a plaintiff must demonstrate that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) are met:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 546 U.S. 338, 351 (2011)).

Second, a plaintiff must also meet one of the requirements of Rule 23(b). Here, Plaintiffs invoke Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act

---

cause of action. *See* ECF No. 38 at 4 n.2.

4

on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. *See Wal-Mart Stores*, 564 U.S. at 350-51. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## IV. DISCUSSION

Plaintiffs seek certification of a class of "all Oakland renters who have mobility disabilities and thus need accessible rental units in the City of Oakland." ECF No. 52 at 8.

### A. Plaintiffs' Class Definition

The City first argues that Plaintiffs' motion for class certification should be denied because the proposed class definition is not clearly defined and "assumes a conclusion that all renters with a 'mobility disability' require an 'accessible unit.'" ECF No. 54 at 14; *id.* at 13-17. The City offers two potential sources for "the requirement of a clear class definition": (1) the common law requirement that a class be "clearly ascertainable," and (2) Rule 23(c)(1)(B)'s requirement that the "class action must define the class." *Id.* at 13-14.[4]

---

[4] The City also relies on a Tenth Circuit case for the position that a class definition is required to provide "identifying characteristics of the class essential to determining whether class-wide relief is appropriate" under Rule 23(b)(2). ECF No. 54 at 14 (quoting *Shook v. Bd. Of Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 612 (10th Cir. 2008)). However, the City does not make any argument about Rule 23(b)(2) or injunctive relief in its consideration of Plaintiffs' proposed class definition. *See* ECF No. 54 at 14-17. Moreover, in the City's discussion of Plaintiffs' requested injunction, it argues that the proposed class fails to satisfy the requirements of Rule 23(b)(2) because many putative class members "do not suffer the exclusion from rent control that Plaintiffs allege" and because the injunction would have a "substantial impact" on many persons not in the class *Id.* at 29. The City's arguments about the implications of who would and would not be affected by the requested injunction undermines their contention that Plaintiffs' class definition is not clear enough for the Court to determine whether class-wide relief is appropriate. The Court therefore rejects the City's implication that Plaintiffs' class definition fails to comply with Rule 23(b)(2) and will consider whether the other requirements of Rule 23(b)(2) are satisfied below.

1    The City relies on three cases that were decided before 2016 to argue that Plaintiffs must
2  demonstrate that a class is "ascertainable" or "clear in its applicability." *Id.* at 13.  This Court has
3  rejected such an ascertainability requirement since 2014.  *Lilly v. Jamba Juice Co.*, 308 F.R.D.
4  231, 236-40 (N.D. Cal. 2014).  And in 2017, the Ninth Circuit ruled definitively that Rule 23 does
5  not require a class proponent to demonstrate "an administratively feasible way to identify class
6  members [a]s a prerequisite to class certification."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d
7  1121, 1133 (9th Cir. 2017).  *Briseno* noted that administrative feasibility, often referred to as
8  ascertainability, is distinct from "the principle that a class definition must be objective and
9  definite."  *Id.* at 1126 n.6.  The Court therefore considers whether Plaintiffs' class definition is
10 clear and objective but does not impose any "ascertainability" requirement.

11   Plaintiffs define a renter who has a "mobility disability" as "anyone with serious difficulty
12 walking or climbing the stairs . . . or who uses a mobility device because of a condition other than
13 a temporary injury."  ECF No. 62 at 16.  *See also* ECF No. 52 at 15.  Plaintiffs define an
14 "accessible unit" as "any rental unit that was required to be accessible to people with mobility
15 disabilities under the Fair Housing Amendments Act, the Fair Employment and Housing Act,
16 and/or the California Building Code, including all applicable regulations."  *Id.* at 7 n.1.

17   The City objects to Plaintiffs' definition of an "accessible unit" because they "present no
18 evidence that *all* of the[] requirements [under the Fair Housing Amendments Act, the Fair
19 Employment Housing Act, and/or the California Building Code, including all applicable
20 regulations] are in fact necessary for a unit to be accessible to [Plaintiffs]."[5]  ECF No. 54 at 14.
21 The City also asserts that Plaintiffs have not defined "mobility disability," and that the distinctions
22 between the groups of disabled renters that are apparently encompassed in Plaintiffs' class
23 definition – such as renters who use wheelchairs and renters who "reports 'serious difficulty

---

[5] The City also objects to Plaintiffs' definition of an "accessible unit" because it does not include units that could be made accessible.  ECF No. 54 at 15.  Plaintiffs explain that modifiable apartments are excluded from the class definition because "even if it is possible to modify some existing rent-controlled City units in ways that would make them accessible, Plaintiffs and class members would have to bear whatever costs and delays were involved in doing so. . . . This is not equal access, as nondisabled renters do not need to incur such costs or delays to access the protections that the City's rent control Program provides."  ECF No. 62 at 10-11 n.7.

walking or climbing stairs'" – are meaningful. *Id.* at 14-15.

The City cites no authority to support its argument that Plaintiffs' class definition is unclear. *See id.* at 14-17; *Civil Rts. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 104 (N.D. Cal. 2016) ("Defendant fails to cite any case in which similar class definitions were found to be insufficiently clear under Rule 23(c)(1)(B)."). Seeing as "[c]ases challenging an entity's policies and practices regarding access for the disabled represent the mine run of disability rights class actions certified under Rule 23(b)(2)," *Californians for Disability Rts. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008) ("*Caltrans*"), the Court finds the absence of any authority for the City's position telling.

Moreover, the authority of which the Court is aware contradicts the City's argument. In *Armstrong v. Davis*, for example, the Ninth Circuit found that Rule 23 was satisfied despite "a wide variation in the nature of the particular class members' disabilities." 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds*, *Johnson v. California*, 543 U.S. 499 (2005). The class in *Armstrong* included "the hearing impaired, the vision impaired, the developmentally disabled, the learning impaired, and the mobility impaired." *Id.* It may be true that a renter who reports "serious difficulty walking or climbing stairs" will not require the same accommodations as a renter who uses a wheelchair, but that does not preclude their inclusion in the same class. *See id.* ("Certainly, the differences that exist here do not justify requiring groups of persons with different disability, all of whom suffer similar harm from [defendant's] failure to accommodate their disabilities, to prosecute separate actions.").

The Court holds that the differences in disability among the proposed class, and the corresponding differences in what accommodations the renters might require to make a unit accessible, do not render Plaintiffs' class definition unclear and do not foreclose class certification.[6] Plaintiffs have satisfied Rule 23(c)(1)(B) by providing – through the defined terms "mobility disability" and "accessible unit" – a definite and objective definition of the proposed class.

---

[6] As the City acknowledges, ECF No. 54 at 15, its arguments regarding Plaintiffs' class definition overlap with its arguments regarding Rule 23(a)'s commonality requirement, discussed below.

7

**B.      Rule 23(a)'s Requirements**

The parties next dispute whether Plaintiffs' class meets the four requirements of Rule 23(a).

**1.      Numerosity**

To be properly certified, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class or subclass with more than 40 members raises a presumption of impracticability of joinder." *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (quotation marks, alterations, and citation omitted). On the other hand, a class with fewer than 20 does not. *Collinge v. IntelliQuick Delivery, Inc.*, No. 2:12-CV-00824 JWS, 2015 WL 1292444, at *10 n.104 (D. Ariz. Mar. 23, 2015) (quoting William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed. 2014)); *Whaley v. Pac. Seafood Grp.*, No. 1:10-cv-3057-PA, 2012 WL 13047314, at *5 (D. Or. Jan. 31, 2012).

Here, Plaintiffs assert that their proposed class includes "well over 10,000" people based on the number of "Oakland renter households [that] have members who rely on some mobility aid, have a 'severe ambulatory disability,' or report 'serious difficulty walking or climbing stairs.'" ECF No. 52 at 22. To support their motion for class certification, Plaintiffs submitted "[a]n analysis of government survey data conducted by Plaintiffs' demographer expert, Dr. Shelley Lapkoff." *Id.* at 15. Dr. Lapkoff's declaration states that "[b]ased on an analysis of American Community Survey (ACS) Public Use Microdata Sample (PUMS) data" an estimated "10,627 renter households . . . include at least one person . . . [who has] 'serious difficulty walking or climbing stairs.'" ECF No. 52-9 ¶ 3. Dr. Lapkoff suggests that this is "a conservative estimate of the number of Oakland renter households that include a member with an ambulatory disability." *Id.* Plaintiffs also provide evidence that, "[b]ased on the 2014 Survey of Income and Participation (SIPP) conducted by the U.S. Census Bureau," an estimated "3,594 Oakland renter households include a member that uses a wheelchair/electric scooter/similar aid." *Id.* ¶ 5.

The City does not object to these estimates or the data Dr. Lapkoff relies on. Instead, the City asserts that "the lack of a clear class definition also impacts numerosity," ECF No. 54 at 7, because "it cannot be determined who is in or not in the class," *id.* at 28. For the reasons stated

above, the Court rejects the City's argument that Plaintiffs' class definition is unclear. Because this finding leaves unrefuted Plaintiffs' evidence of numerosity, the Court concludes that Plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

"Commonality" is a shorthand way of describing Rule 23's requirement that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores*, 564 U.S. at 359 (quotation marks, alterations, and citation omitted). Where questions common to class members present significant issues that can be resolved in a single adjudication, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation omitted), *overruled on other grounds by Wal-Mart Stores*, 564 U.S. at 338. However, the common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. "'What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). The party seeking certification "need only show that there is a common contention capable of classwide resolution—not that there is a common contention that will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quotation marks and citation omitted).

Plaintiffs contends that "[w]hether Plaintiffs and other class members are denied meaningful and equal access to the City's rent control Program, whether Plaintiffs' requested modification to that Program was reasonable and necessary, and whether the City engaged in further discrimination by denying that modification" are "common questions that are 'capable of classwide resolution,' and the answers to these questions will resolve issues that are central to the validity of each one of the [class members'] claims in one stroke.'" ECF No. 52 at 24 (quoting

9

*Wal-Mart Stores*, 564 U.S. at 350).

The City argues at length that Plaintiffs' proposed class lacks commonality. It asserts that (1) the accessibility of a unit depends on a variety of individualized factors; (2) Plaintiffs' evidence fails to show commonality; and (3) there is an indirect connection between the policy challenged (the RAP) and the alleged harm (the inaccessibility of individual rent-controlled units). *Id.* at 18-27. According to the City, "Plaintiffs do not describe at all how they are 'prepared to prove' by common evidence that the class is denied meaningful access to the [RAP], or how that denial is by reason of their disabilities." *Id.*

Many of the City's contentions regarding commonality rehash arguments that have already been addressed in the Court's order denying the City's motion to dismiss. For example, the City focuses on how the accessibility of housing is "highly variable to the putative class." *Id.* at 23. This again mischaracterizes Plaintiffs' alleged injury, which focuses on "exclusion from a municipal program that is available to non-disabled residents," not the "inability to obtain more affordable, accessible housing." ECF No. 38 at 15. Because Plaintiffs' alleged harm is their exclusion from the RAP benefits, the Court rejects the City's argument that there is no direct connection between the policy challenged and the alleged harm.

Also unavailing is the City's argument that class members with different disabilities must provide individualized evidence to prove that the units covered by the RAP are inaccessible to them. By equating "access to class members' rental units" with "access to the [RAP]," ECF No. 54 at 25-26, the City makes an argument analogous to Caltran's position that "each and every alleged violation of the ADA by Caltrans must be litigated individually." *Caltrans*, 249 F.R.D. at 344. The *Caltrans* court rejected this position, holding that, according to Caltran's reasoning,

> no civil rights class action would ever be maintainable, because, in order to prove the existence of a discriminatory pattern or practice, each class member would have to individually prove the highly individualized factors relating to each instance of discrimination they allegedly suffered. This would simply obviate the concept of the class action lawsuit.

*Id.* at 345. The same is true here. Plaintiffs – like the plaintiffs in *Caltrans* – challenge a deficient government policy or program, not the individual harm of an inaccessible sidewalk or apartment.

10

And as the has Court recognized, while "a lack of accessible private units may be attributable to outside forces, the City is responsible for choosing which units to include in its rent control program. By choosing to regulate rent increases only on units that are not accessible, the City has allegedly denied Plaintiffs meaningful access to the benefit it has chosen to offer." ECF No. 38 at 14. The Court therefore rejects the City's contention that "[w]hether the [RAP] is inaccessible must turn on . . . individualized inquir[ies] into whether a particular unit is accessible to a particular individual." ECF No. 54 at 27 (emphasis omitted).[7]

Finally, the Court declines to consider the City's argument – made in support of its position that Plaintiffs' evidence fails to show commonality – that "Plaintiffs present no evidence that they can show through common proof that units built prior to 1983 are uniformly inaccessible to persons with mobility disabilities." ECF No. 54 at 23. The Court found in its prior order that "Plaintiffs have plausibly alleged that all or nearly all of the units covered by the RAP are inaccessible. Whether Plaintiffs' allegations are factually true must await a later stage of the proceedings." ECF No. 38 at 12 n. 6. That "later stage of the proceedings" is yet to come. *See Caltrans*, 249 F.R.D. at 345 ("Defendants' argument is at core simply the question of the merit of plaintiffs' claims, and is therefore not appropriately addressed at the class certification stage."); *Civil Rts. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1106 n.5 (9th Cir. 2017) ("[T]his issue is not before us, because it goes to the merits, not the issue of class certification.").

As the Court previously summarized, the harm that Plaintiffs allege is that "they are 'uniquely excluded from' Oakland's RAP because their mobility disabilities require them to live in accessible housing or 'to endure the daily indignities, inconveniences, and potential dangers that living in an inaccessible unit inevitably entails,' and because the RAP excludes 'all or nearly all of Oakland's accessible rental units.'" ECF No. 38 at 14 (citations omitted). Common questions, including whether the number of accessible units covered by the RAP fails to provide renters with mobility disabilities a meaningful opportunity to access the protections of rent control, are capable

---

[7] As described above, the differences in disability among the proposed class members, and the corresponding differences in what individual accommodations the renters might require, also do not prevent class certification. *Armstrong*, 275 F.3d at 868.

of class-wide resolution. The Court concludes that Plaintiffs have satisfied the commonality requirement.

### 3. Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon*, 976 F.2d at 508).

Plaintiffs allege that all "members of the proposed class have been harmed by the same discriminatory course of City conduct: namely, City's failure and refusal to ensure that accessible units are part of [RAP], and that people who need accessible housing have the same meaningful opportunity to access [RAP's] protections that nondisabled renters do." ECF No. 52 at 9.

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Recognizing as much, the City argues that "[t]he lack of commonality also impacts typicality." ECF No. 54 at 7. The City explains that "[w]hether any class member lives in a rent controlled accessible unit is dependent on a vast number of variables, having very little to do with the [RAP]." *Id.* at 27. However, as explained above and in the Court's prior order, the question presented by this lawsuit is not whether class members were denied access to particular accessible housing, but whether they were excluded from the protections of the RAP because of their disabilities. Both Smith and Jeserich have adequately alleged that they were denied equal access to the benefits of rent control as a result of their mobility disabilities. ECF No. 38 at 16 ("Forgoing the RAP entirely, as Smith . . . must do, or utilizing it at the cost of entering his bathroom on his hands and knees, as Jeserich must do,

12

1  does not amount to 'full and equal enjoyment' of the program."). The Court concludes that
2  Plaintiffs have demonstrated typicality.

### 4. Adequacy

"[T]he adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Falcon*, 457 U.S. at 157 n.13). Among other functions, the requirement serves as a way to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13.

The Court finds that Plaintiffs have satisfied both prongs of Rule 23(a)(4)'s adequacy requirement. First, there is no apparent conflict of interest between the named plaintiffs, Ian Smith and Mitch Jeserich, and other class members. Second, Plaintiffs have retained counsel with experience in complex class action litigation. ECF No. 52 at 29. Nothing in the record suggests, and the City does not argue, that Plaintiffs and their counsel fail to meet Rule 23(a)(4). Plaintiffs have satisfied the adequacy requirement.

Additionally, the Court finds that the Public Interest Law Project and Disability Rights Advocates are adequate under Rule 23(g)(1) and (4) and will appoint them as class counsel.

### C. Rule 23(b)(2)

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart Stores*, 564 U.S. at 360. "These requirements are unquestionably satisfied when

members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688 (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)). "That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Id.* "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 591 F.3d at 1125.

Plaintiffs assert that an injunction to extend the RAP cutoff date "to bring in accessible units, so that . . . [class members] would have the same meaningful opportunity to live in rent-stabilized housing that the City's nondisabled renters currently enjoy" satisfies the requirements of Rule 23(b)(2). ECF No. 52 at 30. The City objects to Plaintiffs' proposed injunction because it would not provide relief for many class members, including "those who live in rental units exempt from rent control for reasons other than the [RAP] January 1, 1983 cut-off date." ECF No. 54 at 29.[8]

The City relies on *Hosteler v. Johnson Controls, Inc.*, No. 3:15-CV-226 JD, 2018 WL 3868848, at *10 (N.D. Ind. Aug. 15, 2018), to support its assertion that injunctive relief is inappropriate in this case. ECF No. 54 at 29. *Hosteler*, however, is inapt. In *Hosteler*, a proposed class that included prior residents of a neighborhood sought an injunction to require the defendant to remediate contamination in that neighborhood. 2018 WL 3868848, at *2. The court held that certification under Rule 23(b)(2) was improper because "many members of the class [had] no current connection to the class area," and so "d[id] not stand to benefit from and would not be affected by an injunction." *Id.* at *10. In contrast, all members of the proposed class have mobility disabilities, and so would benefit from the alleged benefit of Plaintiffs' proposed

---

[8] The City also objects to Plaintiffs' injunction because it would substantially impact many persons not in the class. ECF No. 54 at 29. The City cites no case law for this argument and acknowledges that "the proper scope of injunctive relief may be a merits issue." *Id.* The Court rejects the City's unsupported position that the impact on non-parties of Plaintiffs' proposed injunction "illustrates that the relief sought is not appropriate for the class as a whole." *Id.*

14

injunction: access to rent-stabilized accessible housing. The benefit of having a meaningful opportunity to live in rent-stabilized accessible housing is not diminished by the fact that some class members would choose not to take advantage of the RAP even if they had access to it.

The Court concludes that injunctive relief would be appropriate "respecting the class as a whole," and that Plaintiffs have satisfied the requirements of Rule 23(b)(2).

## CONCLUSION

The Court grants Plaintiffs' motion for class certification. The Court certifies the class consisting of all Oakland renters who have mobility disabilities and thus need accessible rental units in the City of Oakland. The Court also appoints the Public Interest Law Project and Disability Rights Advocates as class counsel pursuant to Rule 23(g) and Plaintiffs Smith and Jeserich as class representatives.

**IT IS SO ORDERED.**

Dated: January 20, 2021



_____
JON S. TIGAR
United States District Judge