Thomas Zito (CA BAR NO. 304629)
Sean Betouliere (CA BAR NO. 308645)
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Tel:   (510) 665-8644
Fax:  (510) 665-8511
Email: tzito@dralegal.org

Michael Rawson (CA BAR NO. 95868)
Craig Castellanet (CA BAR NO. 176054)
Public Interest Law Project
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel:   (510) 891-9794
Fax:  (510) 891-9727
Email: mrawson@pilpca.org

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IAN SMITH and MITCH JESERICH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, a public entity,<br><br>Defendant. | **Case No. 4:19-cv-05398-JST**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:   July 22, 2021<br>Time:  2:00 P.M.<br>Place:  Courtroom 6, Second Floor<br>Judge:  Hon. Jon S. Tigar<br><br>Complaint Filed: August 28, 2019<br>Trial Date: None Set |

# TABLE OF CONTENTS

I. Introduction .................................................................................................................. 1

II. Facts .......................................................................................................................... 2

III. Legal Standard .......................................................................................................... 4

IV. Argument .................................................................................................................. 4

    A. This Court has already held that Plaintiffs' claims concern the City's own rent control Program, and its own discriminatory conduct. ................................................................................................................. 4

    B. This Court has already found that Plaintiffs' claims against the City are properly pled. ............................................................................................ 5

    C. The Americans with Disabilities Act applies to "anything a public entity does," and the City's rent control Program is not exempt. .................... 6

    D. The "regulatory" nature of the rent control Program does not insulate the City from liability for its own actions. ................................................. 8

    E. Every case the City relies on is distinguishable, because Plaintiffs' claims are premised on the City's own discriminatory conduct, not that of third parties. ........................................................................................ 9

V. Conclusion ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Alford v. City of Cannon Beach*,
  No. CV-00-303-HU, 2000 WL 33200554 (D. Or. Jan. 17, 2000) .......................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 4

*Barden v. City of Sacramento*,
  292 F.3d 1073 (9th Cir. 2002) ............................................................................................... 7

*Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*,
  179 F.3d 725 (9th Cir. 1999) ................................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 4

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) ........................................................................................... 4, 6

*Cohen v. City of Culver City*,
  754 F.3d 690 (9th Cir. 2014) ................................................................................................. 7

*Godecke v. Kinetic Concepts, Inc.*,
  937 F.3d 1201 (9th Cir. 2019) ............................................................................................... 4

*Hason v. Med. Bd. of Cal.*,
  279 F.3d 1167 (9th Cir. 2002) ........................................................................................... 6, 7

*Ivy v. Morath*,
  137 S. Ct. 414 (2016) ........................................................................................................... 10

*Ivy v. Williams*,
  781 F.3d 250 (5th Cir. 2015) ............................................................................................... 10

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ............................................................................................. 1, 7

*McGary v. City of Portland*,
  386 F.3d 1259 (9th Cir. 2004) ............................................................................................... 4

*Namisnak v. Uber Techs., Inc.*,
  444 F. Supp. 3d 1136 (N.D. Cal. 2020) ................................................................................. 8

*Noel v. N.Y.C Taxi & Limousine Comm'n*,
  687 F.3d 63 (2d Cir. 2012) ........................................................................................ 8, 9, 10

*O'Byrne v. Reed*,
  No. CV 09-08406 DMG (DTBx), 2010 WL 11596665 (C.D. Cal. Feb. 5, 2010) ............. 10, 11

*OSU Student All. v. Ray*,
  699 F.3d 1053 (9th Cir. 2012) ............................................................................................... 4

*Reeves v. Queen City Transp.*,
    10 F. Supp. 2d 1181 (D. Colo. 1998) .................................................................................. 11

*S.G. v. City of Los Angeles*,
    No. LA CV17-09003 JAK (PJWx), 2020 WL 8837146 (C.D. Cal. Feb. 21,
    2020) ................................................................................................................................... 11

*S.G. v. City of Los Angeles*,
    No. LA CV17-09003 JAK (PJWx), 2021 WL 911254 (C.D. Cal. Feb. 4, 2021),
    *appeal docketed*, No. 21-55215 (9th Cir. Mar. 9, 2021) ..................................................... 11

*Spector v. Norwegian Cruise Line Ltd.*,
    545 U.S. 119 (2005) .............................................................................................................. 8

*Troy State Univ. v. Dickey*,
    402 F.2d 515 (5th Cir. 1968) .............................................................................................. 10

*Tyler v. City of Manhattan*,
    849 F. Supp. 1429 (D. Kan. 1994) ..................................................................................... 11

*Wendel v. Fla. Dep't of Highway Safety & Motor Vehicles*,
    80 F. Supp. 3d 1297 (M.D. Fla. 2015) ............................................................................... 11

*Yeskey v. Pa. Dep't of Corrs.*,
    118 F.3d 168  (3d Cir.1997) ................................................................................................. 7

*Yeskey v. Pa. Dep't of Corrs.*,
    524 U.S. 206 (1998) .............................................................................................................. 7

**Statutes**

42 U.S.C. § 12101(b)(1) ............................................................................................................. 6

42 U.S.C. § 12132 ...................................................................................................................... 7

Cal. Civ. Code § 54.1(d) ............................................................................................................ 7

**Other Authorities**

H.R.Rep. No. 101–485(II) (1990) .............................................................................................. 7

U.S. Dep't of Justice, *Title II Technical Assistance Manual* at § II-3.7200,
    https://www.ada.gov/taman2.html ....................................................................................... 8

**Regulations**

28 C.F.R. Part 35, App. B ...................................................................................................... 7, 9

## I. INTRODUCTION

In its failed motion to dismiss this case, the City has already argued that the discrimination Plaintiffs allege is actually attributable to third parties that the City merely happens to regulate; the Court rejected this argument, and denied the City's motion. *Compare* ECF No. 20 at 15 and ECF No. 25 at 2 *with* ECF No. 38 at 8. In its opposition to Plaintiffs' motion for class certification the City made the same argument again, and it was again rejected. *Compare* ECF No. 54 at 21 n.11 *with* ECF No. 66 at 11. As this Court observed in both instances: "while 'a lack of accessible private units may be attributable to outside forces, the City is responsible for choosing which units to include in its rent control program. By choosing to regulate rent increases only on units that are not accessible, the City has allegedly denied Plaintiffs meaningful access to the benefit it has chosen to offer.'" ECF No 38 at 14; ECF No. 66 at 11.

The City asserts that its motion for judgement on the pleadings "raises a distinct legal basis for dismissing Plaintiffs' claims" that was not addressed in this earlier briefing, but it is in fact just making the same failed argument for a third time. Moreover, even if the legal basis for the City's new motion were somehow "distinct," it would still rest on the same rejected factual predicate as their earlier arguments: that the discrimination alleged in this case is actually the fault of private parties that the City simply regulates. That is not what Plaintiffs pled, and it is not what they will prove as the case proceeds.

In addition to reiterating old arguments, the City's motion invites this Court to find a broad exemption to liability for a public entity's "regulatory" activities that has no support in the text of the Americans with Disabilities Act (ADA) or its regulations, and that is directly contrary to Ninth Circuit precedent—which has held, for decades, that the ADA's broad prohibition against discrimination by public entities "brings within its scope **anything a public entity does**." *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (internal quotation marks omitted).

The Court should decline the City's invitation to ignore this clear Ninth Circuit precedent. It should instead deny Defendant's motion, and hold that where—as here—Plaintiffs

---

*Smith et al. v. City of Oakland*, Case No. 4:19-cv-05398-JST
**Plaintiffs' Opposition to Motion for Judgement on the Pleadings**                                     1

have pled that that they have been harmed by the City's own discriminatory actions and inactions, the ADA's broad prohibitions against public entity discrimination apply, and judgement on the pleadings is improper.

## II.  FACTS

Plaintiffs have already summarized their factual allegations in the context of the City's motion to dismiss, and will not repeat that summary here. *See* ECF No. 23 at § II (incorporated by reference). However, for the Court's convenience, facts relevant to the City's Rule 12(c) motion are discussed below.

The City of Oakland's Rent Adjustment Program ("Program"), colloquially known as "rent control," provides tens of thousands of City tenants with stability and protection from displacement, by setting a limit on how much the rent for their homes can increase each year. *See* ECF No. 1 (Pls.' Compl.) at ¶¶ 3, 5, 33-36 (describing Program).[1] However, Plaintiffs and others who need accessible housing have been denied an equal opportunity to access these same protections, because few if any of the City's rent-controlled units are accessible. *See* Pls.' Compl. at ¶¶ 6, 9, 25, 15, 18, 39-41, 49. This is so because "the Program's protections do not apply to units that were newly constructed and certified for occupancy on or after January 1, 1983, and because every standard governing the accessibility of the City's private rental housing went into effect after that date—thus leaving all or nearly all of Oakland's accessible rental units outside the Program's scope." *Id.* at ¶ 39 (emphasis omitted); *see also id.* at ¶¶ 43-48 (discussing later-enacted accessible design and construction requirements).

As Plaintiffs have alleged, "[b]y operating a Rent Adjustment Program that covers over 60% of Oakland's rental housing but that exempts all or nearly all of its accessible rental units, **the City** discriminates against Plaintiffs and other people with mobility disabilities who need accessible housing, and it denies them meaningful access to the same benefit that the City's nondisabled renters enjoy." *Id*. at ¶ 50 (emphasis added); *see also id.* at ¶ 87.

---

[1] *See also* ECF No. 43 (Answer) at ¶ 33 (admitting that the City's rent control Program "is a program that protects tenants in covered units from annual rent increases beyond the amount set by the Program"); *id*. at ¶ 83 (admitting allegation from ¶ 83 of Plaintiffs' complaint that the rent control Program "is a service, program, or activity that the City provides to the general public.").

Similarly, Plaintiffs have alleged that **the City** refused to "extend the January 1, 1983, cutoff date for its Rent Adjustment Program or otherwise reasonably modify its Program, such that Plaintiffs and other people with disabilities who need accessible housing would have the same meaningful opportunity to live in rent-stabilized housing that the City's nondisabled renters currently enjoy." *Id*. at ¶ 92; *see also id*. at ¶¶ 16-17, 89-92 (discussing obligation to make reasonable modifications, and failure to do so).

Importantly, Plaintiffs do not allege that third-party landlords or developers have violated state or federal disability laws in any way. On the contrary, they acknowledge that rental units in buildings certified for occupancy before the current January 1983 cutoff date for coverage by City rent control were not required to be accessible, and assume as they must that buildings which **were** subject to subsequent state and federal access requirements have been designed and built in accordance with the law. *See id.* at ¶ 39, 45, 48-49.

Plaintiffs' complaint does not ask the City to ensure that third parties comply with state or federal access requirements, or suggest that the City is somehow liable because third parties have not done so. Plaintiffs' case similarly does not ask the City to ensure that Plaintiffs have physical access to private rental housing in Oakland generally (or to any particular rental unit), or to ensure that more private rental housing is accessible. *See id.* at ¶¶ 85-92; *see also* ECF No. 38 at 6-8. Rather, Plaintiffs ask the City to do something that is squarely within its control:[2] to extend the current cutoff date for its own rent control Program or otherwise reasonably modify it, such that enough **existing** accessible rental units are covered by the City's Program to give Plaintiffs a meaningful opportunity to access the protection from excessive rent increases that it provides. *See* Pls.' Compl. at ¶¶ 15-18, 87-92.

---

[2] As Plaintiffs explain in their Complaint, "because the Americans with Disabilities Act preempts inconsistent state and local laws," the City has the power to modify its rent control Program in ways that state or local law would ordinarily not allow if those modifications are necessary to prevent discrimination. Pls.' Compl. at ¶ 91; ECF No. 38 at 17 ("it is well established that the ADA's reasonable modification requirement may preempt state law").

### III. LEGAL STANDARD

When considering a motion for judgement on the pleadings under Rule 12(c), a court's analysis "is substantially identical to [the] analysis under Rule 12(b)(6)"—"under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate only when the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). A complaint survives a motion to dismiss if it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a plaintiff has met the plausibility standard, the Court must accept all well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *OSU Student All. v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012). That a "claim does not fall within the four corners of . . . prior case law does not justify dismissal under Rule 12(b)(6)." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004). On the contrary, Rule 12(b)(6) dismissals "are especially disfavored in cases where the complaint sets forth a novel legal theory." *Id.*

### IV. ARGUMENT

#### A. This Court has already held that Plaintiffs' claims concern the City's own rent control Program, and its own discriminatory conduct.

In its unsuccessful motion to dismiss Plaintiffs' case, the City already argued that "landlords, or the housing market, or . . . accessibility regulations are the source of [Plaintiffs'] harm," and that the City's own "Rent Adjustment Program is not." ECF No. 20 at 15. On reply the City made a similar argument, suggesting that Plaintiffs were actually seeking access to specific units of "rent controlled housing;" in response to this straw man, the City protested that it "does not provide any housing," and argued that Plaintiffs' claim was thus not that the City's rent control Program "works against the disabled, but that other forces work against the

disabled." ECF No. 25 at 2.

In its order denying the City's motion, this court correctly found that such arguments "mischaracterize[]" Plaintiffs' alleged injuries. ECF No. 38 at 7. As the Court held, "Plaintiffs allege that they are denied equal opportunity to participate in and benefit from [the rent control Program]"—a claim that did not require Plaintiffs to "identify the specific apartments they could move into," because "**it is the program's accessibility that matters**." *Id*. (emphasis added).

The Court also expressly rejected the argument that Plaintiffs' alleged injuries were "not traceable to the conduct of the City," holding that it too "mischaracterize[ed] Plaintiffs' alleged injury, which **focuses on discriminatory access to a government Program, not the underlying housing itself**. Because the City passed and implements the [rent control Program], Plaintiffs alleged injury of unequal access is fairly traceable to the City's conduct." *Id.* at 8 (emphasis added).

Despite this Court's clear ruling that Plaintiffs' alleged injuries arise from the City's own Program and conduct, the City has chosen to file a Rule 12(c) motion arguing once again that "the source – the 'locus'" of Plaintiffs' claimed injuries is not the City but "the various factors that make housing inaccessible," and that these claims are "inherently based upon the alleged inaccessibility of the older private housing itself."[3] ECF No. 71 at 6-7. Such arguments mischaracterize Plaintiffs claims now just as much as they did in the context of the City's failed motion to dismiss, and they should meet the same fate.

**B.    This Court has already found that Plaintiffs' claims against the City are properly pled.**

In addition to finding that Plaintiffs' alleged injuries were fairly traceable to the City's conduct, this Court has already found that Plaintiffs properly alleged that they have been denied

---

[3]    In addition to mischaracterizing Plaintiffs' claims in ways this Court has already rejected, the City's 12(c) motion also mischaracterizes them in new ways.  For example, the City asserts that "[b]y Plaintiffs theory, the City violates Title II because it regulates . . . inaccessible single-family rental homes, even though there is no legal requirement to build any of those homes to be accessible to Plaintiffs." ECF No. 71 at 6. However, the problem is not that the City's rent control Program applies to inaccessible units, it is that it applies **only** to units that are inaccessible. As this Court has already recognized, Plaintiffs allege that the City has denied them meaningful access to the benefit of City rent control "[b]y choosing to regulate rent increases **only** on units that are not accessible." ECF No. 38 at 14 (emphasis added).

*Smith et al. v. City of Oakland*, Case No. 4:19-cv-05398-JST
**Plaintiffs' Opposition to Motion for Judgement on the Pleadings**                                                    5

meaningful access to the benefit of the City's rent control Program: "regulation of rent increases on private housing units."[4] ECF No. 38 at 12. This Court also found that Plaintiffs' requested modification to the rent control Program was facially reasonable as alleged, and that their claim that the City had discriminatorily denied that necessary modification was properly pled. *See* ECF No. 38 at 16-18.

As this Court held: Oakland "has chosen to provide a particular package of [services] – regulation of rent increases on private housing units, but only as to a subset that is largely inaccessible to mobility-disabled renters. Plaintiffs allege that defining the benefit in that manner necessarily excludes or severely burdens them." *Id*. at 12 (citation and internal quotation marks omitted). This Court then found that "**Plaintiffs' claim is premised on the actions of the City of Oakland, not private individuals**," because "the City is responsible for choosing which units to include in its rent control program. By choosing to regulate rent increases only on units that are not accessible, the City has allegedly denied Plaintiffs meaningful access to the benefit it has chosen to offer." ECF No. 38 at 14 (emphasis added).

The City's Rule 12(c) motion attempts to do an end run around this ruling, but because such motions concern the same materials as those made under Rule 12(b)(6) and are subject to a "substantially identical" analysis, there is no reason for this Court to reach a different result. *See Chavez*, 683 F.3d at 1108 (standard for Rule 12(c) motions).

C. **The Americans with Disabilities Act applies to "anything a public entity does," and the City's rent control Program is not exempt.**

The Americans with Disabilities Act was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," and "Courts must construe the language of the ADA broadly in order to effectively implement [this] fundamental purpose." 42 U.S.C. § 12101(b)(1) (purpose of law); *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1172 (9th Cir. 2002) (broad construction); *see also Cohen v.*

---

[4] The City subsequently acknowledged that this was the proper way to characterize the Program's benefit, admitting **"that its Rent Adjustment Program is a program that protects tenants in covered units from annual rent increases beyond the amount set by the Program, and that the Program is one mechanism to preserve affordable rental housing."** ECF No. 43 (Answer) at ¶ 33).

*City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) (same). This case concerns Title II of the ADA,[5] which prohibits public entities from discriminating against people with disabilities, and demands that they not be "excluded from participation in or be denied the benefits of the services, programs, or activities" that public entities offer. 42 U.S.C. § 12132.

For over two decades, the Ninth Circuit has held that Title II's prohibition against discrimination "brings within its scope '**anything a public entity does**.'"[6] *Lee*, 250 F.3d at 691 (emphasis added) (quoting *Yeskey v. Pa. Dep't of Corrs.*, 118 F.3d 168, 171 & n. 5 (3d Cir.1997), *aff'd* 524 U.S. 206 (1998)); *see also Cohen*, 754 F.3d at 695.[7] As the Ninth Circuit explained in *Barden*, "[a]ttempting to distinguish which public functions are services, programs, or activities, and which are not, would disintegrate into needless hair-splitting arguments." *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (internal quotation marks omitted). The focus of a court's inquiry is thus not on whether a "particular public function can technically be characterized as a service, program, or activity," but rather on "whether it is **a normal function of a governmental entity**." *Id*. (emphasis added) (internal quotation marks omitted); *see also, e.g.*, *Hason*, 279 F.3d at 1171-73 (medical licensing); *BAART*, 179 F.3d at 731-33 (zoning).

Because the City's rent control Program is both something "a public entity does" and "a normal function of a governmental entity," it is subject to Title II of the ADA, and the City may not deny people with disabilities a meaningful opportunity to access the benefit of protection from excessive rent increases that it offers. *See* 42 U.S.C. § 12132. That, however, is exactly

---

[5] This case also concerns the California Disabled Persons Act, which states that "a violation of the right of an individual under the Americans with Disabilities Act . . . constitutes a violation of" the CDPA as well. Cal. Civ. Code § 54.1(d); *see Cohen*, 754 F.3d at 701 ("A violation of the ADA constitutes a violation of the California DPA."). Because a violation of the ADA is also a violation of the CDPA, all references to the ADA in this brief should be read to encompass Plaintiffs' claims under both laws.

[6] "**Congress specifically rejected an approach that could have left room for exceptions to [Title II's] prohibition on discrimination by public entities**." *Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 731-32 (9th Cir. 1999) (hereinafter "*BAART*") (emphasis added).

[7] The ADA was intended to "extend[] the antidiscrimination prohibition embodied in section 504 [of the Rehabilitation Act of 1974] to **all actions** of State and local governments." 28 C.F.R. Part 35, App. B (Department of Justice Guidance) (emphasis added); *see also* H.R.Rep. No. 101–485(II) at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367 (emphasis added).

---

what Plaintiffs allege that the City does—as this Court has already acknowledged. *See* §§ IV(A-B), above.

### D. The "regulatory" nature of the rent control Program does not insulate the City from liability for its own actions.

A public entity's regulatory programs and activities are not exempt from Title II of the Americans with Disabilities Act, and the City's reliance on regulations regarding the administration of "licensing or certification program[s]" to suggest otherwise is misplaced.

As a preliminary matter, these provisions—plainly meant to encompass the licensing of businesses, doctors, dentists, drivers, teachers, lawyers, and the like—have no bearing on this case, and are not the basis of Plaintiffs' claims.[8] *See* 28 C.F.R. § 35.130(b)(6); U.S. Dep't of Justice, *Title II Technical Assistance Manual* at § II-3.7200, https://www.ada.gov/taman2.html. (providing examples of driver licensing, and noting that "licensing programs often . . . require applicants to demonstrate specific skills, knowledge, and abilities"); *Noel v. N.Y.C Taxi & Limousine Comm'n*, 687 F.3d 63, 69 (2d Cir. 2012) ("Section 35.130(b)(6) prohibits [a public entity] from refusing to grant licenses to persons with disabilities who are otherwise qualified to own or operate a taxi (*i.e.,* qualified medallion purchasers and drivers).").

Even if Title II's "licensing or certification" provisions were somehow at issue here, the clause explaining that "programs or activities that are licensed or certified by a public entity are not themselves covered" by Title II would not support the City's effort to escape liability for its own discriminatory actions. *See* 28 C.F.R. § 35.130(b)(6). This clause—and the cases that flow from it—stand only for two simple propositions: first, that the activities of licensed or certified private entities (which are not themselves covered by Title II) do not become programs or

---

[8] Plaintiffs did not bring a claim under 28 C.F.R. § 35.130(b)(6), and there is no reference to this regulation in their Complaint. *See* Pls.' Compl. There is also no indication in any of the pleadings that the City "licenses" or "certifies" anything as part of the rent control Program. *See* Pls.' Compl.; ECF No. 43 (Answer). Moreover, even if this regulation were at issue, the City would still have to comply with the broad nondiscrimination mandate of Title II: the more "specific requirements" of regulations such as 28 C.F.R. § 35.130(b)(6) can "supplement[]" the ADA's "general prohibitions" against discrimination, but they cannot supplant them. *See Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005); *see also Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1143 (N.D. Cal. 2020) (holding that an entity covered by the Americans with Disabilities Act is "subject not just to the narrow requirements" of its regulations, but to "the statute's broader anti-discrimination mandate").

activities of a public entity such as the City "merely by virtue of the license or certificate;" and second, that public licensing entities such as the City are not liable for the subsequent and unrelated discriminatory actions of their private licensees. *See* 28 C.F.R. Part 35, App. B (DOJ Guidance).

Neither proposition is relevant here, because as this Court has held, "Plaintiffs' claim is premised on the actions of the City of Oakland, not private individuals." ECF No. 38 at 14; *see also* Pls.' Compl. at ¶¶ 15-17, 87-91 (discussing discriminatory City conduct, and failure to accommodate).

### E. Every case the City relies on is distinguishable, because Plaintiffs' claims are premised on the City's own discriminatory conduct, not that of third parties.

The City relies on several cases construing the "licensing or certification" regulations discussed above, but each is entirely distinguishable from this case.

For example, in *Noel*, the plaintiffs "contend[ed] that the **taxi services** in New York City fail to give meaningful access to persons with disabilities." *Noel*, 687 F.3d at 65. The "gravamen of plaintiffs' claim [was] that there are too few accessible taxis in New York City, and that the [Taxi and Limousine Commission] should use its regulatory authority to require that more taxis be accessible." *Id.* at 69-70. The Second Circuit held simply that the "private taxi industry [was not] a program or activity of a public entity" and that the Taxi and Limousine Commission did "not violate the ADA by licensing and regulating a private taxi industry that fails to afford meaningful access to passengers with disabilities." *Id.* at 72 (internal quotation marks omitted).

Plaintiffs here have not alleged that private rental housing in Oakland is inaccessible generally,[9] or asked the City to use its regulatory authority to ensure that third parties create more of it. On the contrary, this case is premised on the fact a significant number of accessible units **do** exist: the problem is that the City of Oakland has failed and refused to include those

---

[9]   The City describes Plaintiffs' claim as being "that a certain level of accessible private rental housing is required by the ADA[] because that housing is regulated by the City," but this—once again—is a profound mischaracterization of Plaintiffs' claims. ECF No. 71 at 4 (City mischaracterization), ECF No. 38 at 7-8, 14 (rejecting mischaracterizations, and describing nature of Plaintiffs' claim).

units in its rent control Program. *See* § II, above. If in *Noel* the Taxi and Limousine Commission had been issuing medallions to inaccessible taxis but **refusing** to issue them to accessible ones—a situation more analogous to the one here—the outcome of that case would almost certainly have been different.[10]

The City's reliance on *Ivy v. Williams*—a vacated[11] Fifth Circuit decision—is similarly misplaced. As in *Noel*, the plaintiffs in *Ivy* attempted to use a Title II suit against a regulatory entity to influence the conduct of private third parties: driver training schools that had refused to accommodate the deaf. *Ivy v. Williams*, 781 F.3d 250, 252 (5th Cir. 2015), *vacated and remanded sub nom. Ivy v. Morath*, 137 S. Ct. 414 (2016). Ultimately, the court found that the plaintiffs sought the benefit of "driver education," and that this was not a benefit that the Texas Education Agency provided.[12] *Id*. at 255. Here, again, Plaintiffs are not attempting to use a suit against the City to change the discriminatory conduct of private third parties, and this Court has already found that the benefit Plaintiffs seek is one the City itself provides. *See* § IV(B), above; *see also* ECF No. 38 at 12, 14.

In *O'Byrne*, the plaintiff sought to use a Title II suit against the City of Big Bear to make private vacation rentals more accessible. *O'Byrne v. Reed*, No. CV 09-08406 DMG (DTBx), 2010 WL 11596665, *1-2 (C.D. Cal. Feb. 5, 2010). The court found that the plaintiff could not state a claim against the city, but had Big Bear been licensing inaccessible vacation rental homes

---

[10]  The City references *Noel's* holding that using the Taxi and Limousine's Commission's regulatory authority to force private taxi companies to "increase the number of handicap-accessible taxis" would "run counter to the policy choice of the political branches" because Congress had chosen not to require private taxi companies to purchase or operate such vehicles. *See Noel*, 687 F.3d at 73. No similar policy rationale exists here, because Plaintiffs are not asking the City to use its regulatory authority to force third parties to increase the supply of accessible rental housing, or to "regulate the accessibility of private housing" at all. *Compare* ECF No. 71 at 4, 6 (misstating claim); *with* § II, above (describing claims); *see also* ECF No. 38 at 7-8, 14 (rejecting mischaracterizations, and describing nature of Plaintiffs' claim).

[11]  "The effect of vacating the judgment below is to take away from it any precedential effect." *Troy State Univ. v. Dickey*, 402 F.2d 515, 516 (5th Cir. 1968).

[12]  In its discussion of *Ivy* the City suggests that this case raises problematic "federalism concerns"—an argument reminiscent of its earlier admonition that granting Plaintiffs' requested relief would "throw the Court into a political thicket"—however, as this Court has already held, "it is well established that the ADA's reasonable modification requirement may preempt state law." ECF No. 38 at 17 (citing cases).

and refusing to license accessible ones, the outcome would have been different. *See id.* at *4 (noting that a public entity licensing scheme would "violate Title II if some aspect of the scheme itself caused the discrimination"). In any case, Plaintiffs are not seeking to affect the accessibility of private rentals; they are seeking to affect their lack of meaningful access to the City's rent control Program. *See* ECF No. 38 at 14.

The City's other cited cases are all similarly distinguishable. *Tyler* concerned a claim that a city "fail[ed] to evaluate its licensees for compliance with the ADA, and has failed to require ADA compliance as a condition for licensure"—**not**, as would perhaps be more relevant here, a claim that the city issued liquor licenses to inaccessible stores but not to any of the accessible ones. *See Tyler v. City of Manhattan*, 849 F. Supp. 1429, 1441 (D. Kan. 1994). In *Alford*, the plaintiffs sought to use Title II to compel a city to "force third party licensees or permittees to build compliant structures." *Alford v. City of Cannon Beach*, No. CV-00-303-HU, 2000 WL 33200554, *20-22 (D. Or. Jan. 17, 2000). *S.G. v.* City of *Los Angeles* concerned a city's allegedly-discriminatory process for permitting a private development. *See S.G. v. City of Los Angeles*, No. LA CV17-09003 JAK (PJWx), 2020 WL 8837146, *12 (C.D. Cal. Feb. 21, 2020).[13] In *Reeves*, the court considered a claim against a regulatory body that had done nothing more than issue a license to a private bus company that subsequently refused to transport people with disabilities; the court found that the alleged discrimination "flow[ed] from" the bus company's conduct, not from the regulator's. *Reeves v. Queen City Transp.*, 10 F. Supp. 2d 1181, 1182 (D. Colo. 1998); *see also id.* at 1186. *Wendel* concerned alleged discrimination by a private driving school against a veteran with PTSD; the court found that the state Department of Highway Safety and Motor Vehicles was not liable for this alleged discrimination. *Wendel v. Fla. Dep't of Highway Safety & Motor Vehicles*, 80 F. Supp. 3d 1297, 1301 (M.D. Fla. 2015); *id.* at 1305-1307.

Not one of these cases stand for the proposition that the City's 12(c) motion seeks to

---

[13] A subsequent order dismissing the disability claims in this case, decided on the same grounds, has been appealed to the Ninth Circuit. *See S.G. v. City of Los Angeles*, No. LA CV17-09003 JAK (PJWx), 2021 WL 911254 (C.D. Cal. Feb. 4, 2021), *appeal docketed*, No. 21-55215 (9th Cir. Mar. 9, 2021)

advance: that the City's own allegedly-discriminatory conduct related to its own rent control Program is somehow insulated from the Americans with Disabilities Act's comprehensive national mandate against discrimination, simply because the Program is "regulatory" in nature. No court in the Ninth Circuit has ever issued such a holding, and this Court should decline the City's invitation to be the first.

## V.    CONCLUSION

For the reasons stated above, this Court should deny the City's motion.

DATED: June 24, 2021                    Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

Sean Betouliere
Thomas Zito

PUBLIC INTEREST LAW PROJECT

Michael Rawson
Craig Castellanet

Attorneys for Plaintiffs