BARBARA J. PARKER, City Attorney – SBN 069722
MARIA BEE, Chief Assistant City Attorney – SBN 167716
KEVIN P. MCLAUGHLIN, Supervising Deputy City Attorney – SBN 251477
MICHAEL J. QUIRK, Deputy City Attorney – SBN 283351
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California  94612
Telephone:  (510) 238-2961 Fax:  (510) 238-6500
Email: kmclaughlin@oaklandcityattorney.org
X05020/3080820

Attorneys for Defendant
CITY OF OAKLAND

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IAN SMITH, SUNDAY PARKER, and MITCH JESERICH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, a public entity,<br><br>Defendant. | Case No. 4:19-cv-05398 JST<br><br>**REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:  July 22, 2021<br>Time: 2:00 p.m.<br>Crtm: 6, Second Floor<br><br>Complaint filed: August 28, 2019<br>Trial Date: None set |

# I. INTRODUCTION

Plaintiffs claim the City of Oakland's rent control program is inaccessible. But their opposition fails to wrestle with the next question: how is the rent control program inaccessible? There is only one answer: because the housing regulated by the rent control program is inaccessible. However, where a program of regulating or licensing private enterprise is alleged to be inaccessible because the private enterprise is inaccessible, it fails to state a claim for violation of Title II of the ADA.

According to the Complaint, some rental units are accessible, and some are not. The thing alleged to be discriminatory about the City's rent control is that it only regulates rent increases in the inaccessible ones. The lack of access necessarily lies in those inaccessible units. Plaintiffs cite no authority holding that a public entity violates Title II by regulating inaccessible rental units, or regulating any inaccessible private enterprise.

The opposition falls back to the broad premise that Title II covers "anything a public entity does." But accessibility of private rental units is not something the City does, and accessibility of private rental units is the keystone of Plaintiffs' case. It is circular to claim that a program of government regulation is inaccessible, because the thing being regulated is inaccessible. By extension, anytime public entities regulate inaccessible things, they face potential liability under Title II. That is a substantial expansion of the ADA.

Plaintiffs do not state a cognizable claim, and the motion for judgment on the pleadings should be granted.

# II. ARGUMENT

In opposition, Plaintiffs repeatedly emphasize that they challenge only the City's rent control regulation, not an underlying lack of accessible housing. This begs the question: what is discriminatory about the regulation?

The answer is that rent control only applies to units built before 1983. (Dkt. 1, ¶¶ 6-7, 38-40.) When one asks *how* that cut-off date is discriminatory, the only answer is that the older private housing regulated by rent control is allegedly inaccessible. (*Id*., ¶¶ 1, 6-7, 38-50, 87.) The opposition reconfirms this: the City allegedly discriminates "because few if any of the

City's rent-controlled units are accessible." (Dkt. 77 at 2:12-14.) The challenge to the City's regulation *inherently* turns on the accessibility of private housing. And that makes the claim in this case analogous to the cases cited in the City's opening brief. In each, the source of inaccessibility was not the public entity's regulation, but private conduct.

Plaintiffs repeatedly argue that their claim is distinct from the cases cited by the City because Plaintiffs challenge the City's program, and not the underlying lack of access. (Dkt. 77 at 5:13-19, 9:21-10:4, 10:11-13, 11:3-5.) But in those cases, a public entity's program of regulating private enterprise was also challenged. In *Noel*, it was a program of licensing taxi medallions; in *Ivy*, it was a program of regulating driver education schools; in *O'Byrne*, it was a program of regulating vacation rentals; and so forth. The fact that the claim is framed as a challenge to the public entity's program was not determinative in those cases, nor is it here. The challenge to the City's rent control program, like the challenges to regulatory programs in other cases, is inherently based on an underlying private lack of access, and that makes all the difference.

Plaintiffs assert that their claim is different from *Noel v. City of New York*, because Plaintiffs are not asking the City to require third parties to create more accessible rental housing. (Dkt. 77 at 9:21-23.) In fact, Plaintiffs are asking the City to regulate more accessible rental housing. The two cases occur in different playing fields: the FHAA already requires a substantial amount of accessible housing, while in *Noel*, only 1.8% of taxis were accessible. *Noel v. City of New York*, 687 F.3d 63, 66 (2d Cir. 2012). For purposes of the ADA, Plaintiffs' distinction is not a principled difference. In either case, the lack of access is not a product of the public entity's regulation. That is the same central thread of all the cases discussed by the City: the lack of access is attributable to the private enterprise, and any lack of access to the public entity's regulation is only derivative of that underlying lack of access.

Pointing to the Court's ruling on the City's motion to dismiss, Plaintiffs claim that the City may be liable because it has chosen what set of rental units to regulate. (Dkt. 77 at 6:10-14.) Anytime a public entity regulates something, it chooses what and how to regulate.[1] But for

---

[1] The City's choice is cabined. It cannot choose to regulate newer rental units due to the Costa-

the regulation to create liability under Title II, the regulation itself must be the source of disparate access. That is not true here, just as it is not in the cases discussed by the City.

According to Plaintiffs, the problem is not that the City regulates inaccessible units, but that it regulates *only* inaccessible units, suggesting that this is the difference between discrimination and non-discrimination. (Dkt. 77 at 5 n. 3.) Again, the claim depends on the accessibility of private units. But Plaintiffs do not cite any authority holding that a public entity's regulation of a completely-inaccessible private enterprise violates Title II, or that regulation of a partially-inaccessible private enterprise satisfies Title II. In *Noel*, 98.2% of taxis were inaccessible. *Noel*, 687 F.3d at 66. Whether the thing a public entity regulates is completely or partially inaccessible cannot be the determinant of whether a public entity is liable. A public entity's regulation of any private enterprise is actionable only where the regulation itself is the source of the inaccessibility.

Plaintiffs argue that it is a "profound mischaracterization" to say they claim a certain level of accessible private rental housing is required by the ADA, because that housing is regulated by the City. (Dkt. 77 at 9, n. 9.) But that is *precisely* Plaintiffs' claim. <u>Because the City regulates rent increases in private rental housing, Plaintiffs claim a certain amount of that private rental housing must be accessible</u>. (Dkt. 1, ¶¶ 1, 38-39, 48-50, 92.) That is why Plaintiffs want rent control applied to newer buildings: because they presume those newer buildings are accessible. (*Id*., ¶¶ 6-7, 48, 92.)

Plaintiffs make no attempt to address the consequences of their theory of liability. If the City violates Title II by regulating inaccessible private multifamily rental housing, what other regulations of inaccessible private housing – or other inaccessible private enterprises – violate Title II? What of single-family homes that are rented? The City regulates them, and they are all inaccessible by Plaintiffs' theory because no FHAA accessibility requirements apply to single-family homes. So by Plaintiffs' theory the City must be violating Title II by regulating those inaccessible single-family rental homes. The only distinction is that newer multifamily homes are subject to FHAA accessibility requirements. Again, this makes clear that Plaintiffs' theory of

---

Hawkins Act.

this case turns on the inaccessibility of private housing – something unrelated to the City's rent control program.

No cases are discussed which support Plaintiffs' theory in this case. Plaintiffs do not address the way in which cases like *Crowder v. Kitagawa* and *McGary v. City of Portland* are different from the claim in this case. The regulations in those cases were the source or "locus" of discrimination; the regulation in this case is not. Instead of presenting case law supporting their claim, Plaintiffs fall back to the basic principle that Title II covers "anything a public entity does." (Dkt. 77 at 7:5-15.) This reliance on such a broad proposition illustrates the lack of analogous authority supporting Plaintiffs' claim. The accessibility of private rental housing is not something "a public entity does," or a "normal function of a governmental entity." Yet it is undeniably the lynchpin of liability in this case.

Plaintiffs claim the implication of the City's argument is that public entities should be exempt from the ADA for their "regulatory" activities. (Dkt. 77 at 11:25-12:3.) This is incorrect. Public entities may violate the ADA when their regulations are the source of discrimination, but do not violate the ADA when their regulations are not the source of discrimination. That is established law. It is Plaintiffs who are breaking new legal ground.

In opposition Plaintiffs argue that the provisions of 28 C.F.R. section 35.130(b)(6) and section II-3.7200 of the DOJ's Technical Assistance Manual have no application here, because this case does not involve "licensing or certification." (Dkt. 77 at 8:7-15.) But the principle of those provisions extends to other regulatory activity, as numerous decisions have found. *See Ivy v. Williams*, 781 F.3d 250, 255 (5th Cir. 2015) (program of "licensure and regulation of driving education schools"); *O'Byrne v. Reed*, No. CV 09-08406 DMB (DTBx), 2010 WL 11596665, at *4-6 (C.D. Cal. Feb. 5, 2010) (applying both section 35.130(b)(6) and section II-3.7200 to "purely regulatory" program that "licenses, taxes, inspects, and regulates" vacation rentals); *S.G. v. City of Los Angeles*, No. LA CV17-09003 JAK (PJWx), 2020 WL 8837146, at *12 (C.D. Cal. Feb. 21, 2020) (applying section 35.130(b)(6), section II-3.7200, and related case law to Los Angeles's "licensing, certification, permitting or regulation."). Section II-3.7200 itself provides that a public entity "may not discriminate on the basis of disability in its licensing, certification,

and regulatory activities" and provides the example that "The State is not accountable for discrimination in the employment or other practices of XYZ company, if those practices are not the result of requirements or policies established by the State."  Nothing in section 35.130(b)(6), the Technical Assistance Manual, or case law suggests that a public entity may have liability for a lack of access attributable to private enterprise that is regulated, but not "licensed" or "certified," by the public entity.

Finally, Plaintiffs claim the City previously argued that any lack of accessible housing is not attributable to the City, and the Court rejected that argument, because the claim here is not about a lack of accessible housing, but a lack of access to the City's program.  (Dkt. 77 at 4:19-5:19.)  All of that is correct.  But it is not the same argument the City makes in this motion.  The argument here is that rent control of inaccessible private units does not violate Title II, when rent control is not the source of the lack of access.  The Court has not considered that argument, and it should do so now.

### III. CONCLUSION

For the foregoing reasons, and those discussed in its opening brief, Defendant City of Oakland respectfully requests that its motion for judgment on the pleadings be granted.

Respectfully submitted,

Dated: July 2, 2021                BARBARA J. PARKER, City Attorney


By: /s/ Kevin P. McLaughlin
Kevin P. McLaughlin, Supervising Deputy City Attorney
Attorneys for Defendant
CITY OF OAKLAND