# EXHIBIT B

```
1              IN THE UNITED STATES DISTRICT COURT
2                NORTHERN DISTRICT OF CALIFORNIA
3                            - - -
4
5     IAN SMITH, and MITCH JESERICH,      )
      on behalf of themselves & all       )
6     others similarly situated,          )
                                          )
7                     Plaintiffs,         )
                                          )
8         vs.                             ) CASE NO:
                                          )
9     CITY OF OAKLAND, a Public entity,   ) 4:19-CV-05398-JST
                                          )
10                    Defendants.         )
      _____)
11
12
13             DEPOSITION OF CITY OF OAKLAND
14                     by and through
15                 CHANEE FRANKLIN MINOR
16                PERSON MOST KNOWLEDGEABLE
17                   OAKLAND, CALIFORNIA
18                    NOVEMBER 9, 2021
19
20
21
22    ATKINSON-BAKER, a Veritext Company
      (800)288-3376
23    www.depo.com
24    REPORTED BY:  MELLONY L. KNIGHT, CSR NO. 8448
25    FILE NO.:  4950223


                                                    Page 1
```

```
 1
 2                IN THE UNITED STATES DISTRICT COURT
 3                  NORTHERN DISTRICT OF CALIFORNIA
 4                              - - -
 5
 6   IAN SMITH, and MITCH JESERICH,       )
     on behalf of themselves & all        )
 7   others similarly situated,           )
                                          )
 8                     Plaintiffs,        )
                                          )
 9        vs.                             ) CASE NO:
                                          )
10   CITY OF OAKLAND, a Public entity,    ) 4:19-CV-05398-JST
                                          )
11                     Defendants.        )
     _____ )
12
13
14          Deposition of CHANEE FRANKLIN MINOR, Person
15   Most Qualified, taken on behalf of Plaintiff via
16   videoconference equipment, commencing at 10:32 a.m.,
17   Tuesday, November 9, 2021, before Mellony L. Knight,
18   CSR No. 8448.
19
20
21
22
23
24
25
```

Page 2

```
 1                  A P P E A R A N C E S
 2            FOR THE PLAINTIFF:
 3            DISABILITY RIGHTS ADVOCATES
              BY:   SEAN BETOULIERE, ESQ.
 4                  EMILY SEELENFREUND, ESQ.
              2001 Center Street, 4th Floor
 5            Berkeley, California  94704
              (510) 665-8644
 6            (sbetouliere@dralegal.org)
              (eseelenfreund@dralegal.org)
 7
 8            FOR THE DEFENDANT and THE WITNESS:
 9            CITY OF OAKLAND
              BY:   KEVIN P. MCLAUGHLIN, ESQ.
10            One Frank H. Ogawa Plaza, 6th Floor
              Oakland, California  94612
11            (510) 238-2961
              (kmclaughlin@oaklandcityattorney.org)
12
13
                                    - - -
14
15
16
17
18
19
20
21
22
23
24
25

                                              Page 3
```

```
 1                        I N D E X
 2
 3    WITNESS:   CHANEE FRANKLIN MINOR
 4    EXAMINATION                                          PAGE
 5         BY MR. BETOULIERE                                 6
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1        Q.  Is there anyone else in the room with you
2    today?
3        A.  Let me see.  I had a cat and a kid.
4        Q.  That's fine.  So can you just confirm that you
5    won't be communicating with your attorney through any
6    nonverbal means during today's deposition?
7        A.  I confirm.
8        Q.  Okay.  And did you bring any documents or notes
9    with you today?
10       A.  No, I did not.
11       Q.  Okay.  Can you tell me your current position
12   with the City of Oakland?
13       A.  Sure.  I'm the program manager of the Rent
14   Adjustment Program.
15       Q.  And how long have you been in that position?
16       A.  Almost close to three years I think.  It might
17   be three years October 11th.  Are we passed that?  Yes.
18   So three years.
19       Q.  Can you tell me a little bit about what that
20   job entails.
21       A.  Absolutely.  So I manage the Rent Adjustment
22   Program.  We have -- so I'm in charge of strategic
23   innovision, staffing, budget and supervision and
24   training of staff, communicating with the Council and
25   the Mayor on policy issues, as well as the department on
```

Page 8

```
 1   policy issues concerning property owners and tenants and
 2   housing generally.  And I've grown the program from 11
 3   to 27 employees in the past three years.  I'm very proud
 4   of that.
 5        Q.   Congratulations.
 6        A.   I throw that in any time I get a chance because
 7   it's very hard.
 8        Q.   Yeah.  Before you worked in that position, did
 9   you have any other jobs with the City?
10        A.   Not with the City of Oakland, no.
11        Q.   With another city?
12        A.   Yes.
13        Q.   Which city was that?
14        A.   City of Berkeley.
15        Q.   And what was your position there?
16        A.   I was a staff attorney with the Rent Adjustment
17   Program -- I mean, Rent Stabilization Program.
18        Q.   Just out of curiosity, what did you do in that
19   role?
20        A.   Several things.  I was staff attorney so I
21   defended the agency litigation.  I advised the executive
22   director, the board on housing policy issues, as well as
23   public records, government administrative issues as
24   well.  I supervised and grew their public information
25   efforts and I served as a hearing officer.
```

1  Q.  Okay.  I'm going to pop an exhibit that has
2  formerly been marked as Exhibit 1 into the chat.  It
3  should show up for you in just a moment.  I'm also going
4  to share my screen so you can see it that way.  Give me
5  one second.
6       Is my screen showing up for you now?
7  A.  Yes.
8  Q.  Ms. Minor, are you familiar with this document?
9  A.  No.
10 Q.  This is for your deposition, pursuant to Rule
11 30(b)(6).  Did you understand you're testifying today
12 pursuant to this notice?
13 A.  Now I do.
14 Q.  So I'm going to go down to Exhibit C of this
15 notice.  Do you know that you've been designated by the
16 City to speak on its behalf regarding certain of these
17 topics?
18 A.  Yes.
19 Q.  You do.  Okay.
20     Do you understand that you've been chosen by
21 the City to speak on its behalf regarding topic 4, which
22 is Defendant's Rent Adjustment Program including all
23 related city records.
24 A.  Yes.
25 Q.  And are you prepared to speak on the City's

Page 10

```
 1   behalf with respect to that topic?
 2       A.  Yes, I am.
 3       Q.  I understand this is your job sort of day in
 4   and day out.  Can you tell me a little bit about what
 5   you did to prepare?
 6       A.  Pardon?  I didn't hear you.
 7       Q.  Can you tell me what you did to prepare to
 8   speak on this topic, without revealing any privileged
 9   conversations with your attorney.
10       A.  I really didn't do much because I know the
11   program inside and out, so I'm just ready to chat with
12   you and answer any questions.
13       Q.  Is there anyone at the City who knows more
14   about this topic than you do?
15       A.  Not at all.
16       Q.  Okay.  And then, you've also been designated to
17   speak on the City's behalf with regard to topic 14,
18   which is Defendant's efforts to create a list or
19   registry of covered units including the current stage of
20   any such list or registries.  Are you prepared to speak
21   on the City's behalf with respect to this topic?
22       A.  I am.
23       Q.  Can you tell me about what you did to prepare,
24   if anything?
25       A.  I did nothing special, except for just ready to
```

1   focus on outreach.  In education we also have a hearings
2   unit.  So I would say it helps renters.  I think it also
3   helps property owners.  So I think looking at this now
4   I'd probably edit it to say compilation of renters and
5   property owners, because I think that we help both
6   groups through our hearings unit through our housing
7   counseling and workshops and through the policies that
8   we work on with the council, the Mayor's office, and the
9   Housing Department.
10        Q.   Okay.  So going back to what you said before.
11   Is protecting renters from illegal rent increases is
12   that one of the ways the program helps renters?
13        A.   Yes.
14        Q.   Are there any renters the program is not
15   intended to help?
16        A.   No.
17             MR. BETOULIERE:  So I'm going to stop the share
18   of this.  And Ms. Knight, I'm sharing another exhibit
19   now in the chat.  We're going to mark this as
20   Exhibit 14.  Rent Adjustment Program annual report
21   2018-19 and 2019-20.
22             THE WITNESS:  Can I get a glass of water?
23             MR. BETOULIERE:  Do you want to take a quick
24   break?
25             THE WITNESS:  I don't need a break.  I just

1         Q.  I was going to ask you about when the ordinance
2    was adopted, but we've already covered that.  I won't
3    cover it again.  Down here it says the current ordinance
4    OMC Section 8.22.010 regulates most residential rent
5    increased in Oakland.  Does that mean that most private
6    rental units are covered by the Rent Adjustment Program?
7         A.  Yes.
8         Q.  Okay.  And that also means that most Oakland
9    renters live in a unit that's covered by the program,
10   correct?
11        A.  Yes.  And it also refers to the Just Cause
12   units as well.
13        Q.  Okay.  So you're talking about both Just Cause
14   and Rent Control there?
15        A.  Yes.
16        Q.  Got it.  Does the City know at all how many
17   renters live in a unit covered by just the rent control
18   portion?
19        A.  Not exactly.
20        Q.  Would it be accurate to say that most rental
21   units in Oakland are covered by that portion of
22   ordinance?
23        A.  Yes.
24        Q.  Okay.  And renters who live in a unit covered
25   by that portion of the unit they're all protected from

1     component to an anti-displacement policy."
2            Based on this, is it safe to say one purpose of
3     the Rent Control Program is to protect renters from
4     displacement?
5        A.   Yes.
6        Q.   I believe you've covered a lot of this already,
7     but can you elaborate a little bit on how it does that.
8        A.   The three primary -- we are an active
9     enforcement agency.  We have a hearings unit that
10    monitors rents.  We have a very strong outreach
11    community engagement component that does housing
12    counseling and serves approximately 400 to 600 residents
13    a month.  We are in the community with our outreach
14    campaigns, and outreach meaning where we're doing
15    community counseling to help folks understand the law
16    and understand their rights and access to legal
17    services.  And we are regularly speaking to policy
18    makers on rental housing law in Oakland and advising on
19    the direction of some of the policy initiatives that we
20    see would be helpful.
21       Q.   And is the protection from illegal rent
22    increases, is that one of the prongs protecting renters
23    from displacement?
24       A.   Yes.
25       Q.   Would you view that as a key prong?

```
 1              A.   Yes.
 2              Q.   Ms. Minor, all else being equal, will renters
 3      who do not live in housing covered by the Rent
 4      Adjustment Program be more vulnerable to displacement
 5      than renders who do?
 6              A.   Yes.
 7              Q.   Okay.  Should a person's ability to access the
 8      Rent Adjustment Program's protections from displacement
 9      depend on whether or not they have a disability?
10              MR. MCLAUGHLIN:  Objection:  Vague, incomplete
11      hypothetical.
12              THE WITNESS:  So I would like to clarify
13      however, because the way that these questions are
14      framed -- because if a unit is not covered under Rent
15      Control they are still -- if they're still covered under
16      Just Cause the majority of our services are still
17      available.  So the housing counseling is available to
18      all tenants who are Just Cause, and eviction
19      protections -- and I do not want to underplay the
20      importance in eviction protection.  In fighting
21      displacement it is very significant to have eviction
22      protections.  We also offer mediation services to all
23      who are covered.  So we do free mediations.  If you're
24      under Just Cause or under Rent Control you can have
25      mediation with conflicts with property owners that
```

Page 34

1     that's available.  I'm hoping that will ensure accuracy
2     plus communication with tenants and I'd also anticipate
3     having some type of petition process that could be
4     created if a landlord hasn't properly registered.  A
5     tenant could have their own petition to withhold rent.
6     There's models out there in Berkeley where I came from.
7     This is all exploratory.  We have to have meetings with
8     stakeholders and understand what's right for Oakland.  I
9     don't want to make assumptions based on what all the
10    other jurisdictions are doing.  We understand what's
11    happening.  We want to make sure this is the right
12    design for this city.
13         Q.   Got it.  I'm going to stop sharing this.
14              <u>Private rental units built after January 1,</u>
15    <u>1983 are exempt from rent adjustment.  Is that right?</u>
16         <u>A.   Yes.</u>
17         <u>Q.   Can you explain the purpose of that exemption.</u>
18         <u>A.   Costa Hawkins, that's the only purpose.  We</u>
19    <u>have to exempt them under state law.</u>
20         <u>Q.   But as far as you're aware, there's no</u>
21    <u>independent reason for that particular exemption?</u>
22         <u>A.   If a state law was different I'm sure the City</u>
23    <u>Council would probably change that.  I would make a</u>
24    <u>recommendation to change it.</u>
25         Q.   Okay.  And we saw earlier from the report that

```
 1                  REPORTER'S CERTIFICATION

 2

 3        I, MELLONY L. KNIGHT, C.S.R. No. 8448, Certified

 4   Shorthand Reporter, certify:

 5        That the foregoing proceedings were taken before me

 6   at the time and place therein set forth, at which time

 7   the witness was put under oath by me;

 8        That the testimony of the witness and all

 9   objections made at the time of the examination were

10   recorded stenographically by me and were thereafter

11   transcribed;

12        That the foregoing is a true and correct transcript

13   of my shorthand notes so taken.

14        I further certify that I am not a relative or

15   employee of any attorney or of any of the parties, nor

16   financially interested in the action.

17        I declare under penalty of perjury under the laws

18   of the State of California that the foregoing is true

19   and correct.

20        Dated this 2nd day of December 2021.

21              [signature]

22

23        MELLONY L. KNIGHT, C.S.R. No. 8448

24

25
```

Page 66