1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    IAN SMITH, et al.,                    Case No. 19-cv-05398-JST

8                   Plaintiffs,
                                           **ORDER RESOLVING MOTIONS FOR**
9         v.                               **SUMMARY JUDGMENT**

10   CITY OF OAKLAND,                       Re: ECF Nos. 111, 141

11                  Defendant.

12

13        Before the Court are Plaintiffs' and Defendant City of Oakland's motions for summary

14   judgment.  ECF Nos. 111, 141.  The Court will grant Plaintiffs' motion in part, deny the City's

15   motion in part, and stay consideration of the remainder of the motions pending certification to the

16   California Attorney General, as explained herein.

17   I.   **BACKGROUND**

18        A.   **Factual Background**

19        Plaintiffs Ian Smith and Mitch Jeserich are disabled renters in Oakland, California.  They

20   sue the City of Oakland on behalf of themselves and a class of other Oakland renters with mobility

21   disabilities who need accessible housing, alleging that the City's Rent Adjustment Program

22   ("RAP") violates the Americans with Disabilities Act ("ADA") and the California Disabled

23   Persons Act ("CDPA").

24        The RAP covers "most rental units in Oakland" and is designed to protect against

25   displacement and "provid[e] relief to residential tenants in Oakland by limiting rent increases for

26   existing tenants."  ECF No. 112-2 (Minor Dep.) at 28:20–23, 29:2–5; ECF No. 112-1 ("RAP

27   Ordinance") § 8.22.010(C).  The RAP allows landlords to set initial rents at market rate but sets a

28   maximum allowable annual rent increase rate.  ECF Nos. 112-1, 112-7.

United States District Court
Northern District of California

All dwelling units constructed after January 1, 1983 are exempted from participation in the RAP.  RAP Ordinance § 8.22.030(A)(5).  Before 1985, there were no state or federal laws or regulations required privately funded multifamily housing in Oakland to be accessible to people with mobility disabilities.  ECF No. 112-9 (Haughton/Agnello Rpt.) at 8–14.  As a result, very few of the housing units covered by RAP are accessible to mobility-disabled individuals.  ECF No. 112-14 (Dea Rpt.) at 14–16; ECF No. 112-15 (Winkel Dep.) at 32:21–34:7.  There are, however, thousands of units in Oakland that were built after the enactment of laws and regulations requiring privately funded housing to be accessible.  ECF No. 112-32 (Lapkoff Rpt.) ¶¶ 49–54.  Plaintiffs seek a court order adding to the RAP "units that were required to be accessible under state or federal law, but that were built after the current January 1, 1983 cutoff date for Program coverage." ECF No. 111-1 at 2.

Victor Ramirez, the current RAP Manager, testified that, in his personal view, a later cutoff date for RAP coverage would not impair any of RAP's purposes.  ECF No. 112-38 (Ramirez Dep.) at 31:5–24.  Former RAP Manager and the City's Rule 30(b)(6) designee regarding the RAP Chanée Franklin Minor testified that the only current purpose of exempting units built after January 1, 1983 from RAP coverage is to comply with the Costa-Hawkins Rental Housing Act, and that if the state law were different, she would recommend to City Council to change the cutoff date.  Minor Dep. at 57:14–24.  Since 2016, the City has repeatedly sought repeal or amendment of the Costa-Hawkins Act for the purpose of extending rent control to post-1983 units.  *See* ECF Nos. 112-40–43.

Plaintiff Smith has a mobility disability.  ECF No. 112-18 (Smith Dep. I) at 25:17–26:22.  He has searched for accessible housing covered by the RAP and been unable to find any.  *Id.* at 58:1–60:25.  Accordingly, he lives in an accessible unit not covered by RAP, where his rent has increased more than 70% between 2012 and 2020.  ECF Nos. 112-19, 112-20–28.

Plaintiff Jeserich has a mobility disability.  ECF No. 112-30 (Jeserich Decl.) ¶ 3.  He has searched for accessible housing covered by the RAP and been unable to find any.  *Id.* ¶ 13.  Accordingly, he lives in an inaccessible unit that is subject to RAP, where the unit design requires, for instance, that he crawl on his hands and knees to enter the bathroom.  *Id.* ¶¶ 11–12.

United States District Court
Northern District of California

### B. Procedural History

Plaintiffs moved for summary judgment on April 26, 2024. ECF No. 111. Defendants moved for summary judgment on April 22, 2025 and also opposed Plaintiffs' motion. ECF No. 141. Plaintiffs filed a reply brief and an opposition to Defendants' motion, ECF No. 143, and Defendants filed a reply, ECF No. 145.[1] The Court held a hearing on August 21, 2025.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## III. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations. *Id.* at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire &*

---

[1] The parties' briefs conformed to this Court's Standing Order for All Civil Cases, which provides,

> Unless otherwise ordered, the parties must meet and confer to determine if they will file cross-motions for summary judgment. If so, only four briefs will be allowed: (1) opening brief by the plaintiff side; (2) opening/opposition brief by the defense side; (3) opposition/reply brief by the plaintiff side; and (4) reply brief by the defense side.

Standing Order for All Civil Cases Before District Judge Jon S. Tigar § G.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party satisfies

2    its initial burden of production, the nonmoving party must produce admissible evidence to show

3    that a genuine issue of triable fact"; instead, the nonmoving party must "identify with reasonable

4    particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275,

5    1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).

6    If the nonmoving party fails to make the required showing, the moving party is entitled to

7    summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  When cross-motions

8    for summary judgment are filed, each motion is evaluated separately under this standard.  *See*

9    *Comcast of Sacramento I, LLC v. Sacramento Metro. Cable Television Comm'n*, 923 F.3d 1163,

10   1168 (9th Cir. 2019).

11   **IV.    REQUEST FOR JUDICIAL NOTICE**

12          Plaintiffs request that the Court take judicial notice of 12 documents.  ECF No. 113.  These

13   include City ordinances (ECF Nos. 112-1, 112-35, 112-36, 112-37), reports and audits prepared by

14   the City (ECF Nos. 112-3, 112-4, 112-5, 112-42), a City of Oakland webpage (ECF No. 112-7),

15   the Costa-Hawkins Rental Housing Act (ECF No. 112-8), and Oakland City Council resolutions

16   (ECF Nos. 112-40, 112-41).  Because courts regularly take judicial notice of government

17   documents, and the City does not oppose Plaintiffs' request, the Court takes judicial notice of

18   these documents.  *See Salas v. Gomez*, No. 14-CV-01676-JST, 2016 WL 3971206, at *5 (N.D.

19   Cal. July 25, 2016); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal.

20   2010).

21   **V.     DISCUSSION**

22          Plaintiffs assert two claims against the City: (1) violation of Title II of the Americans with

23   Disabilities Act, 42 U.S.C. §§ 12132 *et seq* ("ADA"); and (2) violation of the California Disabled

24   Persons Act, Cal. Civ. Code §§ 54–54.3 ("CDPA").  Plaintiffs move for summary judgment in

25   their favor on their ADA Title II disparate impact discrimination claim.  Because Plaintiffs' CDPA

26   claim is contingent on their ADA claim, *see* ECF No. 1 ¶¶ 97–98; Cal. Civ. Code § 54.1(d) ("A

27   violation of the right of an individual under the Americans with Disabilities Act . . . also

28   constitutes a violation of" the CDPA), Plaintiffs also move for summary judgment on their CDPA

claim. ECF No. 111 at 6 n.1. The City, likewise, moves for summary judgment in its favor with respect to Plaintiffs' ADA and CDPA claims.

### A.    Disparate Impact Discrimination Claim under Title II of the ADA

To prove a Title II disability discrimination claim, Plaintiffs must show they: (1) are individuals with disabilities; (2) are "otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) are "either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [their] disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

The City does not contest the first two elements: that Plaintiffs are disabled or that they are "otherwise qualified to participate in" the RAP. *See* ECF No. 141 at 18 n.7. The Court thus turns to the remaining two elements.

### 1.    Denial of Meaningful Access

In order to establish Plaintiffs' prima facie disparate impact discrimination claim, they must show they were "either excluded from participation in or denied the benefits of" RAP. *McGary*, 386 F.3d at 1265. The City argues that Plaintiffs fail to establish a genuine dispute of material fact on this element because they fail to present statistical or comparison evidence. ECF No. 141 at 17–20. Plaintiffs contend that there is no genuine dispute of material fact as to Plaintiffs' being denied the benefits of RAP because they presented evidence showing "few if any of the units currently covered by that Program are accessible." ECF No. 111 at 24. The Court addresses these arguments in turn.

### a.    City's Motion

The City argues that, in order to show a denial of meaningful access, Plaintiffs must present a "comparison to the experience of non-disabled persons." ECF No. 141 at 17. The City contends that Plaintiffs provide "no evidence of the experience of non-disabled persons in obtaining rent-controlled housing," no "empirical or statistical evidence of the experience of mobility-disabled persons in obtaining rent-controlled housing," no "qualitative evidence

United States District Court
Northern District of California

1    regarding a disparate need for rent-controlled housing among persons with mobility disabilities,"

2    and "no evidence regarding the accessibility of rental units generally, i.e., comparing rent-

3    controlled units to the broader pool of all rental units, or even comparing rent-controlled units to

4    non-rent-controlled units," and that without this evidence, summary judgment should be granted in

5    the City's favor.  ECF No. 141 at 18–20.  Plaintiffs respond that no such comparative or statistical

6    evidence is necessary to show a denial of meaningful access.

7        "It is true that plaintiffs often support their claims of disparate impact with statistics.  Yet

8    statistics are not strictly necessary.  This is particularly true where a disparate impact is obvious."

9    *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227–28 (9th Cir. 2023) (citation

10   modified).  For instance, in *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996), the Court did not

11   need to rely on comparisons or statistical evidence to determine that a policy that required a 120-

12   day quarantine for animals entering the state would, on its face, meaningfully deny state services

13   to visually impaired individuals with guide dogs.  *Id.* at 1486.  And in *Bolden-Hardge*, the court

14   saw the "obvious impact" that a state employer's loyalty oath requirement would have on

15   Jehovah's Witnesses, whose religious beliefs forbid them from swearing primary allegiance to a

16   government entity.  63 F.4th at 1228.

17       In the same way that it was obvious in *Crowder* that a policy requiring 120-day animal

18   quarantine would have a disparate impact on users of guide dogs, and in *Bolden-Hardge* that a

19   loyalty oath would have a disparate impact on those whose religions prohibits them from taking

20   such an oath, here it is likewise obvious that a city-run program whose criteria exclude almost the

21   entire body of accessible housing units will have a disparate impact on mobility-disabled residents

22   who require accessible housing.  Plaintiffs support this by offering evidence that somewhere

23   between 92.9% and 100% of RAP-covered units are inaccessible.  ECF No. 112-17 (Drogin Rpt.)

24   ¶ 12.

25       The City does not dispute this fact.  Instead, it argues that

26       evidence that most private units subject to rent control are
         inaccessible . . . is not sufficient or appropriate; access to the Program
27       is the issue.  A focus solely on accessibility of housing—something
         the City does not regulate—bypasses the need to show that the City's
28       facially-neutral program is the cause of a disparity.

United States District Court
Northern District of California

ECF No. 141 at 19.  But here, the City merely rehashes arguments the Court has previously

rejected.  In the Court's order denying the City's motion to dismiss, the Court held:

> Plaintiffs' claim is premised on the actions of the City of Oakland, not
> private individuals.    While soaring housing costs and a lack of
> accessible private units may be attributable to outside forces, the City
> is responsible for choosing which units to include in its rent control
> program.  By choosing to regulate rent increases only on units that are
> not accessible, the City has allegedly denied Plaintiffs meaningful
> access to the benefit it has chosen to offer . . . .  Plaintiffs are allegedly
> unable to participate in the benefit offered by the City without
> incurring undue burden to their safety and wellbeing.

ECF No. 38 at 14.  Likewise, the Court rejected a version of the same arguments raised in the

City's opposition to Plaintiffs' motion for class certification.  ECF No. 66 at 11.  Then in the

City's motion for judgment on the pleadings, the Court again rejected "simply the most recent

iteration of the same underlying argument: [that] the City is not liable for the inaccessibility of the

RAP because the injury to Plaintiffs is the lack of accessible housing, not the facially-neutral

regulation of inaccessible housing."  ECF No. 83 at 2.  The result here is no different:  the Court

finds the City's arguments are insufficient to warrant judgment in its favor as to the element of

denial of meaningful access.

### b.    Plaintiffs' Motion

The Court next turns to Plaintiffs' argument that there is no dispute that the 1983 cut-off

date for RAP coverage denies them meaningful access to the RAP.  ECF No. 111 at 23–25.

Plaintiffs present the testimony of Plaintiffs' expert Glenn Dea that, of a randomized sample of 50

rent-controlled units, all 50 were inaccessible.  Dea Rpt. at 14–16.  The City's accessibility expert,

Steven Winkel, did not dispute this finding at his deposition.  Winkel Dep. at 32:21–34:7.  Based

on Dea's conclusion, Plaintiff expert Dr. Richard Drogin concluded that somewhere between

92.9% and 100% of rent-controlled units in Oakland are inaccessible.  Drogin Rpt. ¶ 12.  The City

does not dispute or respond to this evidence.  Plaintiffs also provide their own experiences

trying—and failing—to find rent-controlled accessible housing in Oakland.  ECF Nos. 112-18,

112-30.

The City does not dispute or respond to this evidence.  Instead, it argues that "[t]he

evidence shows that accessibility of all rental housing is poor, whether new or old."  ECF No. 145

United States District Court
Northern District of California

at 17.  Aside from again committing the error of repeating an argument the Court previously

rejected, *see supra*, the relative merits of older versus newer rental units have little bearing on the

question of whether Plaintiffs are denied meaningful access to housing *in the RAP* (although they

might bear on the question of whether Plaintiffs' proposed remedy is effective).  Accordingly, the

Court finds that Plaintiffs have precluded a genuine dispute of material fact as to this element.

### 2.    Exclusion by Reason of Disability

Plaintiffs argue that there is no genuine dispute of material fact as to the fourth element of

their disparate impact claim—that their denial from the RAP was "by reason of disability"—

because they have shown that the City's design of the RAP "has the effect of excluding all or

nearly all of Oakland's accessible rental units from the Program."  ECF No. 111 at 25–26.  The

City does not appear to respond to this argument.  The Court agrees with Plaintiffs that there is no

genuine issue of material fact as to this element.  *See McGary v. City of Portland*, 386 F.3d 1259,

1265 (9th Cir. 2004) ("We have repeatedly recognized that facially neutral policies may violate

the ADA when such policies unduly burden disabled persons, even when such policies are

consistently enforced.").  Accordingly, the Court will grant partial summary judgment to Plaintiffs

as to their prima facie case of disparate impact discrimination.

### 3.    Reasonable Modification

Where the prima facie elements of an ADA Title II disparate impact discrimination claim

are shown, the public entity must make a reasonable modification unless "the public entity can

demonstrate that making the modifications would fundamentally alter the nature of the service,

program, or activity."  *Payan*, 11 F.4th at 738.  "[T]he determination of what constitutes

reasonable modification is highly fact-specific, requiring case-by-case inquiry."  *Crowder*, 81 F.3d

at 1486.  A modification is reasonable if it "seems reasonable on its face, *i.e.*, ordinarily or in the

run of cases."  *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002).  On summary judgment,

when the plaintiff produces evidence that a reasonable accommodation is possible, the burden then

shifts to the defendant to "show special (typically case-specific) circumstances that demonstrate

undue hardship in the particular circumstances."  *Id.* at 402.

The ADA's implementing regulations require public entities to make "reasonable

1    modifications in policies, practices, or procedures when the modifications are necessary to avoid

2    discrimination on the basis of disability, unless the public entity can demonstrate that making the

3    modifications would fundamentally alter the nature of the service, program, or activity." 28

4    C.F.R. § 35.130(b)(7)(i). A "fundamental alteration" is one that would "compromise[] the

5    essential nature of [the program]." *Alexander v. Choate*, 469 U.S. 287, 300 (1985) (quoting *Se.*

6    *Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979)).

7         Plaintiffs argue that their requested modification—adding units built after 1983 to the

8    RAP—is facially reasonable because those units are more likely to be accessible and current and

9    former RAP managers support such a modification (notwithstanding the Costa-Hawkins Act).

10   ECF No. 111 at 26–29. The City argues that Plaintiffs fail to show that the requested modification

11   is reasonable or effective because there is evidence that many post-1991 units are not accessible.

12   ECF No. 141 at 21–25. The City argues the modification is not necessary because of the City's

13   separately operated Access Improvement Program. *Id.* at 29–31. Finally, the City argues that the

14   modification would not be reasonable because it would "place the City in violation of California

15   Civil Code section 1954.52(a)"—a provision of the Costa-Hawkins Act. *Id.* at 28.

16        The Court sees this last issue as a threshold issue and so begins there. California Civil

17   Code section 1954.52(a)(2) prohibits rent control on dwellings that have "already been exempt

18   from the residential rent control ordinance of a public entity on or before February 1, 1995,

19   pursuant to a local exemption for newly constructed units." *Id.* The parties agree that since the

20   RAP's 1983 cutoff date was implemented in 1983, that cutoff date is reinforced by section

21   1954.52(a)(2). Plaintiffs argue that the ADA's reasonable modification requirement can preempt

22   conflicting state and local laws, ECF No. 111 at 29 (citing *Crowder*, 81 F.3d at 1485; *Mary Jo C.*

23   *v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013) ("[T]he ADA's reasonable

24   modification requirement contemplates modification to state law, thereby permitting preemption

25   of inconsistent state laws, when necessary to effectuate Title II's reasonable modification

26   provision")).

27        The record before the Court is inadequate to allow the Court to resolve the question of

28   preemption. For one thing, while Plaintiffs are correct that the ADA *can* preempt state law, their

United States District Court
Northern District of California

9

brief contains no analysis of why preemption is appropriate *in this case*.  They acknowledged as much at the hearing on these motions and offered to submit additional briefing.

For another, and as the City persuasively points out, "[o]rdinarily where modification of a state law is sought, the state entity charged with implementing or enforcing the law is the defendant."  ECF No. 141 at 28.  Inviting the state to participate in the litigation is particularly appropriate here, because "the City is not a proponent of the limitation imposed by section 1954.52(a)(2)," *id.*, given that the Oakland City Council has repeatedly demonstrated its opposition to section 1954.52(a)(2).  ECF Nos. 112-40, 112-41.  Therefore, "the City is in no position to defend against a modification to section 1954.52(a)(2)."  ECF No. 141 at 28.

Plaintiffs argue that "[t]he Court does not need to directly rule" on the preemption issue and instead can "order Oakland to take whatever actions are reasonable and necessary to remedy" the RAP's denial of meaningful access to disabled renters.  ECF No. 143 at 23.  Such an order might violate the requirements that an injunction "describe in reasonable detail . . . the act or acts restrained or required," Fed. R. Civ. P. 65(d), and that it not be "impermissibly vague," *Vasquez Perdomo v. Noem*, No. 25-4312, 2025 WL 2181709, at *15 (9th Cir. Aug. 1, 2025).  Also, Plaintiffs do not present any modification options that would *not* violate section 1954.52(a)(2), and the Court cannot reasonably order the City, as a remedy to Plaintiffs' ADA claim, to violate state law.

The City suggests that the Court certify the preemption question to the California Attorney General pursuant to 28 U.S.C. § 2403(b) and Federal Rule of Civil Procedure 5.1.  ECF No. 141 at 29.  For the reasons just given, the Court agrees that the City should not be required to defend a state law, the purposes of and policies behind which the City may not share or understand.  *Perry v. Brown*, 671 F.3d 1052, 1071 (9th Cir. 2012), *vacated and remanded on other grounds*, *Hollingsworth v. Perry*, 570 U.S. 693 (2013) ("[A] state *must* be permitted to intervene if a state officer is not already party to an action in which the constitutionality of a state law is challenged.") (emphasis in original)); *see also Roe v. LexisNexis Risk Solutions Inc.*, No. 12-cv-6284-BRO-E, Order Regarding Motion for Judgment on the Pleadings, ECF No. 23 at 5 (C.D. Cal. Jan. 3, 2013) (where plaintiff "establish[ed] a substantial question regarding the constitutionality of the statute

United States District Court
Northern District of California

1    as applied," "it would be inappropriate for the Court to render judgment on this motion without

2    providing the [state] with the opportunity to defend the statute against this challenge").

3        The Court thus will certify the challenge to the California Attorney General, pursuant to 28

4    U.S.C. § 2403(b) and Federal Rule of Civil Procedure 5.1(a).[2]  The parties are ordered to submit a

5    proposed notice of certification by September 5, 2025.  Once the Court issues such a notice, the

6    Court will stay further consideration of the motions for summary judgment during the 60-day

7    period in which the Attorney General is permitted to intervene.  *See* Fed. R. Civ. P. 5.1(c).

8                    **4.    Fundamental Alteration**

9        At the hearing on these motions, the parties disputed whether Plaintiffs moved for

10   summary judgment on the issue of whether the City will be able to establish that Plaintiffs'

11   proposed remedy would fundamentally alter the RAP.

12       A party moving for summary judgment must "identify[] each claim or defense—or the part

13   of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  The

14   City argues that fundamental alteration is not at issue here because Plaintiffs did not include that

15   issue in their notice of motion.  *See* ECF No. 111 at 6.  Plaintiffs respond that they put the claim at

16   issue because it is addressed in the body of their memorandum of points and authorities, which

17   states, "Oakland will not be able to establish its affirmative defense that changing the current

18   January 1983 cutoff date would fundamentally alter the nature of City rent control."  *Id.* at 29.

19   The issue first arose at the hearing on the motion.  Neither party cited any authority to support its

20   position.

21       The parties are ordered to meet and confer regarding an appropriate resolution to this

22   dispute, which may, for example, include an opportunity for the parties to submit additional

23   briefing on the issue of fundamental alteration.  Any agreement must be reduced to writing and

24   presented to the Court as a proposed order.  If the parties are unable to resolve their dispute, they

25   are ordered to submit competing briefs of five pages or less addressing whether Plaintiffs provided

26

27   [2] The City previously made this request at the motion to dismiss stage, and the Court denied it at
     that time "[b]ecause [28 U.S.C. § 2403(b) and Rule 5.1] concern the *constitutionality* of a federal

28   or state statute, which is not at issue here, and because the preemption question is not actually
     before the Court."  ECF No. 38 at 17 n.9.  The preemption question is now before the Court.

11

1    adequate notice of their summary judgment motion on the question of fundamental alteration.  In

2    either event, the parties' submission(s) are due September 5, 2025.

3                                    **CONCLUSION**

4          For the foregoing reasons, the Court grants in part Plaintiffs' motion for summary

5    judgment and grants partial summary judgment as to the prima facie elements of Plaintiffs' ADA

6    claim.  The City's motion for summary judgment on the issue of denial of meaningful access is

7    denied.  The Court stays consideration of the remainder of the parties' motions until the California

8    Attorney General files a motion to intervene or until his time to do so has expired.

9          **IT IS SO ORDERED.**

10   Dated:  August 25, 2025

11   

12                                        JON S. TIGAR
                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28