Thomas Zito (CA Bar No. 304629)
tzito@dralegal.org
Sean Betouliere (CA Bar No. 308645)
sbetouliere@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704-1204
Tel:    (510) 665-8644
Fax:    (510) 665-8511

Emily Roznowski, (*pro hac vice*)
eroznowski@dralegal.org
Raika Kim (*pro hac vice*)
rkim@dralegal.org
DISABILITY RIGHTS ADVOCATES
300 South Wacker Drive, Floor 32
Chicago, IL 60606-6680
Tel:  (332) 217-2319
Fax: (212) 644-8636

Michael Rawson (CA Bar No. 95868)
mrawson@pilpca.org
Craig Castellanet (CA Bar No. 176054)
ccastellanet@pilpca.org
PUBLIC INTEREST LAW PROJECT
449 15th Street, Suite 301
Oakland, CA 94612-06001
Tel: (510) 891-9794
Fax: (510) 891-9727

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| IAN SMITH and MITCH JESERICH, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>CITY OF OAKLAND, a public entity,<br><br>              Defendant,<br>      v.<br><br>ROB BONTA, in his official capacity as Attorney General of California,<br><br>              Intervenor-Defendant. | Case No. 4:19-cv-05398-JST<br><br>**Plaintiffs' Supplemental Motion for Summary Judgment**<br><br>Date:      May 28, 2026<br>Time:      2:00 p.m.<br>Crtrm.:   Zoom Hearing<br><br>Judge:    Hon. Jon S. Tigar |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iv

NOTICE OF MOTION AND MOTION .................................................................................1

I.    INTRODUCTION ...........................................................................................................2

        Plaintiffs' proposed "rolling" deadline for inclusion of units that were required to be accessible is supported by the California Attorney General and would ensure that Oakland's rent control Program becomes increasingly accessible over time. ...........................2

II.    LEGAL STANDARD .......................................................................................................3

III.    ARGUMENT ...................................................................................................................4

    A.    Plaintiffs do not need to disprove the City's affirmative defense as part of their prima facie case. ....................................................................................................................4

    B.    There is no genuine dispute that Plaintiffs' proposed modification is facially reasonable. ....................................................................................................................5

        1.    The novelty of this case does not prevent Plaintiffs' proposed modification from being reasonable "in the general sense." ...................................................6

        2.    Plaintiffs' undisputed evidence establishes facial reasonableness under any standard. .....................................................................................................8

        3.    The Attorney General's brief, and the legislative history of California's Tenant Protection Act, support the reasonableness of a "rolling" 15-year deadline for inclusion of newer units that were required to be accessible...................11

        4.    Adopting a rolling deadline for inclusion of units that should be accessible will give Plaintiffs and the class a meaningful opportunity to benefit from the rent control Program's protections, for the first time. ..................................12

        5.    Bringing newer units that should be accessible into the Program is necessary, because it will provide Plaintiffs with an opportunity to benefit from City rent control that is "more akin" to the one enjoyed by the nondisabled. ...........................14

    C.    The City cannot establish its "fundamental alteration" defense, because it has no evidence that Plaintiffs' proposed modification would defeat some purpose of the rent control Program. ..............................................................................................................15

        1.    The City has no evidence to support its fundamental alteration defense.....................17

        2.    The mere existence of a conflicting state law does not support the City's fundamental alteration defense, or make Plaintiffs' proposed remedy unreasonable. ...................................................................................................19

        3.    The purpose and legislative history of Costa-Hawkins is irrelevant to the fundamental alteration analysis................................................................................21

    D.    Because sections 1954.52(a)(1) and (2) of Costa-Hawkins conflict with the purpose and objectives of the ADA in the specific context of this case, they must be

preempted...........................................................................................................................................22

IV.     CONCLUSION..................................................................................................................24

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

<u>**CASES**</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................. 4

*Barber v. Col. Dept. of Revenue*, 562 F.3d 1222 (10th Cir. 2009) ........................................ 20, 21

*Bassilios v. City of Torrance*, 166 F. Supp. 3d 1061 (C.D. Cal. 2015) ...................................... 13

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012) ..................................... 14, 15

*Birdwell v. AvalonBay Cmtys., Inc.*, 742 F. Supp. 3d 1024 (N.D. Cal. 2024) ............................... 15

*C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474 (9th Cir. 2000)............................ 4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................... 4

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ................................... 3

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ............................................... 22, 23

*Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996).......................................................... 2, 16, 20

*Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*,
    No. 21-3090, 2021 WL 5411220 (6th Cir. Nov. 19, 2021) ................................................. 13

*Disabled in Action v. Bd. of Elections*, 752 F.3d 189 (2d Cir. 2014) ...................................... 16

*Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001)................................................... 2

*E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45 (2025)........................................................... 3, 12

*Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004) ....................................... 16

*Galvez v. Automobile Club of Southern California*,
    No. SA CV 16-0887, 2017 WL 4586934 (C.D. Cal. May 5, 2017) ...................................... 17

*Gibbs v. City of Pittsburgh*, 989 F.3d 226 (3d Cir. 2021).................................................... 20

*Hason v. Med. Bd. of California*, 279 F.3d 1167 (9th Cir. 2002)............................................ 7

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003)..................................................... 6

*Hindel v. Husted*, 875 F.3d 344 (6th Cir. 2017) ........................................................... 16, 21, 22

*Hubbard v. SoBreck, LLC* 554 F.3d 742 (9th Cir. 2009)..................................................... 7, 21, 24

*Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052 (5th Cir. 1997) ........................... 6, 7

Case No. 4:19-cv-05398-JST

Plaintiffs' Supplemental Motion for Summary Judgment

*Lentini v. California Ctr. for the Arts*, 370 F.3d 837 (9th Cir. 2004) ...................................... 5, 18

*Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020) ...................................... 6

*Martin v. PGA Tour, Inc.*, 204 F.3d 994 (9th Cir. 2000) .......................................................... 16

*Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144 (2d Cir. 2013) ................................... 16, 20, 22, 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................................... 4

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) .................................................. 7, 16, 22

*Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) ...................................................... 23

*Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002) ........................................... 23

*Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016) ........................................... 21, 22

*Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075 (9th Cir. 1996) ...................................................... 18

*O'Campo v. Chico Mall, LP*, 758 F. Supp. 2d 976 (E.D. Cal. 2010) ........................................... 7

*Oconomowoc Residential Programs, Inc. v. City of Greenfield*,
23 F. Supp. 2d 941 (E.D. Wis. 1998) ...................................................................... 7, 8

*Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729 (9th Cir. 2021) .............................................. 2, 5, 13

*PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) ................................................................ 16

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) .................................................... 5

*Powers v. McDonough*, 163 F.4th 1162 (9th Cir. 2025) ........................................................ 15

*Quinones v. City of Evanston*, 58 F.3d 275 (7th Cir. 1995) .................................................... 20

*Tohono O'odham Nation v. City of Glendale*, 804 F.3d 1292 (9th Cir. 2015) ............................... 23

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) ............................................................. 8

*Women's Elevated Sober Living L.L.C. v. City of Plano*, 86 F.4th 1108 (5th Cir. 2023) .................. 14

*Wong v. Regents of Univ. of Cal.*, 192 F.3d 807 (9th Cir. 1999) .............................................. 2

*Wood v. Cnty. of Alameda*, 875 F. Supp. 659 (N.D. Cal. 1995) ............................................... 7, 23, 24

*Wright v. New York State Dep't of Corr.*, 831 F.3d 64 (2d Cir. 2016) ....................................... 6


**STATUTES**

42 U.S.C. § 12101(b)(1) ........................................................................................ 24

42 U.S.C. § 12101(b)(2)-(4) .................................................................................... 24

Cal. Gov't Code § 12955.1.1 .................................................................................................... 10

**RULES**

Fed. R. Civ. P. 56 ....................................................................................................................... 3

Fed. R. Evid. 201(b) ................................................................................................................. 19

**REGULATIONS**

24 C.F.R. § 100.201 ................................................................................................................. 10

24 C.F.R. § 100.205(a) ............................................................................................................. 10

28 C.F.R. § 35.130(b)(7)(i) ................................................................................................ passim

Cal. Code Regs, tit. 24, Chapter 11A §§ 1101A.1-1102A.4 .................................................. 10

Cal. Code Regs, tit. 24, Chapter 2 § 202 ................................................................................. 10

**OTHER AUTHORITIES**

Steve Wertheim, Cal. State Assemb., Concurrence in S. Amends., Assemb. B. 1482, Reg. Sess. (2019) ............................................................................................................................. 11

Timothy Griffiths, S. Rules Comm., Office of S. Floor Analyses, Third Reading, Assemb. B. 1482, Reg. Sess. (Cal. 2019) ............................................................................................. 11

# NOTICE OF MOTION AND MOTION

TO DEFENDANT CITY OF OAKLAND AND TO ITS ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on May 28, 2026 at 2:00 p.m. in Courtroom 6 of the Oakland Courthouse located at 1301 Clay Street, Oakland, California before the Honorable Jon S. Tigar, Plaintiffs will and hereby do move this Court for an order granting summary judgment pursuant to Federal Rule of Civil Procedure 56.

Specifically, Plaintiffs seek an order finding: 1) that Plaintiffs have established the prima facie reasonableness, necessity, and effectiveness of their core requested modification, that the City expand the rent control Program to include "units that were required to be accessible under state or federal law, but that were built after the current January 1, 1983 cutoff date for . . . coverage;" 2) that Plaintiffs have offered sufficient undisputed evidence to establish the prima facie reasonableness, necessity, and effectiveness of **either** of their two proposed options for doing this: a) immediately bringing in all "existing rental units that were required to comply with state or federal accessible design requirements when built," such that every existing unit that was required to be accessible would be covered by the Program, or b) the adoption a "rolling' deadline for inclusion of such units, such that more and more units subject to state or federal accessibility laws would be brought into the Program over time;" 3) that the City has failed to show that either of these options for providing Plaintiffs and the class with a meaningful opportunity to benefit from rent control would fundamentally alter the Program; 4) that, in view of the Attorney General's brief and the legislative history of California's Tenant Protection Act of 2019,  a 15-year "rolling" deadline for inclusion of new units would best "'harmonize' the compromises embodied in the State's housing laws" and meet the requirement of being "'no more burdensome' than what is 'necessary to provide complete relief' to Plaintiffs," and that this modification is reasonable, necessary, and effective, ECF No. 178 at 13; and 5) that, to the extent such a 15-year rolling deadline (or any other necessary reasonable modification) is in conflict with sections 1954.52(a)(1) and (2) of Costa-Hawkins or any local Oakland law or regulation, those lower laws are preempted by the requirements of the Americans with Disabilities Act in the context of this case.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all concurrently filed declarations and exhibits, all prior summary judgment briefs, declarations, and exhibits filed by Plaintiffs in this action, all other pleadings and papers on file in this action, and any oral argument this Court permits.

Plaintiffs' Supplemental Motion for Summary Judgment

## I. INTRODUCTION

**Plaintiffs' proposed "rolling" deadline for inclusion of units that were required to be accessible is supported by the California Attorney General and would ensure that Oakland's rent control Program becomes increasingly accessible over time.**

In its first summary judgment order, the Court rightly found that Plaintiffs and other Oakland tenants who need accessible housing are denied a meaningful opportunity to benefit from Oakland's rent control Program, because few if any of the units currently covered by that Program are accessible. *See* ECF No. 152 (Order Mots. Summ. J.) at 7-8. Where, as here, a Court has found that people with disabilities do not have meaningful access to a public entity's "programs or services, causing a disparate impact, then the public entity is required to make reasonable modifications to its practices or procedures." *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (citing *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996)). "[A] reasonable modification in response to a disparate impact finding is focused on modifying a policy or practice to improve systemic accessibility." *Id.*

To provide people who need accessible housing with a real and meaningful opportunity to access the protections of Oakland's rent control Program, Plaintiffs have asked the City to extend the Program's protections to "units that were required to be accessible under state or federal law, but that were built after the current January 1, 1983 cutoff date for . . . coverage." *See* ECF No. 111 (Pls.' Mot.) at 1. From the inception of this litigation, Plaintiffs have proposed two ways that the City could make this reasonable and necessary modification: either 1) the City could immediately bring in all "existing rental units that were required to comply with state or federal accessible design requirements when built," such that every existing unit that was required to be accessible would be covered by the Program, or 2) it "could adopt a 'rolling' deadline for inclusion of such units, such that more and more units subject to state or federal accessibility laws would be brought into the Program over time."[1] *See* ECF No. 143 (Pls.' Reply) at 7-9 (discussing

---

[1] Even if Plaintiffs had not suggested these two specific ways of bringing in newer units that were required to be accessible, the City had an obligation to "conscientiously" explore reasonable, alternative modifications in response to Plaintiffs' requests. *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 819 (9th Cir. 1999), as amended (Nov. 19, 1999); *see also Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (finding that public entities must "undertake a fact-specific investigation to determine what constitutes a reasonable accommodation"). Instead, the City categorically refused to make any modification to its rent control Program. *See* ECF No. 111 at § II ("PSOF") ¶ 24.

history of Plaintiffs' proposed modifications).

Plaintiffs have presented more than enough undisputed evidence to establish the facial reasonableness of both options.[2] *See* ECF No. 111 (Pls.' Mot.) at 21-24; ECF No. 143 (Pls.' Reply) at 7-14. And, because the City has no evidence to support its fundamental alteration defense—as discussed in prior briefing and explained in more detail below—an injunction requiring the City to take either course would be well supported. *See* ECF No. 111 (Pls.' Mot.) at 24-25; ECF No. 143 (Pls.' Reply) at 16-20; *see also infra* § III(B).

Plaintiffs do not waive their prior argument regarding the reasonableness of either option to provide them with a meaningful opportunity to access the protections of City rent control. However, in view of the California Attorney General's position that a "rolling" deadline for inclusion of new units would "'harmonize' the compromises embodied in the State's housing laws" and meet the requirement of being "'no more burdensome' than what is 'necessary to provide complete relief' to Plaintiffs," Plaintiffs believe a Court order imposing a rolling 15-year deadline for inclusion of units that were required to be accessible is the better of their two proposed options. *See* ECF No. 178 (Statement of California Attorney General) at 11-14; *see also Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1049 (9th Cir. 2013). Plaintiffs' supplemental briefing will thus focus primarily on the reasonableness of this specific remedy, which has the added benefit of ensuring that the rent control Program will become increasingly accessible over time. *See* ECF No. 112-32 (Lapkoff Report) at ¶ 70 (opining that if a "'rolling' deadline for inclusion were adopted" such that "increasing numbers of accessible units were added to the RAP over time . . . the gap in opportunity between Disability households and Non-disability households would continue to shrink.").

## II.    **LEGAL STANDARD**

A moving party is entitled to summary judgment on a claim or affirmative defense—or any portion thereof—if "there is no genuine dispute as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56. To meet its initial burden of production on summary judgment, a moving party need only present evidence to support a prima facie showing that there is no genuine dispute as to any

---

[2]    This is especially true because Plaintiffs only need to prove reasonableness by a preponderance of the evidence, a standard they have more than met. *See E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 47 (2025) ("The usual standard of proof in civil litigation is preponderance of the evidence.").

fact material to a claim, or that one or more elements of an affirmative defense asserted by the opposing party cannot be established. *See C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (holding that a party moving for summary judgment on its own claims "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case," after which the burden "moves to the opposing party, who must present significant probative evidence tending to support its claim or defense") (citation modified); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material only if it would "affect the outcome of the suit under the governing law"—"[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A dispute as to a material fact is genuine only if "the **evidence** is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (emphasis added). To establish a genuine dispute sufficient to warrant trial on a claim or defense, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence offered in support of an alleged factual dispute is "merely colorable" or "not significantly probative," summary judgment may still be granted. *Anderson*, 477 U.S. at 249-50.

## III. ARGUMENT

### A. Plaintiffs do not need to disprove the City's affirmative defense as part of their prima facie case.

In its prior briefing and at oral argument, the City asserted that it was part of Plaintiffs' prima facie "burden to show that [their requested] modification can be done consistent with the purposes of the [rent control] Program." *See* Declaration of Emily Roznowski in Support of Pls.' Suppl. Mot. Summ. J. ("Roznowski Decl."), Ex. A at 38:12-15. This is flatly wrong.

Whether Plaintiffs' requested modification would impair some purpose of the rent control Program

is part of the City's fundamental alteration defense, on which the City, not Plaintiffs, bears the burden of proof. *See* 28 C.F.R. § 35.130(b)(7)(i) (requiring public entities to make "reasonable modifications in policies, practices, or procedures" when "necessary to avoid discrimination on the basis of disability, unless **the public entity can demonstrate** that making the modifications would fundamentally alter the nature of the service, program, or activity" in question) (emphasis added); *see also Lentini v. California Ctr. for the Arts*, 370 F.3d 837, 845 (9th Cir. 2004) (recognizing that fundamental alteration is an affirmative defense, and "whether an accommodation causes a fundamental alteration is 'an intensively fact-based inquiry'") (citation omitted).

In other words, it is the City's burden to show that Plaintiffs' requested modification **would** fundamentally alter the nature or purpose of the rent control Program—it is not part of Plaintiffs' initial burden to show that it would not. *See id.*; *see also Pierce v. County of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008) (explaining burden-shifting framework).

The City cannot meet this burden, because it has no evidence to support its fundamental alteration defense, and Plaintiffs have offered significant undisputed evidence—including testimony from the City's own employees and Rule 30(b)(6) designees—that changing the current January 1, 1983 cutoff date for coverage would not impair any purpose of the Program. *See* ECF No. 111 (Pls.' Mot.) at 24-25; ECF No. 143 (Pls.' Reply) at 16-20; *see also infra* § III(C).

> **B.**     **There is no genuine dispute that Plaintiffs' proposed modification is facially reasonable.**

If a court has found that people with disabilities do not have meaningful access to a public entity's "programs or services, causing a disparate impact"—as this Court has already done—"the public entity is required to make reasonable modifications to its practices or procedures." *Payan*, 11 F.4th at 738. "[A] reasonable modification in response to a disparate impact finding is focused on modifying a policy or practice to improve systemic accessibility." *Id.*[3]

---

[3] To the best of Plaintiffs' knowledge, the Ninth Circuit has not articulated a specific test for the reasonableness of a systemic modification. *See Payan*, 11 F.4th at 738-39 (collecting cases). However, in the context of "an accommodation based on an individualized request or need," *id*. at 738, a plaintiff must establish that that the defendant discriminated against them by "(a) failing to make a requested a reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004).

In establishing the prima facie reasonableness of a requested modification, a plaintiff must prove "that a modification was requested and that the requested modification is reasonable." *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997). "The plaintiff meets this burden by introducing evidence that the requested modification is reasonable **in the general sense**." *Id.* (emphasis added).

"If the plaintiff meets this burden, the defendant must make the requested modification unless the defendant pleads and meets its burden of proving that the requested modification would fundamentally alter the nature" of the program, service or activity at issue. *Id*. The defendant's "burden focuses on the specifics of the plaintiff's or defendant's circumstances and not on the general nature of the accommodation." *Id.* at 1060. "**[S]uch evidence is relevant only to a fundamental alteration defense and not relevant to the plaintiff's burden to show that the requested modification is reasonable**." *Id.* (emphasis added); *see also Lopez v. Catalina Channel Express, Inc*., 974 F.3d 1030, 1036 (9th Cir. 2020) (explaining that the Ninth Circuit has endorsed the burden-shifting framework described in *Johnson*).

The Second Circuit, which employs an analogous burden-shifting framework for evaluating reasonable modification claims, has explicitly held that at summary judgment, plaintiffs bear "a 'light burden of production' as to the facial reasonableness" of a proposed modification. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 76-77 (2d Cir. 2016) (citing *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189-90 (2d Cir. 2015)). To meet their prima facie burden, "[i]t is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003) (citation omitted). By doing so, the plaintiff has "made out a *prima facie* showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant." *Id.* (citation omitted). Here, Plaintiffs have more than met their prima facie burden of establishing reasonableness.

        1.      <u>The novelty of this case does not prevent Plaintiffs' proposed modification from being reasonable "in the general sense."</u>

As far as Plaintiffs are aware, this is the first case in the country to consider whether people with disabilities have a meaningful opportunity to benefit from a city rent control Program, and what must be done if a court finds—as this Court already has—that they do not. This means there is no perfectly on-point

precedent for the Court to look to, as it considers the facial reasonableness of Plaintiffs' requested modification. However, the fact that a requested modification "does not fall within the four corners of . . . prior case law" does not make it unreasonable. *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004); *see also Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1172 (9th Cir. 2002) ("Courts must construe the language of the ADA broadly in order to effectively implement the ADA's fundamental purpose of 'provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities'" (citation omitted)) . Plaintiffs do not know of any case holding that a requested modification is unreasonable simply because no prior court has considered it—and indeed, such a holding would be contrary to the broad remedial purpose of the ADA. *See Hason*, 279 F.3d at 1172.

Moreover, while there may not be other cases that consider the **specific** modification Plaintiffs seek here, courts have consistently held that the ADA can preempt conflicting state or local laws. *See* ECF No. 111 (Pls.' Mot.) at 24-25 (discussing cases holding that the ADA's reasonable modification requirements can preempt conflicting state or local laws or regulations); *see also, e.g.*, *Hubbard v. SoBreck, LLC*, 554 F.3d 742, 747 (9th Cir. 2009) (holding that provisions of California's Disabled Persons Act conflicted with and were preempted by the ADA); *Wood v. Cnty. of Alameda*, 875 F. Supp. 659, 665-66 (N.D. Cal. 1995) (holding that a provision of the California Workers' Compensation Act was contrary to the purpose of the ADA and thus preempted); *O'Campo v. Chico Mall, LP*, 758 F. Supp. 2d 976, 985 (E.D. Cal. 2010) (holding that procedural requirements of a California law conflicted with and were preempted by the ADA). Thus, modifications that conflict with state or local law can be reasonable "in the general sense," supporting the facial reasonableness of Plaintiffs' proposed remedy. *See Johnson*, 116 F.3d at 1059.

*Oconomowoc Residential Programs, Inc. v. City of Greenfield* is particularly instructive on this issue. 23 F. Supp. 2d 941, 954 (E.D. Wis. 1998). In that case, a city defendant had relied on a state law prohibiting residential group homes for people with disabilities from being within 2,500 feet of each other to justify its denial of the plaintiff's request for a zoning exception. *Id.* at 954-55. The court found that this state law was preempted by the ADA and the Fair Housing Amendments Act, because it had the effect of "substantially limit[ing] meaningful access to housing for the developmentally disabled," and thus served as "an obstacle to the accomplishment . . . of the full purposes and objectives of Congress" in passing both federal laws. *Id.* at 954. The court also found that an exception to the 2,500 foot rule was a reasonable

modification that the City should have made, notwithstanding the conflicting state law. *Id*. at 957.

At hearing, the City relied on *Barnett*—which held that a requested accommodation that violated the rules of an employer's seniority system would "ordinarily be unreasonable"—to argue that Plaintiffs' requested modification to the rent control Program could not be reasonable in the general sense or "the run of cases," and to suggest that the Court did not even need to reach the question of fundamental alteration. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402-03 (2002). However, this finding in *Barnett* relied on a significant body of preexisting caselaw regarding the interplay between employer seniority systems and antidiscrimination law. *See id*. at 403-06. There is no similar body of existing caselaw here to conclude that bringing units that should be accessible into the rent control Program would **not** be reasonable in the general sense. Moreover, even *Barnett* recognized that an accommodation that would not be reasonable in the run of cases can be reasonable "in the particular case," based on specific facts. *Id.* at 405-06.

Here, Plaintiffs have presented specific undisputed facts that are more than sufficient to establish the reasonableness of their requested modification—both in the general sense, and in the particular case—as discussed in more detail below.

        2.      <u>Plaintiffs' undisputed evidence establishes facial reasonableness under any standard.</u>

As the Court found in its earlier Order, the City of Oakland now has "thousands of units . . . that were built after the enactment of laws and regulations requiring privately funded housing to be accessible." ECF No. 152 (Order Mots. Summ. J.) at 2; *see also* ECF No. 111 (Pls.' Mot.) at 22-23; ECF No. 143 (Pls.' Reply) at 9-11. There is no genuine dispute that later-built units which were required to be accessible are far more likely to actually be accessible than anything currently covered by the rent control Program. *See* ECF No. 111 (Pls.' Mot.) at 22-23; ECF No. 143 (Pls.' Reply) at 9-11.

Plaintiffs have presented more than enough evidence to establish, as a prima facie matter, that it would be reasonable to bring these units into the rent control Program—whether all at once, or through a "rolling" 15-year deadline for inclusion—so that Plaintiffs and others who need accessible housing will finally have a real opportunity to access the protections against excessive rent increases.

To begin, Plaintiffs provided evidence that when the rent control Program ordinance was enacted in 1980, it contained no exemption for new construction at all, and that the current January 1, 1983 cutoff date for rent control Program coverage was not added until November 1, 1983—at which time it exempted only

**ten months** of newly-built rental units. ECF No. 111 (Pls.' Mot.) at § II ("PSOF") at ¶ 33. Now, that same January 1983 cutoff date for rent control serves to exempt all rental units built over the past **43 years.** *See* PSOF ¶ 34.

The fact that even recently-built units were covered by the rent control Program when the January 1, 1983 cutoff date was originally enacted strongly suggests that recently-built units could be covered again, without fundamentally altering the Program or upsetting the balance between its various purposes that the City Council originally intended to strike. It also suggests that the current January 1983 cutoff date no longer helps to strike the same balance between the Program's purposes that it once did. Indeed, the City conceded as much at the August 2025 hearing on summary judgment, stating that "the City Council has expressed that the balance is out of whack too far in favor of landlords . . . by freezing things as of 1983, you have all this inventory built since then where maybe people have gotten their fair return, and it should rightly be rent-controlled." Roznowski Decl. Ex. A at 37:25-38:6.

The facial reasonableness of expanding the cutoff date for the rent control Program to include newer units that were required to be accessible when built is also supported by the sworn testimony of current rent control Program Manager Victor Ramirez. At deposition, Mr. Ramirez testified that in his personal view, having a later cutoff date for rent control Program coverage would not impair any purpose of the Program. PSOF ¶ 36; *see also* ECF No. 152 (Order Mots. Summ. J.) at 2. Similarly, Chanée Franklin Minor, the City's 30(b)(6) designee for its rent control Program and former Program Manager, testified that the only current purpose of exempting units built after January 1, 1983 from rent control Program coverage was to comply with the Costa-Hawkins Act, and that if state law were different, she would make a recommendation to City Council to change the cutoff date. PSOF ¶ 37; *see also* ECF No. 152 (Order Mots. Summ. J.) at 2.

In addition, the Oakland City Council has on at least **three** occasions unanimously passed resolutions supporting repeal or reform of Costa-Hawkins, so that it could bring rental units built after 1983 into the rent control Program. The first two such resolutions, passed in 2016 and 2017, were discussed in Plaintiffs' prior briefing. *See* PSOF ¶¶ 38-39. The third, which was not provided by Defendant during discovery and of which Plaintiffs were previously unaware, was passed on July 16, 2024. *See* Plaintiffs' Request for Judicial Notice, Ex. A. This resolution—in support of the "Justice for Renters Act," which would have repealed the Costa-Hawkins Rental Housing Act in its entirety—noted that Costa-Hawkins

"prohibits cities that established rent control laws prior to [its] passage in 1995 from expanding rent control" to later-built units, and expressed the City Council's desire to have "authority over local rent control laws . . . be returned to cities and counties that choose to adopt such local rent control laws." *Id.* The City Council also found, in passing this resolution, that the City of Oakland "continue[s] to experience an extreme housing affordability crisis" in which "the vast majority" of City renters are "rent burdened" (meaning that they pay over thirty percent of their income on rent), and that repeal of Costa-Hawkins would "allow jurisdictions to more effectively address this crisis by providing them full authority to protect affordable rental housing." *Id.*

Similarly, in January of 2023, the City Council formally adopted its new Housing Element, which recommends that Oakland continue to seek amendment of the Costa-Hawkins Act "to close the loophole" preventing residential rental units built after 1983 from being covered by the Rent Adjustment Program. PSOF ¶ 40.

Finally, the City has stipulated that Plaintiffs' requested modification is administratively feasible, in the sense that units that were subject to state or federal access laws when built could be added to the City's rent registry in the same way as any other unit covered by the Rent Adjustment Program. *Id.* at ¶¶ 41-42. This means, for example, that for multifamily dwellings built after March 13, 1991, that do not have an elevator, only the ground floor units that were actually required to be accessible would be subject to the rent registry requirement and brought into the rent control Program, because all other units in the building would be exempt.[4] *See id.*

The City has not disputed any of this evidence, which supports the reasonableness of bringing all existing units that were required to be accessible into the rent control Program immediately, **and** of bringing such units pursuant to a "rolling" 15-year deadline. The Court should thus find that Plaintiffs have

---

[4] As Plaintiffs have explained previously, any building with four or more units that was certified for occupancy after March 13, 1991, is required to have at least some accessible units. 24 C.F.R. § 100.205(a); Cal. Code Regs, tit. 24, Chapters 2 § 202 (defining "covered multifamily dwelling" as buildings with four or more dwelling units), 11A §§ 1101A.1-1102A.4 (noting applicability of requirements). Generally speaking, if a building has an elevator, all units must be accessible; if not, the requirements apply only to units on the ground floor. *See* 42 U.S.C. § 3604(f)(7) (defining "covered multifamily dwellings" under federal law); 24 C.F.R. § 100.201 (same); Cal. Gov't Code § 12955.1.1 (defining "covered multifamily dwellings" under state law).

established the facial reasonableness of **both** possible options, and that the burden has shifted to the City to show that such modifications would fundamentally alter the nature of its Program—something that, as explained in more detail below, it cannot do.

> 3. The Attorney General's brief, and the legislative history of California's Tenant Protection Act, support the reasonableness of a "rolling" 15-year deadline for inclusion of newer units that were required to be accessible.

The California Attorney General's brief further supports the facial reasonableness of modifying the current January 1983 cutoff date for City rent control to bring in later-built units that were required to be accessible—specifically, by adopting a "rolling" 15-year deadline for inclusion of such units. *See* ECF No. 178 at 11-13. Under such a "rolling" deadline, the rent control Program would be modified to include housing that was required to be accessible under state or federal access laws or regulations and that was issued a certificate of occupancy "at least 15 years prior, starting from the date of the Court's order," and continuing until Plaintiffs and the class have an equal opportunity to access City rent control. *Id.* at 12.

As the Attorney General explains, a 15-year "rolling" deadline "could bring newer, accessible housing units into the RAP while maintaining sufficient financial incentives for constructing new housing in a manner that complements the Legislature's recent Tenant Protection Act of 2019, which generally limits statewide rent increases on certain rental units certified for occupancy more than 15 years ago." *Id.* at 13.

According to the Attorney General and his analysis of relevant legislative history, the California Legislature specifically "selected a 15-year period to avoid stifling new construction, a purpose undergirding the Costa-Hawkins Act as well." *Id.* (citing legislative history of both Acts); *see also* Steve Wertheim, Cal. State Assemb., Concurrence in S. Amends., Assemb. B. 1482, Reg. Sess., at 2 (2019) (annual rent increase restrictions "would not apply to new construction for 15 years, in an effort to ensure that the rent cap would not discourage new construction"); Timothy Griffiths, S. Rules Comm., Office of S. Floor Analyses, Third Reading, Assemb. B. 1482, Reg. Sess., at 8 (Cal. 2019) ("In response to the concern that the bill could otherwise discourage new housing development, the author has exempted new construction – buildings up to 15 years old – from the bill.").

That the California Legislature imposed a 15-year "rolling" deadline for the Tenant Protection Act's rent limitations to ensure that those limitations would not discourage new construction strongly suggests that imposing a similar 15-year rolling deadline for inclusion of units into Oakland's rent control Program would

Case No. 4:19-cv-05398-JST

Plaintiffs' Supplemental Motion for Summary Judgment

avoid any negative impact on the development of new housing as well. This further supports a finding that Plaintiffs have met their facial burden of showing that a new 15-year "rolling" deadline would be reasonable—particularly because Plaintiffs need only make this showing by a preponderance of the evidence. *See E.M.D. Sales*, 604 U.S. at 47.

    4.    <u>Adopting a rolling deadline for inclusion of units that should be accessible will give Plaintiffs and the class a meaningful opportunity to benefit from the rent control Program's protections, for the first time.</u>

As Plaintiffs explained in their earlier briefing—incorporated here by reference, and summarized below—they have also offered undisputed evidence that bringing units that should be accessible into the rent control Program would be effective, as it would finally give them a real and meaningful opportunity to benefit from the Program's protections without having to endure the daily hardships of life in an inaccessible unit as a condition of coverage. *See* ECF No. 143 (Pls.' Reply) at 14-16.

Based on all available evidence, the chance that Plaintiffs and the class can find an accessible unit covered by the Program is currently zero, or close to it. *See* PSOF ¶¶ 6-12, 13-23. According to Dr. Lapkoff's estimates, the current 0% probability of finding an accessible rent-controlled unit would increase to somewhere between 9% and 27%, depending on how many units were added to the Program and how many are currently covered by City rent control. *See* ECF No. 112-32 ¶¶ 55-70; *id*. ¶ 66 tbl.6.

The City has dismissed this as a "slight[]" or "incremental" change, ECF No. 141 at 19, but there is nothing slight about the difference between a 27% chance—or even a 9% chance—and no chance at all. Moreover, if the current January 1, 1983 cutoff date for City rent control were changed such that all existing units which were subject to state or federal access requirements when built became part of the Program, this would impact Plaintiffs and the class in a way that is not captured by probabilities alone: as a practical matter, every rental unit in Oakland that is actually accessible to them would be covered.

Adopting a 15-year "rolling" deadline for inclusion of such units—the alternative option that Plaintiffs proposed, and that the California Attorney General supports—would be even more effective over time. As Dr. Lapkoff pointed out in her expert report, "[i]f increasing numbers of accessible units were added to the RAP over time (for example, via a "rolling" deadline for inclusion), the gap in opportunity" between nondisabled renters and Plaintiffs "would continue to shrink." ECF No. 112-32 (Lapkoff Report) at ¶¶ 70, 75; *see also id.* at n.5 ("This gap would also presumably narrow over time as older rental units are

replaced by new construction."). This is so for the simple reason that a 15-year "rolling" deadline would continue to bring new units that were required to be accessible into the Program in perpetuity, long after the deadline set by any one-time modification to the current cutoff date.

While it is true that this "rolling" deadline remedy would not be as effective **initially** as adopting a static deadline that would bring every existing unit that that should be accessible into the Program in one go, a more gradual "rolling" deadline for inclusion would eventually be far more effective. Within 15 years of a Court order requiring the City to adopt a "rolling" deadline for inclusion of such units, every currently-existing unit would be covered, and the pool of units subject to City rent control that were required to be accessible would continue to grow every year. Over time—as new units subject to state or federal accessibility requirements are built, and as older inaccessible rental units are replaced—the gap in opportunity between Plaintiffs and nondisabled renters would inevitably narrow. *See* ECF No. 112-32 (Lapkoff Report) at ¶¶ 70, 75; *see also id.* at n.5.

The City's argument against the effectiveness of Plaintiffs' proposed modifications is in essence that if a public entity cannot do the perfect thing immediately, it need not do anything at all. This is not how the ADA works. A recent Sixth Circuit case, *Dayton Veterans Residences*, is helpful on this point. There, the court reversed an order granting summary judgment for the defendant, finding that a reasonable jury could conclude that plaintiffs' proposed accommodation would provide disabled veterans with an opportunity that was "**more equal** to the opportunity of nondisabled persons." *Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 21-3090, 2021 WL 5411220, at *8 (6th Cir. Nov. 19, 2021) (emphasis added). In other words, what made the proposed accommodation in *Dayton* reasonable and effective was not that it was perfect or would lead to absolute equality of opportunity, but that it would give people with disabilities an opportunity that was **meaningfully more equal** than the one currently available to them. The same is true here.

This is in accord with the Ninth Circuit's holding in *Payan* that "a reasonable modification in response to a disparate impact finding is focused on modifying a policy or practice to **improve** systemic accessibility." 11 F.4th at 738 (emphasis added). "[T]he binary choice that the City presents—between doing essentially nothing, and doing everything conceivable—is a false choice that has no basis in the ADA." *Bassilios v. City of Torrance*, 166 F. Supp. 3d 1061, 1081 (C.D. Cal. 2015); *see also id.* (holding

that federal disability rights laws are not "maximalist statutes," but ones "aimed at increasing accessibility").

For the reasons discussed above, the Court should find that either of Plaintiffs' proposed remedies are reasonable and would effectively provide people who need accessible housing with a meaningful opportunity to benefit from City rent control, but that the "rolling" deadline preferred by the California Attorney General would be, over time, the more effective of the two.

> 5. <u>Bringing newer units that should be accessible into the Program is necessary, because it will provide Plaintiffs with an opportunity to benefit from City rent control that is "more akin" to the one enjoyed by the nondisabled.</u>

In analyzing the necessity of requested reasonable modifications, the Ninth Circuit has held that covered entities must take "reasonable steps" to provide people with disabilities with a "like experience" of their services, programs, activities, or benefits, that is as "comparable" to the one enjoyed by members of the nondisabled public as possible. *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012); *see also Fortyune*, 364 F.3d at 1083 (because plaintiff "require[d] an attendant to **enjoy** the viewing of a film, the modification that he requested, *i.e.,* that [the theater] ensure that his companion could be seated next to him, was necessary" (emphasis added)). However, contrary to the City's arguments in its earlier briefing, a proposed modification does not need to be perfect to be necessary. Rather, a modification is "necessary" if it would help people with disabilities "have an experience [that is] **more akin** to that of [the] non-disabled." *Baughman*, 685 F.3d at 1135 (emphasis added). In other words, the core question of the "necessity" inquiry is similar to the core question of the "effectiveness" inquiry, discussed above: whether a proposed reasonable modification would meaningfully move the needle in the direction of greater access.[5] *See id.*; *see also supra* § III(B)(4).

---

[5] At hearing, the City cited *Women's Elevated Sober Living L.L.C. v. City of Plano*, 86 F.4th 1108 (5th Cir. 2023) for the proposition that "necessary" means "essential," or "indispensable," or "cannot do without," but the Ninth Circuit has expressly rejected this narrow conception of necessity as "retrograde," and inconsistent with the ADA's broad remedial purpose. *Baughman*, 685 F.3d at 1134-35. Read as the City suggests, "the ADA would require very few accommodations indeed." *Id.* at 1134. "After all, a paraplegic *can* enter a courthouse by dragging himself up the front steps, . . . so lifts and ramps would not be 'necessary[.]' . . . . And no facility would be required to provide wheelchair-accessible doors or bathrooms, because disabled individuals could be carried in litters or on the backs of their friends." *Id.* at 1134-35. That, fortunately, is "not the world we live in." *Id.* at 1135.

Case No. 4:19-cv-05398-JST

Plaintiffs' Supplemental Motion for Summary Judgment

As the Ninth Circuit recognized in *Baughman*, the reasonableness inquiry is always bounded by what is possible, but if a covered entity "**can** make [the experience of people with disabilities] less onerous and more akin to that enjoyed by" the nondisabled, "it must take reasonable steps to do so." 685 F.3d at 1136 (emphasis added); *see also id.* at 1135 (holding that as technology advanced, "our expectations of what is reasonable changed."). Here, Plaintiffs and other people who need accessible housing are indisputably denied a meaningful opportunity to benefit from the protections of Oakland's rent control Program as it stands. ECF No. 152 (Order Mots. Summ. J.) at 7-8. There is also no genuine dispute that the City "can make" Plaintiffs' experience of the rent control Program "more akin" to the one enjoyed by nondisabled renters, by bringing as many newer units that should be accessible into the Program as possible (either all at once, or over time). *See* ECF No. 111 (Pls.' Mot.) at § IV(E)(1); ECF No. 143 (Pls.' Reply) at §§ II(D)(1), (3). The Court should thus find that Plaintiffs' proposed modification is necessary.

The Court should also find that Oakland's meager "Access Improvement Program" is not an effective or reasonable alternative accommodation, for the reasons stated in Plaintiffs' prior briefing. *See* ECF No. 143 (Pls.' Reply) § II(D)(4).

    C.    <u>**The City cannot establish its "fundamental alteration" defense, because it has no evidence that Plaintiffs' proposed modification would defeat some purpose of the rent control Program.**</u>

As discussed above, public entities must make "reasonable modifications in policies, practices, or procedures" when "necessary to avoid discrimination on the basis of disability, unless **the public entity can demonstrate** that the modifications would fundamentally alter the nature of the service, program, or activity" in question. 28 C.F.R. § 35.130(b)(7)(i) (emphasis added).

As this Court has correctly held, "not all alterations are fundamental alterations." *Birdwell v. AvalonBay Cmtys., Inc.*, 742 F. Supp. 3d 1024, 1041 (N.D. Cal. 2024) (discussing cases). Indeed, Plaintiffs' requested modification—which seeks to expand the City's existing rent control Program to include later-built units that should be accessible—is arguably not an "alteration" at all. *See Powers v. McDonough*, 163 F.4th 1162, 1195 (9th Cir. 2025) (finding that district court's order to build additional housing, in response to a finding of disability discrimination, was not a fundamental alteration because it "**simply expands—not alters**—the program" (emphasis added)).

In considering the fundamental alteration defense, the Supreme Court has expressly rejected the

15

contention that "all the substantive rules . . . are sacrosanct and cannot be modified under any circumstances." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001). To the contrary, courts must "carefully weigh the **purpose**, as well as the letter, of [a] rule before determining that no accommodation would be tolerable." *Id* at 691 (emphasis added); *see also Crowder*, 81 F.3d at 1485 (court must determine whether "the decision reached by the state authority is appropriate under the law and in light of proposed alternatives"); *McGary*, 386 F.3d at 1270 (noting that court must consider purpose of nuisance law in determining whether requested accommodation was susceptible to an affirmative defense); *Hindel v. Husted*, 875 F.3d 344, 348-49 (6th Cir. 2017) (weighing the purpose of requirement to cast ballots on voting machines, rather than online, in considering a fundamental alteration defense); *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 159 (2d Cir. 2013) (noting that courts must "analyze the importance" of existing program elements, rather than "defer[ring] automatically" to current program design).

Here, the purpose of the Rent Adjustment Program is to "provid[e] relief to residential tenants in Oakland by limiting rent increases for existing tenants" while also encouraging rehabilitation of rental units when vacancies occur, reducing incentives for eviction, "encouraging investment in new residential rental property in the city," and "allowing efficient rental property owners" a fair return and rental income that is sufficient to cover various increasing costs of operation. *See* Oakland Mun. Code § 8.22.010(C). The City has provided **no evidence** to establish that changing the current January 1, 1983 cutoff date for the rent control Program—either to bring in all existing units that were required to be accessible immediately, or to bring such units in on a rolling basis—would negatively impact any of these purposes or otherwise "fundamentally alter the nature" of the rent control Program,[6] which it is their burden to do. *See infra* § III(C)(1).

---

[6] The "nature" of the rent control Program is a question to be determined by this Court. *See Fortyune*, 364 F.3d at 1084 (determining that the "nature of the service provided by" a theater was "screening films"); *Martin v. PGA Tour, Inc.*, 204 F.3d 994, 1000 (9th Cir. 2000) (determining that golf tournament provided a "competition in shot-making"), *aff'd*, 532 U.S. 661 (2001); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 504 (4th Cir. 2018) (determining that absentee voting was a separate program, distinct from the state's voting program as a whole); *see also Disabled in Action v. Bd. of Elections*, 752 F.3d 189, 198-99 (2d Cir. 2014) (determining that "the relevant benefit is the opportunity to fully participate" in the state's voting program, not "merely the opportunity to vote at some time and in some way."). This Court has already found that the core nature of the benefit the rent adjustment Program provides is the "regulation of rent increases on private housing units." *See* ECF No. 38 (Order Den. Mot. Dismiss) at 12.

1. <u>The City has no evidence to support its fundamental alteration defense.</u>

As discussed in their prior briefing, Plaintiffs proposed a 10-year rolling deadline for inclusion of newer units that should be accessible as early as July of 2019, before this case was even filed. ECF No. 143-1 (Supp. Betouliere Decl.), Ex. JJ at 2 ("One option would be to have a rolling deadline for units to enter the RAP—i.e., that all buildings that should have accessible units under either state or federal law, and that are more than 10 years old, would be brought into the RAP."). Plaintiffs also raised the possibility of a "rolling" deadline in their response to the City's motion to dismiss, noting that "cities across California have adopted a variety of different exemption dates for similar rent stabilization programs," and that in the Tenant Protection Act of 2019 (known as AB 1482) "the California Legislature adopts a statewide anti-rent-gouging regulation applying to units on a rolling date, exempting only 'housing that has been issued a certificate of occupancy within the previous 15 years.'" ECF No. 23 (Pls.' Opp'n Def.'s Mot. Dismiss) at 24. Plaintiffs have also consistently asked the City to modify its Program by bringing in existing rental units, built after 1983, that were required to be accessible. *See* PSOF ¶ 24.

Despite knowing, since before the filing of this case, that Plaintiffs sought to make newer units that should be accessible subject to the protections of City rent control, the City has completely failed to present evidence that **any** of Plaintiffs' proposed timelines for doing so would "fundamentally alter the nature" of the Program. *See* ECF No. 143 (Pls.' Reply) at § II(D) (lack of evidence to support "fundamental alteration" defense).

In its prior briefing, the City suggested that it could not mount a fundamental alteration defense because Plaintiffs failed to request a sufficiently "specific" modification, citing *Galvez v. Automobile Club of Southern California* in support. However, the plaintiff in *Galvez* failed to request **any** concrete modification. *See* No. SA CV 16-0887, 2017 WL 4586934, at \*6 (C.D. Cal. May 5, 2017) (finding that the plaintiff asked defendants to "modify their discriminatory policies," but never specified "what change it is that [p]laintiff intends [d]efendant to make."), *aff'd*, 745 F. App'x 39 (9th Cir. 2018). Here, by contrast, Plaintiffs have proposed several possible timelines by which units that should be accessible could be brought into the rent control Program, with evidence to establish the facial reasonableness of any of them. *See supra* § III(B) (establishing facial reasonableness). The City has provided no evidence to suggest that even one of these options (much less each of them) would constitute a fundamental alteration.

Plaintiffs' Supplemental Motion for Summary Judgment

The City plainly believes, as a general matter, that including newer units in the rent control Program would **not** defeat the purposes of the Program, because it has repeatedly sought authority to do just that. *See supra* § III(B)(2); *see also* ECF No. 141-3 (Weinstein Decl.) at ¶ 13 ("City leadership has repeatedly urged the State Legislature to repeal this provision of the Costa Hawkins Act, and permit Oakland and other local jurisdictions to apply rent control to newer properties").

The City attempts to diminish this fact by saying it has "not analyzed" where a new cutoff date should be drawn, or how "applying rent control to newer units would have to be balanced against any potential negative impacts on new development" and the Program's purposes. ECF No. 141-3 (Weinstein Decl.), ¶ 15. But of course, performing such an analysis—and providing actual evidence of where the line between a reasonable modification and a fundamental alteration would be—is exactly what the City's fundamental alteration defense required. *See* 28 C.F.R. § 35.130(b)(7)(i); *see also Lentini*, 370 F.3d at 845 (9th Cir. 2004) (holding that "whether an accommodation causes a fundamental alteration is an intensively fact-based inquiry") (citation modified). The City's failure to perform any analysis regarding the potential impacts of adding newer units to City rent control does not **support** the City's fundamental alteration defense—it is, instead, fatal to it.

Though the City makes various arguments about how Plaintiffs' proposed modification might impact the purposes of the rent control Program, the only thing even approaching **evidence** that it cites in support of any of them is the Declaration of Ms. Weinstein, Director of the City's Department of Housing and Community Development. Ms. Weinstein, in turn, only offers a vague reference to "disagreement among scholars" regarding the impacts of rent control, and says that "applying rent control to new development **may** upset the balance" of unspecified "other regulations." ECF No. 141-3 (Weinstein Decl.) at ¶¶ 14-16 (emphasis added). In addition to being inadmissible for the reasons discussed in Plaintiffs' prior briefing, ECF No. 143 (Pls.' Reply) at § II(B), this is pure speculation that cannot support summary judgment. *See Lentini*, 370 F.3d at 846 (defendant's "reasonable speculation about the effect" an accommodation might have was not sufficient to support an affirmative defense); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (holding that "a scintilla of evidence is not enough to create a genuine issue of material fact," and that "mere allegation and speculation do not create a factual dispute for purposes of summary judgment") (citation modified).

At hearing, the Court suggested that the City's argument that an expansion of rent control would lead to "less investment in . . . creation of new housing" and "less investment in maintenance and renovation of existing units" was "on the verge of being judicially noticeable," while at the same time noting correctly that there was no evidence in the record regarding whether that effect would be "large" or "trivial." Roznowski Decl. Ex. A at 6:3-13. The City's unsupported contentions regarding the possible impact of adding units that were required to be accessible to rent control are not a proper subject of judicial notice, which is limited to facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). According to the City's own witnesses, "[t]here is disagreement among scholars, advocates and policymakers" regarding whether rent control impacts new development at all. ECF No. 141-3 (Weinstein Decl.) at ¶ 14. While there is nothing in the record to substantiate this statement, it supports a conclusion that the City's contentions regarding the potential impacts of expanding rent control are neither "generally known," nor something that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned," as the Federal Rules of Evidence require. Fed. R. Evid. 201(b).

Moreover, whether Plaintiffs' proposed modification would have a "large" or "trivial" effect on the purposes of Oakland's rent control Program—a point on which the City has offered no evidence—is the question at the core of the City's fundamental alteration defense. *See* 28 C.F.R. § 35.130(b)(7)(i). If the effect of a reasonable modification is only trivial, it is—by definition—not a fundamental alteration. *See id.*

The Court should find that the City has failed to offer undisputed evidence sufficient to establish its fundamental alteration defense, and enter summary judgment in favor of Plaintiffs on that defense.

        2.    <u>The mere existence of a conflicting state law does not support the City's fundamental alteration defense, or make Plaintiffs' proposed remedy unreasonable.</u>

In its earlier Order, the Court observed that all of Plaintiffs' proposed options for providing people who need accessible housing with a meaningful opportunity to access the benefits of City rent control would violate section 1954.52(a)(2) of Costa-Hawkins, and that "the Court cannot reasonably order the City, as a remedy to Plaintiffs' ADA claim, to violate state law." ECF No. 152 (Order Mots. Summ. J.) at 10. This, however, is incorrect.

The fact that sections 1954.52(a)(1) and (2) would conflict with or nullify Plaintiffs' proposed modification to the rent control Program, if not preempted, does not itself support the City's fundamental

alteration defense or make Plaintiffs' modification unreasonable. *See* ECF No. 38 (Order Den. Mot. Dismiss) at 17 (discussing cases, and holding that that "the possibility that a modification might preempt state law does not automatically render it unreasonable.").

As the Seventh Circuit held in a suit under the Age Discrimination in Employment Act brought against a city acting under a state pension law, "[a] discriminatory state law is not a *defense* to liability under federal law; it is a *source* of liability under federal law." *Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995). Here, the City "believes that it is compelled to follow the directive from the state, but the Supremacy Clause of the Constitution requires a different order of priority." *Id.*

"Reliance on state statutes to excuse non-compliance with federal laws is simply unacceptable under the Supremacy Clause." *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1233 (10th Cir. 2009); *see also Gibbs v. City of Pittsburgh*, 989 F.3d 226, 230 (3d Cir. 2021) (holding that city defendant "may not shield itself from federal antidiscrimination liability just by saying that it was trying to follow state law."). Indeed, "a state law at odds with a valid Act of Congress is no law at all." *Barber*, 562 F. 3d at 1234 (Gorsuch, J., concurring). If it were otherwise, any state could evade the requirements of the ADA and authorize discrimination against people with disabilities, simply by passing a state law. The Second Circuit summarized this problem succinctly in *Mary Jo C.*:

> If all state laws were insulated from Title II's reasonable modification requirement solely because they were state laws, state law would serve as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting Title II. Far from providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, the ADA would be powerless to work any reasonable modification in any requirement imposed by state law . . . .

707 F.3d at 163 (citation modified).

For this reason, multiple courts, including the Ninth Circuit, have held that the ADA's reasonable modification requirement can preempt conflicting state and local laws—as Plaintiffs have pointed out previously, and as the California Attorney General reiterated in its recent brief. *See* ECF No. 178 at 7-11 (discussing cases); *see also Crowder*, 81 F.3d at 1485 (holding that reasonable modification requirement of the ADA can require modifying conflicting state administrative regulation); *Mary Jo C.*, 707 F.3d at 162 (finding "nothing in the statutory phrase 'reasonable modification' to suggest that Congress intended to exclude modifications that require violation or waiver of mandatory state statutes in some circumstances");

*Hindel*, 875 F.3d at 349 (finding that state law requiring all voting machines to be certified did not make requested modification involving uncertified machines facially unreasonable, because "a state procedural requirement may not excuse a substantive ADA violation," and "requiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does") (citation modified); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 508 (4th Cir. 2016) (rejecting "that the mere fact of a state statutory requirement insulates public entities from making otherwise reasonable modifications to prevent disability discrimination").

Courts have reached similar results when considering situations in which state and local laws conflict with other aspects of the ADA, or with analogous federal antidiscrimination statutes. *See, e.g.*, *Hubbard*, 554 F.3d at 747 (holding that ADA fee provisions preempted conflicting state law permitting award of attorneys' fees to prevailing defendants). As now-Justice Gorsuch recognized concerning section 504 of the Rehabilitation Act, "the demands of . . . [federal law] do not yield to state laws that discriminate against the disabled; it works the other way around." *Barber*, 562 F.3d at 1234 (Gorsuch, J., concurring). Thus, public entities "who rely on their compliance with discriminatory state laws as evidence of their reasonableness will normally find themselves proving their own liability, not shielding themselves from it." *Id.*

As the California Attorney General concluded in its recent brief, "if the ADA requires an expansion of the RAP's cutoff date, then the ADA supersedes the Costa-Hawkins Act's bar on doing so in that specific application under the Supremacy Clause." ECF No. 178 at 10-11.

3. The purpose and legislative history of Costa-Hawkins is irrelevant to the fundamental alteration analysis.

By its plain text, the "fundamental alteration" defense to a reasonable modification claim under the ADA focuses on whether "the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity" in question. 28 C.F.R. § 35.130(b)(7)(i). Here, the public entity Program to which Plaintiffs seek meaningful access is Oakland's Rent Adjustment Program, not Costa-Hawkins. *See* ECF No. 152 (Order Mots. Summ. J.) at 7-8 (finding no genuine dispute that Plaintiffs and the class are denied meaningful access to the City's rent control Program, and granting partial summary judgment on this issue). Accordingly, Oakland must "demonstrate that making [Plaintiffs'

requested] modifications would fundamentally alter the nature of the" Rent Adjustment Program itself, **not** that these modifications would fundamentally alter the Costa-Hawkins Act in some way. *See* 28 C.F.R. § 35.130(b)(7)(i).

The Ninth Circuit and appellate courts across the country have made clear that the fundamental alteration analysis must focus on the specific public entity Program at issue. *See, e.g.*, *McGary*, 386 F.3d at 1270 (holding that lower court must consider the purposes of the nuisance abatement ordinance at issue in determining whether requested modifications to enforcement of that specific ordinance were reasonable); *Hindel*, 875 F.3d at 348-49 (finding that core question was whether proposed modification would "fundamentally alter Ohio's election system"—the program to which plaintiffs sought access—not whether it would fundamentally alter a conflicting state regulatory requirement); *Mary Jo C.*, 707 F.3d at 161-65 (analyzing whether modification of a statutory three-month filing deadline for seeking state retirement program benefits would be reasonable as a matter of law, where plaintiff sought a reasonable accommodation to deadline so that she could receive benefit of that state retirement program); *Lamone*, 813 F.3d at 508-09 (considering whether requested modification would fundamentally alter the specific state voting program to which plaintiffs sought access and finding that defendants had not met their burden of establishing this defense, despite a state statute that conflicted with plaintiffs' requested modification).

While it is true that section 1954.52(a)(2) of Costa-Hawkins allows landlords to set initial and subsequent rents for units "already exempt" from a city rent control program, and that section 1954.52(a)(1) does the same for all units certified for occupancy after February 1, 1995—making both sets of units effectively exempt from rent control—this does not make Costa-Hawkins itself the "service, program, or activity" to which Plaintiffs seek access, or the focus of the fundamental alteration analysis. 28 C.F.R. § 35.130(b)(7)(i).

**D.** **Because sections 1954.52(a)(1) and (2) of Costa-Hawkins conflict with the purpose and objectives of the ADA in the specific context of this case, they must be preempted.**

The purpose and legislative history of sections 1954.52(a)(1) and (2) of Costa-Hawkins are also irrelevant to any conflict preemption analysis, which focuses on the purpose of the **federal** law, not of the conflicting state or local one. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). A court will find preemption where "under the circumstances of a particular case, the challenged state law stands as

an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citation modified). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the **federal** statute as a whole and identifying its purpose and intended effects." *Id.* (emphasis added); *see also id*. at 374-85 (analyzing the purposes of a federal statute imposing sanctions on Burma, but not the purposes of a conflicting Massachusetts Act, and finding that the latter is preempted); *Mi Familia Vota v. Fontes*, 129 F.4th 691, 709-11 (9th Cir. 2025) (considering the purpose of a federal voting law to increase voter participation, but not the purpose of a conflicting Arizona voting law, in finding that the federal law preempted the state law); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 851-53 (9th Cir. 2002) (discussing the purpose of the federal Endangered Species Act in finding that it preempted a California proposition, without considering the purpose of the state proposition).

In determining whether the provisions of Costa-Hawkins codified at California Civil Code section 1954.52(a)(1) and (a)(2), or any other lower law or regulation, is a "sufficient obstacle" to "the accomplishment and execution of the full purposes and objectives" of the federal Americans with Disabilities Act to warrant preemption "under the circumstances of this particular case," the Court's analysis should be "informed by examining the **federal** statute as a whole and identifying its purpose and intended effects." *Tohono O'odham Nation v. City of Glendale*, 804 F.3d 1292, 1298-99 (9th Cir. 2015) (emphasis added) (citation modified) (applying *Crosby* and finding obstacle preemption).

*Wood* is a clear example of this preemption analysis at work, in the context of the ADA and a conflicting state law. *See* 875 F. Supp. at 662-66. There, the County of Alameda argued that provisions of a California workers' compensation statute that made workers' compensation payments the sole remedy for workplace injuries barred a plaintiff's related reasonable accommodation claims under the ADA. *Id*. at 661-62. In holding that these conflicting state statutory provisions were preempted by the ADA, Judge Henderson considered the broad remedial purposes of the ADA, including:

> (1) to provide a clear and comprehensive *national* mandate for elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, *consistent,* enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the *Federal Government plays a central role in enforcing the standards established in this chapter* on behalf of individuals with disabilities; and (4) to *invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce,* in order to address the major areas of discrimination faced day-to-day by people with disabilities.

*Id.* at 663 (quoting 42 U.S.C. § 12101(b)). However, he did not consider the purposes of the conflicting state law at all. *See id.* at 662-66.

The Ninth Circuit performed a similar analysis in *Hubbard*, holding that where a losing plaintiff had nonfrivolous claims under the ADA and parallel claims under the California Disabled Persons Act (CDPA), the CDPA's two-way fee shifting provisions were preempted by the ADA, which "would bar imposition of fees on the plaintiff." 554 F.3d at 745. In reaching this result, the Ninth Circuit did not consider the purpose of the conflicting state law. *See id.*

The Americans with Disabilities Act was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *see also* §§ 12101(b)(2)-(4) (listing other purposes). Because this mandate for the elimination of discrimination is meant to be both "comprehensive" and "national," 42 U.S.C. § 12101(b)(1), courts have repeatedly held that it can preempt conflicting lower laws or regulations that stand in the way of the ADA's objectives. *See, e.g.*, *Mary Jo C.*, 707 F.3d at 160-64 (analyzing purposes and objectives of the ADA, and finding that "the natural effect of Title II's reasonable modification requirement . . . requires preemption of inconsistent state law when necessary to effectuate a required reasonable modification") (citation modified). As the Attorney General clearly explained, should the Court "find[] that the federal ADA requires the expansion of Oakland's RAP as a reasonable modification under Title II, then the required remedy under the ADA must take precedence over the Costa-Hawkins Act's proscriptions under conflict preemption, in particular impossibility preemption given the remedy's incompatibility with the Act's prohibitions." ECF No. 178 at 10-11. "In short, if the ADA requires an expansion of the RAP's cutoff date, then the ADA supersedes the Costa-Hawkins Act's bar on doing so in that specific application under the Supremacy Clause." *Id.; see also Wood*, 875 F. Supp. at 665-66.

## IV.    CONCLUSION

For the reasons stated above, the Court should find that: 1) Plaintiffs have established the prima facie reasonableness, necessity, and effectiveness of their core requested modification that the City expand the rent control Program to include units that were required to be accessible under state or federal law, but that were built after the current January 1, 1983 cutoff date for coverage; 2) Plaintiffs have offered sufficient undisputed evidence to establish the prima facie reasonableness, necessity, and effectiveness of **either** of

their two proposed modifications: a) immediately bringing into the Program all existing rental units that were required to comply with state or federal accessible design requirements when built, or b) adopting a "rolling" deadline for inclusion of those units, such that more and more units subject to state or federal accessibility laws would be brought into the Program over time; 3) the City has failed to show that either of these options for providing Plaintiffs and the class with a meaningful opportunity to benefit from rent control would fundamentally alter the Program; 4) in view of the Attorney General's brief and the legislative history of California's Tenant Protection Act of 2019, a 15-year "rolling" deadline for inclusion of new units would best "'harmonize' the compromises embodied in the State's housing laws," ECF No. 178 at 13, be no more burdensome than necessary to provide complete relief to Plaintiffs, and is reasonable, necessary, and effective; and 5) to the extent such a 15-year rolling deadline (or any other necessary reasonable modification) is in conflict with sections 1954.52(a)(1) and (2) of Costa-Hawkins or any local Oakland law or regulation, those lower laws are preempted by the requirements of the ADA in the specific context of this case.

DATED: March 27, 2026                    DISABILITY RIGHTS ADVOCATES

By: _____
                                         Sean Betouliere
                                         Thomas Zito
                                         Emily Roznowski
                                         Raika Kim
                                         Attorneys for Plaintiffs


                                         PUBLIC INTEREST LAW PROJECT


By:     */s/ Michael Rawson*
                                         Michael Rawson
                                         Craig Castellanet
                                         Attorneys for Plaintiffs