Thomas Zito (CA Bar No. 304629)
tzito@dralegal.org
Sean Betouliere (CA Bar No. 308645)
sbetouliere@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704-1204
Tel:    (510) 665-8644
Fax:    (510) 665-8511

Emily Roznowski, (*pro hac vice*)
eroznowski@dralegal.org
Raika Kim (*pro hac vice*)
rkim@dralegal.org
DISABILITY RIGHTS ADVOCATES
300 South Wacker Drive, Floor 32
Chicago, IL 60606-6680
Tel: (332) 217-2319
Fax: (212) 644-8636

Michael Rawson (CA Bar No. 95868)
mrawson@pilpca.org
Craig Castellanet (CA Bar No. 176054)
ccastellanet@pilpca.org
PUBLIC INTEREST LAW PROJECT
449 15th Street, Suite 301
Oakland, CA 94612-06001
Tel: (510) 891-9794
Fax: (510) 891-9727

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| IAN SMITH and MITCH JESERICH, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>      v.<br><br>CITY OF OAKLAND, a public entity,<br><br>        Defendant.<br>      v.<br><br>ROB BONTA, in his official capacity as Attorney General of California,<br><br>       *Intervenor-Defendant* | Case No. 4:19-cv-05398-JST<br><br>**Plaintiffs' Supplemental Reply in Support of Plaintiffs' Motion for Summary Judgment**<br><br>Date:     May 28, 2026<br>Time:     2:00 p.m.<br>Crtrm.:  Zoom Hearing<br><br>Judge:   Hon. Jon S. Tigar<br><br>Trial Date: April 20, 2025 |

# Table of Contents

I.    ARGUMENT ....................................................................................................................1

    A.    There is no question that sections 1954.52(a)(1) and (2) of Costa-Hawkins conflict with the purpose and objectives of the ADA in the context of this case, and must be preempted. ..................................................................................................................1

    B.    The City's proposed alternative accommodations are illusory and would not provide Plaintiffs with a meaningful opportunity to access City rent control—the actual Program at issue. ........................................................................................................3

    C.    Costa-Hawkins is not the "service, program, or activity" to which Plaintiffs seek access, and the purposes of that law have no bearing on the reasonableness or fundamental alteration analyses. .....................................................................................4

    D.    Plaintiffs have proven the facial reasonableness, effectiveness, and necessity of their requested modification, and the Court should reject the City's efforts to shift its "fundamental alteration" burden onto them. ............................................................8

        1.    Plaintiffs have offered more than enough evidence to establish that bringing newer units that should be accessible into the rent control Program would be reasonable. ...............................................................................................10

        2.    Plaintiffs have shown that bringing newer units that should be accessible into the Program would be effective, and give them a meaningful opportunity to benefit from the protections of rent control. ...........................................11

        3.    Plaintiffs' proposed modification is plainly necessary, because it will provide them with an opportunity to access the rent control Program that is "more akin" to the one nondisabled tenants have. ...............................................12

    E.    Oakland's new administrative burden argument is baseless, speculative, and contradicted by stipulated facts. ...............................................................................14

II.   CONCLUSION ..............................................................................................................15

Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Summary Judgment

# Table of Authorities

Cases

*Albino v. Baca,* 747 F.3d 1162 (9th Cir.2014) .................................................................... 13

*Am. Council of Blind of New York, Inc. v. City of New York*, 495 F. Supp. 3d 211 (S.D.N.Y. 2020) ............ 15

*Arizona v. United States*, 567 U.S. 387 (2012) .................................................................... 2

*Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222 (10th Cir. 2009) ................................. 4

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012) ....................................... 14

*Cf. Shavelson v. Bonta*, 608 F. Supp. 3d 919 (N.D. Cal. 2022) ................................................. 5

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661 (2010) ................................................................................................................. 15

*Cohen v. City of Culver City*, 754 F.3d 690 (9th Cir. 2014) ..................................................... 2, 5

*Cropp v. Larimer Cnty.*, 941 F.3d 1237 (10th Cir. 2019) ....................................................... 15

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ............................................... 1, 3

*Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) .......................................................... 3, 6, 7

*E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103 (9th Cir. 2010) ....................................... 12

*Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004) ..................................... 8, 11

*Hindel v. Husted*, 875 F.3d 344 (6th Cir. 2017) .................................................................... 7

*Interstate Marina Dev. Co. v. Cnty. of Los Angeles*, 155 Cal. App. 3d 435 (1984) ..................... 11

*Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052 (5th Cir. 1997) ............................ 8

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088 (9th Cir. 2013) ......................... 9

*Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020) ................................. 8

*Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144 (2d Cir. 2013) ............................... 1, 2, 7

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) ................................................... 9

*Montana Medical Association v. Knudsen,* 119 F.4th 618 (9th Cir. 2024) ............................... 4

*Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016) ......................................... 7

*Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075 (9th Cir. 1996) ................................................... 15

*Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 678 (9th Cir. 2025) ........................... 9

*Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729 (9th Cir. 2021) ......................................... 11, 12, 13

*Quinones v. City of Evanston*, 58 F.3d 275 (7th Cir. 1995) .................................................... 6

*Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F.3d 1259 (11th Cir. 2019) ................. 13

*Snapp v. United Transp. Union*, 889 F.3d 1088 (9th Cir. 2018) ............................................. 8

*Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959 (9th Cir. 2019) ............................... 15

*Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008) ............................................... 14

*Where Do We Go Berkeley v. California Department of Transportation*, 32 F.4th 852 (9th Cir. 2022) ......... 9

*Whitfield v. City of Salinas*, No. C 05-03230 JF, 2006 WL 2529509 (N.D. Cal. Aug. 31, 2006) ............... 15

Statutes

42 U.S.C. § 12101(b)(1) .................................................................................................... 2

42 U.S.C. § 12101(b)(2)-(4) .............................................................................................. 2

42 U.S.C. § 12132 ....................................................................................................... 2, 5

Cal. Civ. Code § 1954(a)(1)-(2) ........................................................................................ 1

Cal. Civ. Code § 1954.50-535 .......................................................................................... 5

Oakland Mun. Code § 8.22.010(C) ................................................................................... 8

Other Authorities

*Prima Facie, Black's Law Dictionary* (12th ed. 2024) ........................................................ 8

Rules

Fed. R. Civ. P. 26(e)(1)(A) ............................................................................................ 14

Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Summary Judgment

Regulations

28 C.F.R. § 35.130(b)(7)(i) ................................................................................................ 5, 9

28 C.F.R. § 36.104 ............................................................................................................... 15

Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Summary Judgment

# I.    ARGUMENT

### A.    There is no question that sections 1954.52(a)(1) and (2) of Costa-Hawkins conflict with the purpose and objectives of the ADA in the context of this case, and must be preempted.

In its opposition, the City makes the puzzling statement that Plaintiffs "still do not make a preemption argument" or "discuss what variant of preemption is at play," but even a cursory review of Plaintiffs' supplemental brief shows that this is incorrect. *See* ECF No. 190 § III(C)(2)-(3) (discussing conflict), III(D) (discussing preemption); *see also id*. at 1, 25 (seeking finding of conflict preemption).

As Plaintiffs explained, section 1954.52(a)(2) of Costa-Hawkins allows landlords to set initial and subsequent rents for units "already exempt" from a city rent control program, and section 1954.52(a)(1) does the same for all units certified for occupancy after February 1, 1995. *See* ECF No. 190 § III(C)(2)-(3); *see also* Cal. Civ. Code § 1954(a)(1)-(2). This means that both sets of units are effectively exempt from rent control, statewide, and that Plaintiffs' proposed modification—or any other attempt to bring later-built units that were required to be accessible into Oakland's rent control Program, in order to provide Plaintiffs and others with a meaningful opportunity to access that Program's benefits—would necessarily conflict with this part of Costa-Hawkins. *See* ECF No. 190 § III(C)(2). In the case of such a conflict, however, it is Costa-Hawkins that must give way, because the "natural effect" of the ADA's "reasonable modification requirement . . . requires preemption of inconsistent state law when necessary to effectuate a required reasonable modification." *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013) (citation modified); *see also* ECF No. 190 § III(D).

The City suggests that this Court can *only* find preemption if it is "impossible to comply with the ADA and with Costa-Hawkins." The City is wrong, but for the reasons discussed above and elsewhere, the Court should find that, in this case, compliance with both laws is in fact impossible. *See* ECF No. 190 §§ III(C)(2)-(3), (D). Moreover, impossibility is only one form of conflict preemption: a court will also find preemption where "under the circumstances of a particular case, the challenged state law stands as an **obstacle** to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (emphasis added) (citation modified); *see also* ECF No. 190 § III(D). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.*

The Americans with Disabilities Act was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *see also* § 12101(b)(2)-(4) (listing other purposes). "Congress clearly meant Title II to sweep broadly," and if state laws "were insulated from Title II's reasonable modification requirement solely because they were state laws, state law would serve as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting Title II." *Mary Jo C.*, 707 F.3d at 163 (citation modified). "Far from providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, the ADA would be powerless to work any reasonable modification in any requirement imposed by state law." *Id.* (citation modified). For this reason, the Second Circuit joined the Ninth Circuit and others in concluding that the ADA's reasonable modification requirement can preempt "inconsistent state laws when necessary to effectuate Title II's reasonable modification provision."[1] *Id.* (citation modified); *see also* ECF No. 190 § III(C)(2) (discussing other cases).

The City asserts that the Court should not find preemption here because Congress supposedly did not make a "deliberate choice" or "considered judgment" to specifically "preclude state or local government rent regulations that apply only to older housing stock," but nothing about the preemption analysis requires that level of specificity. Congress intended for the ADA to provide a "comprehensive" and "national" mandate for the elimination of discrimination, and Title II was meant to ensure that people with disabilities were not excluded from or denied the benefit of **any** of the "services, programs, or activities" public entities offer—including, necessarily, the "service, program, or activity" of rent control. 42 U.S.C. § 12132; *see also Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) (holding that these prohibitions against discrimination apply to "anything a public entity does" (citation modified)). The decision to create a comprehensive and national mandate for the elimination of discrimination—including discrimination in any "service, program, or activity" a public entity offers—is the only "deliberate choice" or "considered judgment" the Court needs to find, here.

The fact that rent regulation is an exercise of state and local police power does not change this

---

[1] While the ADA does not expressly preempt state or local laws, the presence or absence of an express preemption provision does not impact the "ordinary working of conflict preemption principles." *Arizona v. United States*, 567 U.S. 387, 406 (2012) (citation modified).

analysis. As the Ninth Circuit held in *Crowder*, "we are mindful of the general principle that courts will not second-guess the . . . decisions of state legislatures acting within their traditional police powers. However, when Congress has passed antidiscrimination laws such as the ADA which require reasonable modifications . . . it is incumbent upon the courts to insure [sic] that the mandate of federal law is achieved." *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (citation modified).

There is no question that sections 1954.52(a)(1) and (2) of Costa-Hawkins directly conflict with Plaintiffs' proposed modification. *See* ECF No. 190 § III(C)(2)-(3). There is also no question that these sections would conflict with any other attempt to bring later-built units that were required to be accessible into Oakland's rent control Program, so that Plaintiffs and other people who need accessible housing can finally have a meaningful chance to access the protections against excessive annual rent increases that the Program provides. *See id*. For this reason, the Court should find that, under the circumstances of this particular case, sections 1954.52(a)(1) and (2) of Costa-Hawkins "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting Title II—including the purpose of ensuring a "comprehensive" and "national" mandate for the elimination of discrimination—and are thus preempted. *Crosby*, 530 U.S. at 373; *see also* ECF Nos. 190 § III(D); ECF No. 178 (Brief of Attorney General) at 10-11 ("[I]f the ADA requires an expansion of the RAP's cutoff date" as a reasonable modification, "then the ADA supersedes the Costa-Hawkins Act's bar on doing so in that specific application under the Supremacy Clause.").

**B.** **The City's proposed alternative accommodations are illusory and would not provide Plaintiffs with a meaningful opportunity to access City rent control—the actual Program at issue.**

The City next argues that the Court should not find preemption because there are other possible modifications that would not conflict with sections 1954.52(a)(1) or (2), but each of their proposed modifications is illusory; none would provide Plaintiffs and the class with a meaningful opportunity to access City rent control, which is the actual Program at issue.

Plaintiffs have already detailed the many deficiencies in the City's "Access Improvement Program," which the City's own witnesses acknowledged could not be used to help someone who needs accessible rent-controlled housing remediate an inaccessible rent-controlled unit before they moved in. *See* ECF No. 143 § II(D)(4). The idea that this program—which has a small budget, a lengthy waitlist, strict income limits

for renters, rigid caps on how much an accessibility improvement can cost, and a track record of completing between zero and six projects per year—could somehow provide Plaintiffs and the class with meaningful access to the rent control Program is fanciful at best. *See id*.

The City next suggests that someone—it is unclear who—could provide a "subsidy or rent credit" to mobility-disabled tenants in newer units to make up for their current inability to benefit from the protections of City rent control, or that landlords of those units could somehow be incentivized to provide lower rents to tenants with disabilities. Even if these vague and hypothetical options were somehow workable, they would be entirely new and separate programs, **not** ways of ensuring that Plaintiffs have a real chance to benefit from the rent control Program that actually exists.

The City's final proposed alternative—a "special carve-out" where rent control does apply to newer units required to be accessible, but "only for disabled tenants"—would conflict with Costa-Hawkins in the same way as Plaintiffs' proposed accommodation, while also having the predictable perverse impact of incentivizing owners of such units not to rent to Plaintiffs or members of the class.

In short, none of the City's proposed "alternative" accommodations are viable, and none would provide Plaintiffs with the meaningful opportunity to benefit from City rent control that the ADA requires. For this reason, *Barber*—where the plaintiff mother, who was blind, could have accepted "some form of guardianship" that would have allowed her daughter's grandfather to supervise her daughter's drivers' training in place of the mother, thereby providing a viable option for supervision without violating a state statute—offers the City no help. *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1225-27 (10th Cir. 2009) (discussing facts), 1232-33 (finding no conflict preemption); *see also id*. at 1233-34 (Gorsuch, J., concurring) (explaining rationale of the state statute and noting availability of limited guardianship to supervise drivers' training). *Montana Medical Association v. Knudsen*—in which plaintiffs had established, at best, a "hypothetical or potential conflict" with the ADA—is similarly inapposite. 119 F.4th 618, 625 (9th Cir. 2024). Here, by contrast, there is a concrete and present conflict between sections 1954.52(a)(1) or (2) of Costa-Hawkins and any modification that would actually provide Plaintiffs and the class with a meaningful opportunity to benefit from City rent control. *See* ECF No. 190 § III(C)(2)-(3).

C.     <u>**Costa-Hawkins is not the "service, program, or activity" to which Plaintiffs seek access, and the purposes of that law have no bearing on the reasonableness or fundamental**</u>

**alteration analyses.**

Because it has no evidence to support its claim that Plaintiffs' modification would fundamentally alter Oakland's rent control Program, the City argues that the reasonableness and fundamental alteration analyses must focus on Costa-Hawkins instead. This is incorrect. *See* ECF No. 190 § III(C)(3).

As discussed above, Title II of the ADA is meant to ensure that people with disabilities are not excluded from or denied the benefit of the "services, programs, or activities" public entities offer. 42 U.S.C. § 12132. Similarly, the fundamental alteration defense to a reasonable modification claim focuses on whether "the public entity can demonstrate that making the modifications would fundamentally alter the nature" of the specific "service, program, or activity" in question. 28 C.F.R. § 35.130(b)(7)(i).

Costa-Hawkins is not a "service, program, or activity" offered by anyone,[2] and it is neither the thing that Plaintiffs are excluded from, nor the thing they seek meaningful access to. *See* Cal. Civ. Code § 1954.50-535 (Costa-Hawkins); *see also* ECF No. 1 (Pls.' Compl.). What Plaintiffs seek, instead, is a real chance to benefit from Oakland's rent control Program, which provides tens of thousands of Oakland tenants with stability and protection from displacement, but which—as this Court has already found—does not give Plaintiffs or others who need accessible housing with a meaningful opportunity to access these same protections. *See* ECF No. 111 § II ("PSOF") ¶¶ 2-23; ECF No. 152 (Order) at 7-8.

As Plaintiffs explained in their earlier brief, the Ninth Circuit and appellate courts across the country have made clear that analyses of both reasonableness and fundamental alteration must focus on the specific public entity Program at issue. *See* ECF No. 190 § III(C)(3) (discussing cases). The City concedes this point, saying "[n]o doubt, that is the basic principle." ECF No. 195 at 10. However, it argues—without citation to any authority—that the analysis should be different here because this case "uniquely challenges a

---

[2] While it is true that this language is meant to encompass "anything a public entity does," *Cohen*, 754 F.3d at 695, neither the City nor the State of California **do** anything with respect to Costa-Hawkins—it is merely a law that restricts how local rent control programs such as Oakland's may operate. *See* Cal. Civ. Code § 1954.50-535; *see also* ECF No. 178 (Statement of the Attorney General) § II(B) (explaining Costa-Hawkins). Moreover, even if the City or State did somehow proactively enforce the provisions of Costa-Hawkins (which they do not), there is no plausible scenario in which an enforcement action would be taken against Plaintiffs or members of the class, meaning that Plaintiffs' claim cannot be seen as seeking a modification to a public entity's enforcement of the law. *Cf. Shavelson v. Bonta*, 608 F. Supp. 3d 919, 925 (N.D. Cal. 2022) (physicians seeking injunction prohibiting prosecution for administering aid-in-dying medications in certain circumstances against state officials who would be tasked with such prosecutions).

state law *through* challenging a local law." *Id*. This is wrong for at least two reasons.

First, Plaintiffs' case is not some covert vehicle for challenging Costa-Hawkins: It is a sincere effort by and on behalf of tenants who need accessible housing to finally have a meaningful opportunity to access the protections of Oakland's rent control Program, which they have long been denied. *See* PSOF ¶¶ 13-24. The fact that sections 1954.52(a)(1) and (2) of Costa-Hawkins would conflict with Plaintiffs' proposed modification does not make Costa-Hawkins itself the "service, program, or activity" from which Plaintiffs seek to benefit, or the focus of the fundamental alteration analysis, in the same way that it does not make California the proper target of this suit. "A person aggrieved by the application of a legal rule does not sue the rule *maker* —Congress, the President, the United States, a state, a state's legislature, the judge who announced the principle of common law. He sues the person whose acts hurt him." *Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995). Here, it is the City whose Program has hurt Plaintiffs.

Second, disability rights cases where the requested remedy would require preemption of some state or local law are hardly "unique." Plaintiffs have cited many, and in each, the focus of the reasonable modification and fundamental alteration analyses was on the public entity's "service, program, or activity" at the core of the plaintiffs' case. *See* ECF No. 190 § III(C)(3) (discussing cases). For example, in *Crowder*, blind plaintiffs sought modification of Hawaii's program requiring all carnivorous mammals—including guide dogs—to be quarantined for 120 days upon entering the state, which was intended to "protect the state from the importation of the rabies disease." 81 F.3d at 1481. The lower court held that no modification to this requirement was possible, because the Hawaii legislature had already "thoroughly considered" and rejected all alternatives in passing its quarantine regulation. *Id.* at 1485. The Ninth Circuit found that this was error and that, in ADA cases, courts are required to conduct their own analysis of what was possible and reasonable, **independent** of the legislature and the conflicting statute or regulation in question, because "it is incumbent upon the courts to insure [sic] that the mandate of federal law is achieved." *Id*. at 1485.

As the Ninth Circuit explained in *Crowder*, under the ADA and its accompanying regulations, courts are obligated to "ensure that the decision reached by the state authority is appropriate under the law and in light of proposed alternatives," or else "any state could adopt requirements imposing unreasonable obstacles to the disabled, and when haled into court could evade the antidiscrimination mandate of the ADA merely by explaining that the state authority considered possible modifications and rejected them." *Id*. In remanding

the case for consideration of whether modifying quarantine requirements for guide dogs would be reasonable or a fundamental alteration, the Ninth Circuit ordered the district court to consider **not** the conflicting statute or regulation, but factors relevant to the purpose of the quarantine program itself—namely "the nature of the rabies disease, the extent of the risk posed by the disease, and the probability that the infected animals would spread it."[3] *Id.* at 1486.

Similarly, the plaintiff in *Mary Jo C.* sought a reasonable accommodation to a statutory three-month filing deadline to seek state retirement program benefits that she would have been eligible for had the deadline been waived. 707 F.3d at 149-50. In considering whether such a deadline was essential, the Second Circuit held that courts should "**analyze the importance of an eligibility requirement for a public program or benefit**, rather than to defer automatically to whatever formal legal eligibility requirements may exist." *Id.* at 159 (emphasis added) (citation modified).

Other courts are in accord. In *Hindel*, the Sixth Circuit held that the core question was whether plaintiffs' proposed modification would "fundamentally alter Ohio's election system"—the program to which plaintiffs sought access—not whether it would fundamentally alter a conflicting state certification requirement. *Hindel v. Husted*, 875 F.3d 344, 348-49 (6th Cir. 2017) (rejecting affirmative defense based on the "mere fact that a procedural requirement" set by a state statute "has not been met"). Likewise, in *Lamone*, the Fourth Circuit considered the impact of a proposed accommodation on Maryland's "absentee voting program"—again, the actual program to which plaintiffs sought meaningful access—and explained that "the relevant inquiry" was not whether a statutory requirement had been met, but whether an accommodation would defeat the "underlying substantive purpose" of that requirement. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 509 (4th Cir. 2016).

Here, the underlying substantive purpose of the rent control Program's current January 1, 1983 cutoff date (and, for that matter, of sections 1954.52(a)(1) and (2) of Costa-Hawkins) is to avoid discouraging new housing development, but the City has offered no actual evidence that Plaintiffs' proposed

---

[3] The court found that such analysis would be "particularly important" where "evidence that the risk of rabies being imported by guide dogs is low, vaccine-based alternatives may be equally or more effective in preventing the importation of rabies, and the quarantine has not once in over 75 years detected a single case of rabies among imported dogs." *Id*. at 1486 n.2.

modification would fundamentally alter this purpose, or any other purpose of the Program.[4] *See* ECF No. 190 at 15:15-19:19 (detailing lack of evidence to support the City's fundamental alteration defense).

**D.**    **Plaintiffs have proven the facial reasonableness, effectiveness, and necessity of their requested modification, and the Court should reject the City's efforts to shift its "fundamental alteration" burden onto them.**

As Plaintiffs have repeatedly explained, their prima facie burden is to **prove** that their requested modification is reasonable "in the general sense." *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997); *see also Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1036 (9th Cir. 2020) (explaining that the Ninth Circuit has endorsed the burden-shifting framework described in *Johnson*); ECF No. 190 § II(B). Contrary to the City's suggestion, this does not conflict with *Snapp*, which held only that ADA plaintiffs have the ultimate burden of proving reasonableness at trial. *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1101-02 (9th Cir. 2018) (rejecting argument that plaintiffs bore "a mere burden of production" at trial).[5] A prima facie case of reasonableness, "unless disproved or rebutted," establishes reasonableness. *Prima Facie, Black's Law Dictionary* (12th ed. 2024); *see also Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (finding that once a plaintiff makes their reasonableness showing, the defendant "can avoid liability" only "if it proves that the requested modification would fundamentally alter the nature" of the activity at issue).

Here, Plaintiffs have gone far beyond just showing that their proposed modification would be reasonable in a "general sense," and have set forth a preponderance of undisputed evidence showing that bringing later-built units that were required to be accessible into Oakland's rent control Program—either all at once, or over time—would be reasonable in this "particular case." ECF No. 190 § III(B)(2). Plaintiffs have also set forth significant undisputed evidence, including the uncontradicted testimony of the City's own employees and Rule 30(b)(6) designees, that adding later-built units would not impair any purpose of

---

[4]    The City now argues for the first time that it is "an important purpose of the Program to comply with Costa Hawkins," but this supposed "purpose" is found nowhere in the relevant statute, and is directly contradicted by the City's many resolutions and statements in support of repealing or modifying that law. *See* Oakland Mun. Code § 8.22.010(C); *see also* ECF No. 190 § III(B)(2) at 9:13-10:12 (describing passage of resolutions to repeal or reform Costa Hawkins by the Oakland City Council).

[5]    Rather than engage with actual Ninth Circuit precedent regarding Plaintiffs' prima facie burden, the City proposes a four-part reasonableness test of its own creation, for which it cites no support. ECF No. 195 at 12.

the Program or otherwise fundamentally alter it. *Id.* § III(B)(2), (C) (lack of support for fundamental alteration defense); *see also* ECF No. 111 § IV(E); ECF No. 143 § II(D)-(E). This is more than enough to prove prima facie reasonableness.

A plaintiff bringing an ADA claim only needs to prove **more** than prima facie reasonableness if the defendant rebuts that showing with evidence that the requested modification would fundamentally alter the nature of the program, service or activity at issue. *Johnson*, 116 F.3d at 1060 (finding that fundamental alteration evidence is "relevant only to a fundamental alteration defense and not relevant to the plaintiff's burden to show that the requested modification is reasonable").

The City's argument that Plaintiffs must affirmatively prove the **absence** of a fundamental alteration—even when it has not put forth any evidence to establish the **presence** of one—is contrary to both the plain language of the applicable regulation and the established law of this Circuit. *See* 28 C.F.R. § 35.130(b)(7)(i) (stating that public entities must make "reasonable modifications in policies, practices, or procedures" when "necessary to avoid discrimination on the basis of disability, unless **the public entity can demonstrate** that making the modifications would fundamentally alter the nature of the service, program, or activity" in question) (emphasis added); *see also K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1096 (9th Cir. 2013) (noting that the public entity has the burden to prove fundamental alteration).

*Where Do We Go Berkeley v. California Department of Transportation* is not to the contrary, because that case merely found that the challenged injunction was a fundamental alteration. 32 F.4th 852, 862 (9th Cir. 2022). Similarly, *Ohio House, LLC v. City of Costa Mesa* concerned review of a jury verdict that an accommodation would constitute "a fundamental change in the City's zoning scheme and thus the accommodation was unreasonable"—it says nothing at all about the plaintiff's prima facie burden. 135 F.4th 645, 678 (9th Cir. 2025) (finding that jury had an "evidentiary basis" to support its fundamental alteration finding). Finally, *McGary* affirms that fundamental alteration is the defendant's burden to prove, holding that "[t]**he municipality** remains free at trial to show that . . . mak[ing] further accommodation for [McGary's] severe illness [was] unreasonable." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (emphasis added). The Court should reject the City's attempt to make its "fundamental alteration" burden part of the prima facie reasonableness analysis.

Plaintiffs have provided overwhelming evidence to establish the facial reasonableness, necessity,

and effectiveness of **either** of their proposed methods of bringing newer units that were required to be accessible into the rent control Program, and the City has failed to raise a genuine dispute as to any of that evidence, or to set forth any evidence of its own in support of its fundamental alteration defense.[6] *See* ECF No. 190 § III(B) (evidence of reasonableness, effectiveness, and necessity), (C) (lack of support for fundamental alteration defense); *see also* ECF No. 111 § IV(E); ECF No. 143 § II(D)-(E).The Court should find in Plaintiffs' favor on each point.

> 1.    <u>Plaintiffs have offered more than enough evidence to establish that bringing newer units that should be accessible into the rent control Program would be reasonable.</u>

Despite Oakland's attempts to argue otherwise, Plaintiffs have consistently requested the same basic modification—bringing newer units that were required to be accessible into the rent control Program—and have suggested two ways of doing so: 1) the City could immediately bring in all "existing rental units that were required to comply with state or federal accessible design requirements when built," such that those existing units would be covered by the Program, or 2) it "could adopt a 'rolling' deadline for inclusion of such units, such that more and more units subject to state or federal accessibility laws would be brought into the Program over time." ECF No. 143 (Pls.' Reply) at 7-9 (discussing history of Plaintiffs' proposals). Notably, either option would continue to exempt new construction: Under the first, everything after a new date certain would be exempt, and under the second, newly-built units would be exempted for a reasonable period of years (either 10, as Plaintiffs originally proposed to the City before filing this case, or 15, as the Attorney General now suggests). *Id*.; *see also* ECF No. 178 at 11-14.

Plaintiffs have offered substantial undisputed evidence to support the reasonableness, necessity, and effectiveness of either option, and have also presented undisputed evidence that changing the current cutoff date would not impair any purpose of the program—including the **still** uncontradicted testimony of the City's own employees and Rule 30(b)(6) designees. ECF No. 190 § III(B), (C) (lack of support for fundamental alteration defense); *see also* ECF No. 111 § IV(E); ECF No. 143 § II(D)-(E).

The City argues that the only evidence Plaintiffs offer to establish the reasonableness of a 15-year rolling deadline is that that the State identified it and that it aligns with California's Tenant Protection Act,

---

[6]    Instead of repeating their arguments on these points for a fourth time, Plaintiffs refer the Court to their prior briefs, incorporated here by reference.

but this is incorrect. The position of the California Attorney General, and the decisions and statements of legislators in the analogous context of passing the Tenant Protection Act, were offered as further data points supporting the reasonableness of a 15-year rolling deadline (nor were these statements hearsay, because they were not offered for their truth, but to establish the legislators' state of mind). ECF No. 190 § II(C)(3). As Plaintiffs made very clear in their supplemental brief, the reasonableness of a 15-year rolling deadline is supported by the exact same undisputed factual evidence that supports bringing all existing units that were required to be accessible into the rent control Program at once. ECF No. 190 § II(C)(2).

The City next argues that adding later-built units that were required to be accessible would not be reasonable because it would upset "established expectations," but "[r]ent control, like the imposition of a new tax, is simply one of the usual hazards of the business enterprise." *Interstate Marina Dev. Co. v. Cnty. of Los Angeles*, 155 Cal. App. 3d 435, 447 (1984). The City seems to suggest that if a regime that discriminates against people with disabilities goes on for long enough, no change can be reasonable, but the ADA does not contain a special carve out for decades-long discrimination.

Finally, the City argues that Plaintiffs' proposed modification is not reasonable because it would "vastly shift" the Program's scope, but all aspects of the Program would "survive the requested relief intact, save one," *Fortyune*, 364 F.3d at 1084, namely the cutoff date for coverage, which Oakland itself has repeatedly expressed a desire to change. *See* ECF No. 190 § III(B)(2). The Court should find that Plaintiffs have established the reasonableness of **both** of their proposed methods for bringing units that should be accessible into the City's Program.

        2.    <u>Plaintiffs have shown that bringing newer units that should be accessible into the Program would be effective, and give them a meaningful opportunity to benefit from the protections of rent control.</u>

According to the City, a modification is only effective if it fully "solve[s] the problem," but this is not the standard. Rather, reasonable modifications need only "**improve** systemic accessibility," *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (emphasis added), or lead to a level of opportunity for people with disabilities that is "more equal" than the one currently available to them. ECF No. 190 § III(B)(4) at 13. While the City claims it is "prohibited" from offering accommodations that are less than perfect, all the cases it cites in support of this stand only for the proposition that entities cannot "satisfy [their] obligations under the ADA by providing an ineffective modification," when more effective

modifications were available. *E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1113 (9th Cir. 2010). Public entities are not relieved of the duty to "improve systemic accessibility" when it is reasonable to do so, even if those improvements do not lead to perfect parity. *Payan*, 11 F.4th at 738; *see also* ECF No. 190 § III(B)(4) at 13; ECF No. 143 § II(D)(3) at 15-16.

The chance that Plaintiffs and the class can find an accessible unit covered by the Program is currently zero, or close to it. ECF No. 190 § III(B)(4) at 12; *see also* ECF No. 152 (Order) at 7-8. If every existing rental unit in Oakland that was required to be accessible were added to the Program immediately—Plaintiffs' first proposed method for bringing in such units—that probability would increase to somewhere between 9% and 27%.[7] ECF No. 190 § III(B)(4) at 12. Adopting a "rolling" deadline for inclusion of such units would be even **more** effective over time, because it would continue to bring new units that were required to be accessible into the Program long after the deadline set by any one-time modification to the current cutoff date. *See* ECF No. 112-32 (Lapkoff Report) ¶¶ 70, 75, 75 n.5.

The City argues that the thousands of newer units in Oakland that were required to be accessible may not be fully compliant as built, but there is no genuine dispute that such units are likely to be far more accessible than any units currently covered by the Program. PSOF ¶ 30; *see also* ECF No. 111 § IV(E)(1) (discussing accessibility of newer units); ECF No. 143 § II(D)(3). Notably, the City offers no actual evidence of widespread as-built inaccessibility, and the two national surveys it relies on to support its argument say nothing about the specific set of units Plaintiffs seek to bring into the Program: multifamily rental housing in Oakland that was actually required to be accessible. ECF No. 62 (Class Cert. Reply) § II(D)(3); *see also* Declaration of Thomas Zito in Support of Plaintiffs' Supplemental Reply (Zito Decl.), Ex. OO (Lapkoff Rebuttal Report) at 2-7 (describing "concerns" over data relied upon by the City).[8]

      3.    <u>Plaintiffs' proposed modification is plainly necessary, because it will provide them with an opportunity to access the rent control Program that is "more akin" to the one</u>

---

[7] The City dismisses this as "a sliver of a chance of improvement," but as Plaintiffs have pointed out previously, there is an enormous real-world difference between a 27% chance—or even a 9% chance—and no chance at all. ECF No. 190 § III(B)(4). Moreover, this change would benefit Plaintiffs and the class in a way not captured by probabilities alone: as practical matter, every accessible rental unit in Oakland would be covered, meaning they would no longer be forced to choose between accessibility and rent control. *Id.*

[8] *See also* ECF No. 124-9 (Kowta Dep.) at 44:8-18, 46:19-49:9 (admitting flaws in AHS data), 55:17-21 (admitting that accessibility in other cities are not relevant).

nondisabled tenants have.

The City faults Plaintiffs for not making a "necessity" argument in their prior briefing, but Plaintiffs have consistently argued that bringing in later-built units is necessary to provide them with a meaningful opportunity to access City rent control. As the Court has already held, "a modification is necessary if, but for the modification, Plaintiffs would effectively be excluded from the benefit at issue." ECF No. 38 at 16. That is the case here. In the very first paragraph their motion, Plaintiffs note that units which were required to be accessible must be brought into the Program "**so that**, for the first time, Plaintiffs and the certified class of other people who need accessible housing can have a real opportunity to benefit from the Program's protections." ECF No. 111 at 1-2 (emphasis added). On reply, Plaintiffs argued that, "[i]f units that were subject to state and federal access laws when built are not added to Oakland's rent control Program, Plaintiffs and the class will remain completely excluded from the crucial protections against excessive rent increases and displacement that the Program provides." ECF No. 143 at 13; *see also id.* § II(D)(4) (arguing that City's proposed alternative accommodations were illusory).[9] Moreover, even if Plaintiffs had **not** affirmatively argued for the necessity of their proposed modification, the Court could still find for them on this element, on which the City moved. *See Albino v. Baca,* 747 F.3d 1162, 1176 (9th Cir.2014) (en banc) ("where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party.").

The City also argues that it is "Plaintiffs' burden to foreclose alternatives," but they do not cite to any caselaw in support of this proposition, and it is not a holding in any case Plaintiffs are aware of.[10] Even if this were the standard for "necessity," Plaintiffs have met it, because they have shown that none of the

---

[9]    "Necessity" is generally not analyzed as a discrete element in the disparate impact context, because it is subsumed into other elements: If Plaintiffs demonstrate that "a facially neutral government policy or practice has the effect of denying meaningful access to public services to people with disabilities," and that their proposed reasonable modification will remedy that disparate impact, the necessity of the modification is self-evident. *Payan*, 11 F.4th at 738-39 (articulating disparate impact standard and finding, without express consideration of necessity, that plaintiffs identified a college district's "facially neutral practice of operating its student web portal . . . as having a disparate impact on blind students" because it "denied students an equal opportunity to manage their education independently," which "could be remedied through reasonable modifications") (citation modified).

[10]    To the contrary, courts have held that they must consider whether a plaintiff's proposed modification that "seems reasonable on its face before turning to consider a defendant's objections and counterproposals." *Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F.3d 1259, 1269 (11th Cir. 2019) (citation modified).

supposed "alternative accommodations" the City suggests are viable and that none would provide them with a meaningful opportunity to benefit from City rent control. *See* § II(B), above.

The Court should reject the City's arguments and find that Plaintiffs' requested modification is necessary, because it would give Plaintiffs and others who need accessible housing an opportunity to access the rent control Program that is "**more akin** to that of [the] non-disabled." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012) (emphasis added); *see also* ECF No. 190 § III(B)(5).

  **E.**  <u>**Oakland's new administrative burden argument is baseless, speculative, and contradicted by stipulated facts.**</u>

The City argues that adding later-built units to the rent control Program would be administratively burdensome, but the Court should reject this argument for several reasons. First, this is the first time in seven years of litigation that the City has asserted an undue burden defense based on something other than the existence of Costa-Hawkins. *See* ECF No. 112-6, Interrogatory 22. Under Rule 37(c)(1), the City's new factual basis for this defense must be struck unless it is "substantially justified." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008). The City suggests, disingenuously, that it could not have asserted this defense earlier when Plaintiffs disclosed the "parameters" of their reasonable modification request for the first time at summary judgment, but this is false: Plaintiffs have been saying that newer units that were required to be accessible must be included in the rent control Program since before they filed this case. *See* ECF No. 143 at 7-9. The City's footnoted argument that Plaintiffs' proposed methods for bringing in such units are themselves subject to exclusion under Rule 37(c)(1) should be rejected, because Plaintiffs have consistently requested the same basic modification. ECF No. 143 at 7-9; *see also* ECF No. 141-1, Ex. A, Supp. Response 14. Even if they hadn't, supplementation isn't required if the information has "otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A).

 Second, the City's contentions that it would be difficult to figure out which units should be rent controlled and that it would be burdensome to modify its rent registry to add them are foreclosed by its prior stipulation[11] that if the Court determines that "some additional subset of residential rental units" should be

---

[11]  In addition to contradicting stipulated facts, this contention fails as a matter of logic. The applicable units could be determined by landlords answering three simple questions: 1) How many total units are in the building?; 2) When was it built?; and 3) Is there an elevator? *See* ECF No. 190 at 10 n.4; *see also* ECF No. 112-43 ¶ 1 (stipulating that rental property owners are responsible for entering data into registry).

covered by the rent control Program and added to its rent registry, "**there is no foreseeable reason**" those units could not be added. ECF No. 112-43 ¶ 8 (emphasis added); *see also* PSOF ¶ 42. Facts to which a party has stipulated are binding, conclusive, and not subject to subsequent variation. *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 676-77 (2010).

Third, the declaration of Emily Weinstein, on which Oakland relies to support this argument, consists largely of speculation regarding things that "may" happen, are "likely" to happen, or supposedly have a "good potential" of happening. ECF No. 195-1 ¶¶ 6-8. Such speculation cannot support summary judgment. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." (citation omitted)); *see also Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 846 (finding that a "reasonable speculation about the effect" that an accommodation might have did not support fundamental alteration defense).

Fourth, an undue administrative burden determination must be made by "the head of a public entity or his or her designee after considering all resources available for use . . . and must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.150(a)(3). Oakland has admitted it has no such document, and courts routinely reject undue burden defenses for this reason alone. *See* Zito Decl. at Ex. PP at 12-13 (no documents responsive to Plaintiffs' Request for Production 11); *see also Am. Council of Blind of New York, Inc. v. City of New York*, 495 F. Supp. 3d 211, 239 (S.D.N.Y. 2020) (declining to consider evidence of undue burden where no written statement and no prior evidence was produced); *Cropp v. Larimer Cnty.*, 941 F.3d 1237, 1240-41 (10th Cir. 2019) (defendant cannot support undue burden defense with deposition testimony in lieu of a written statement); *Whitfield v. City of Salinas*, No. C 05-03230 JF, 2006 WL 2529509, at *5 (N.D. Cal. Aug. 31, 2006) (declining to consider evidence of undue burden not presented in a written statement). Moreover, not just any burden is "undue"—a defendant must prove "significant difficulty or expense." *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 965 (9th Cir. 2019) (citing 28 C.F.R. § 36.303(a)); *see also* 28 C.F.R. § 36.104 (definition of undue burden).

## II.     CONCLUSION

The Court should find in Plaintiffs' favor on all issues, *see* ECF No. 190 § IV, so that Plaintiffs and the class can finally have a real opportunity to benefit from Oakland's rent control Program.

DATED: April 24, 2026                    DISABILITY RIGHTS ADVOCATES


By: _____
        Sean Betouliere
        Thomas Zito
        Emily Roznowski
        Raika Kim
        *Attorneys for Plaintiffs*


PUBLIC INTEREST LAW PROJECT


By: _____*/s/ Michael Rawson*_____
        Michael Rawson
        Craig Castellanet
        *Attorneys for Plaintiffs*

16                                    Case No. 4:19-cv-05398-JST

Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Summary Judgment