RYAN RICHARDSON, City Attorney – SBN 223548
MARIA BEE, Chief Assistant City Attorney – SBN 167716
KEVIN P. MCLAUGHLIN, Supervising Deputy City Attorney – SBN 251477
MICHAEL QUIRK, Deputy City Attorney – SBN 283351
One Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612
Telephone: (510) 238-2961 Fax: (510) 238-6500
Email: kmclaughlin@oaklandcityattorney.org
mquirk@oaklandcityattorney.org
X05020/3486528

Attorneys for Defendant
CITY OF OAKLAND

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

IAN SMITH, SUNDAY PARKER and MITCH JESERICH, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CITY OF OAKLAND, a public entity,

Defendant.

Case No. 4:19-cv-05398 JST

**DFENDANT CITY OF OAKLAND'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**

**Civ. L.R. 7-9(b)(3)**

## TABLE OF CONTENTS

Page(s)


I. INTRODUCTION ........ 5

II. ARGUMENT ........ 6

A. The Order Does Not Apply The Governing Rules, Which Is An Abuse Of Discretion And Manifest Error. ........ 6

B. The Rule 16 Good Cause Standard Cannot Be Satisfied. ........ 8

C. The Rule 15 Standard Cannot Be Satisfied. ........ 10

1. Amendment is unduly prejudicial. ........ 11

2. The amendment is unduly delayed. ........ 15

3. This case is not like other cases where leave to amend was permitted during or after summary judgment. ........ 16

III. CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Cases** Page(s)

*Acri v. Int'l Ass'n of Mach. & Aerospace Workers*,
781 F.2d 1393 (9th Cir. 1986) ....................15

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir. 1990) ....................14

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
465 F.3d 946 (9th Cir. 2006) ....................8, 14

*Ascon Props., Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) ....................13

*Brown v. Stored Value Cards, Inc.*,
953 F.3d 567 (9th Cir. 2020) ....................11

*Chudacoff v. Univ. Med. Ctr. of S. Nev.*,
649 F.3d 1143 (9th Cir. 2011) ....................16

*Cnty. of Mendocino v. Williams Comms.*,
No. C 05-4429 PJH, 2006 WL 1009029 (N.D. Cal. Apr. 18, 2006) ....................16

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ....................13

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ....................11

*Freeman v. Continental Gin Co.*,
381 F.2d 459 (5th Cir. 1967) ....................7

*Grisham v. Philip Morris, Inc.*,
670 F. Supp. 2d 1014 (C.D. Cal. 2009) ....................16

*Hartung v. Cae Newnes, Inc.*,
229 F. Supp. 2d 1093 (D. Or. 2002) ....................17

*Hartzell v. Marana Unif. Sch. Dist.*,
130 F.4th 722 (9th Cir. 2025) ....................13

*In re Twitter, Inc. Sec. Litig.*,
No. 16-cv-05314-JST, 2020 WL 4188787 (N.D. Cal. May 19, 2020) ....................8

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) ....................13, 15

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ....................8, 10

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir. 1994) ....................15

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
194 F.3d 980 (9th Cir. 1999) ....................14, 15

*M/V Am. Queen v. San Diego Marine Const. Corp.*,
708 F.2d 1483 (9th Cir. 1983) ....................14

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ....................14

*Nguyen v. U.S.*,
792 F.2d 1500 (9th Cir. 1986) ....................7

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ....................7

*Roberts v. Ariz. Bd. of Regents*,
661 F.2d 796 (9th Cir. 1981) ....................14

*Ross v. AT&T Mobility, LLC*,
No. 19-cv-06669-JST, 2020 WL 9848733 (N.D. Cal. Dec. 18, 2020)....................11

*S.E.C. v. Burns*,
614 F. Supp. 1360 (S.D. Cal. 1985)....................16

*Schlacter-Jones v. Gen. Tel. of Cal.*,
936 F.2d 435 (9th Cir. 1991) ....................14

*Shavelson v. Bonta*,
608 F. Supp. 3d 919 (N.D. Cal. 2022)....................8

*Slavkov v. Fast Water Heater Partners I, LP*,
No. 14–cv–04324–JST, 2015 WL 5071933 (N.D. Cal. Aug. 27, 2015) ....................11

*Solomon v. N. Am. Life & Cas. Ins. Co.*,
151 F.3d 1132 (9th Cir. 1998) ....................15

*Texaco, Inc. v. Ponsoldt*,
939 F.2d 794 (9th Cir. 1991) ....................15

*U.S. v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) ....................6, 7

*U.S. v. Sineneng-Smith*,
590 U.S. 371 (2020)....................12

*U.S. v. Webb*,
655 F.2d 977 (9th Cir. 1981) ....................7

*Williams v. Cal. Dep't of Corr. & Rehab.*,
No. 21-cv-09586-JST, 2026 WL 2325183 (N.D. Cal. Aug. 11, 2026) ....................11

*Wilson v. Safeway Inc.*,
No. 6:25-cv-00478-MTK, 2026 WL 1649775 (D. Or. June 8, 2026) ....................11

**Rules**

Federal Rule of Civil Procedure 15 .................... *passim*

Federal Rule of Civil Procedure 16 .................... *passim*

Civ. L.R. 7-9 .................... 5

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that Defendant City of Oakland hereby seeks leave to file a motion for reconsideration of the Court's September 23, 2026 Order Granting Summary Judgment to Defendant. (Dkt. 222.) The motion is premised upon "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b)(3). The motion is confined to the order's granting of leave to amend the complaint, which was done *sua sponte* and without opportunity for argument. In a meet-and-confer on September 30, 2026, Plaintiffs' counsel confirmed that they intend to amend the complaint. (Declaration of Kevin P. McLaughlin [McLaughlin Decl.], ¶ 3.)

## I. INTRODUCTION

When the Court *sua sponte* granted Plaintiffs leave to amend their complaint, it did not apply Rules 15 and 16, which govern leave to amend. The failure to consider the rules governing amendment of the complaint was an abuse of discretion and manifest error of law.

From day one, this case centered on a modification to the City of Oakland's rent control program that required the City to violate state law. The Court confirmed as much in denying CAA leave to intervene. (Dkt. 182 at 7:23-26.) Indeed, that was the focus even before the lawsuit was filed. For seven years, the parties had an exhaustive, expensive litigation over that modification.

This was a considered, strategic decision by Plaintiffs and their attorneys. There cannot be good cause to amend the scheduling order, which set June 2, 2023 as the deadline to amend the pleadings. (Dkt. 106.) No new facts have arisen which could support the amendment. Indeed, in their most recent briefs, and at the most recent hearing, Plaintiffs specifically argued that no other alternative could provide the class meaningful access to the City's rent control program. The only thing that has changed is that *the City* identified alternatives, which the Court held supported a finding of no preemption of the Costa Hawkins Act, and now the City's argument is being turned back against it.

Under Rule 15, undue prejudice to the defendant is the paramount consideration, and here it is massive and manifest. The prejudice to the City is more extreme than the undue prejudice described in a litany of Ninth Circuit opinions addressing the leave to amend standard.

Amendment after summary judgment here would require reopening fact and expert discovery, and essentially doing the whole case over. Beyond that, at the Court's suggestion, the City's argument is now being turned against it, a qualitatively different and more significant prejudice than the sort routinely found to constitute undue prejudice.

The City does not know what specific amendment Plaintiffs will file and cannot address futility (and because no motion for leave to amend was required, the City will not get to make that argument). But the delay is extreme and patently undue, and again, it is the product of Plaintiffs' *strategic choice*, not any change in facts or evidence. If Rule 15 standards were faithfully applied, leave to amend could not be granted here.

For these reasons, the City respectfully requests that the Court grant it leave to file this motion for reconsideration, and reconsider its *sua sponte* grant of leave to amend the complaint.

## II. ARGUMENT

### A. The Order Does Not Apply The Governing Rules, Which Is An Abuse Of Discretion And Manifest Error.

"[T]he first step of our abuse of discretion test is to determine *de novo* whether the trial court identified the correct legal rule to apply to the relief requested. If the trial court failed to do so, we must conclude it abused its discretion." *U.S. v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). Here, the district court, in *sua sponte* granting Plaintiffs leave to amend, did not apply either the Rule 16 good cause standard, or the Rule 15 standard governing amendments to complaints. The only standard invoked was the precept that a district court has discretion to grant leave to amend a complaint after the grant of summary judgment. (Dkt. 222 at 13 n. 5.) But this is not a rule governing the requirements by which leave to amend a complaint may be granted, and the Order apparently applies no rule at all. Under *Hinkson*, the City respectfully submits this is an abuse of discretion as a matter of law.

The second step of an abuse of discretion determination – if the correct legal rule were applied – is "whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1262 (cleaned up). "In other words, our abuse of discretion test

means that we do not automatically affirm a district court's factual finding if we decide it is 'permissible,' and we do not automatically reverse a district court's factual finding if we decide a 'mistake has been committed.' Rather, in either case, we will affirm a district court's factual finding unless that finding is illogical, implausible, or without support in inferences that may be drawn from the record." *Id*. at 1263.

Here, the Court did not apply applicable legal standards in granting Plaintiffs leave to amend the Complaint, and did not consider the factors governing amendment, and its decision to do so is not supported by the record of this case. This is an error of law, and constitutes an abuse of discretion. *See Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir. 2014) ("An abuse of discretion occurs when the district court, in making a discretionary ruling, relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them.") (citation and quotation omitted); *cf. U.S. v. Webb*, 655 F.2d 977,980 (9th Cir. 1981) ("In the absence of some statement of reasons or findings of fact showing bad faith or prejudice, we cannot determine whether it was an abuse of discretion to deny Webb's motion for leave to amend his pleadings.").

*Nguyen v. U.S.*, 792 F.2d 1500 (9th Cir. 1986), cited in the Order, makes clear that leave to amend a complaint after a grant of summary judgment requires application of Rule 15. *Id*. at 1503. That opinion did not address *whether* leave to amend after summary judgment was entered was an abuse of discretion. However, the Court of Appeals noted that once summary judgment is entered, it may negatively affect the district court's decision to grant leave to amend, as courts are ordinarily reluctant to allow leave to amend after summary judgment:

> Much of the value of summary judgment procedure in the cases for which it is appropriate… would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory.

*Id*. at 1503 (quoting *Freeman v. Continental Gin Co*., 381 F.2d 459 (5th Cir. 1967)). The district court was required to consider the Rule 15 (and Rule 16) criteria, something which did not happen here. This is a manifest error of law, and an abuse of discretion.

//

**B. The Rule 16 Good Cause Standard Cannot Be Satisfied.**

The Court entered a scheduling order requiring that any amendment to the complaint occur by June 2, 2023. (Dkt. 106.) Amendment of the complaint after the deadline set by a scheduling order requires application of Rule 16's good cause standard. The Order does not apply that standard.

> Requests to modify a scheduling order made after the Court has set a deadline for amending the pleadings are governed by Federal Rule of Civil Procedure 16. Rule 16 requires "good cause" and the consent of the Court to amend a scheduling order. Unlike Rule 15(a)'s liberal amendment policy, the good cause standard primarily considers the diligence of the party seeking the amendment. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted.

*In re Twitter, Inc. Sec. Litig.*, No. 16-cv-05314-JST, 2020 WL 4188787, at *3 (N.D. Cal. May 19, 2020) (citations and quotations omitted); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). This is a "more stringent" standard than Rule 15. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006).

As with *In re Twitter, Inc. Sec. Litig.*, there is no explanation for Plaintiffs' failure to amend the complaint earlier, and no diligence in seeking amendment. 2020 WL 4188787, at *4. This is because it was Plaintiffs' strategic choice from day one to pursue a specific modification: adding newer units to the City's rent control program, in violation of the Costa Hawkins Act. In fact, even *before* this lawsuit was filed, Plaintiffs sought a remedy that required the City to violate state law. (Dkt. 143-2 at 2-3.) The reasonableness of Plaintiffs' modification, its necessity, and whether it worked a fundamental alteration – the core issues of the case – all focused on a modification requiring violation of Costa Hawkins. The entire case has been litigated based on that modification. *Cf. Shavelson v. Bonta*, 608 F. Supp. 3d 919, 930 (N.D. Cal. 2022) ("It is almost as if the plaintiffs have proposed a new lawsuit in response to the motion to dismiss.").

In its order denying the California Apartment Association leave to intervene, the Court recounted all of the work that had already happened since 2019, including a settlement

conference, class certification, denial of the City's motion for judgment on the pleadings (and separate denial of its motion to dismiss), fact and expert discovery took place and closed, and cross-motions for summary judgment were resolved in part. (Dkt. 182 at 6:9-13.) Then, the Court held that "From the moment the complaint was filed in 2019, it has been clear that the relief Plaintiffs seek conflicts with the Costa-Hawkins provisions exempting new construction from local rent control programs and grandfathering in housing stock that was already exempt when Costa-Hawkins was passed…. In any conceivable sense, the question of whether the ADA preempts Costa-Hawkins under the Supremacy Clause was 'squarely raised' at the very beginning of this case." (*Id*. at 7:23-8:8.) As the Court noted, Plaintiffs identified the preemption issue again in opposing the City's motion to dismiss, and in December 2019 Plaintiffs provided a Notice of Constitutional Question regarding preemption to the California Attorney General. (*Id*. at 9-22.) "But that ADA preemption of Costa-Hawkins was a necessary issue in the case, and one that would likely require resolution, has been clear since its inception." (*Id*. at 8:25-27.)

That Plaintiffs' claims centered on adding units to the program in violation of Costa Hawkins, and that Plaintiffs eschewed any other option, was made plain many other times. The theory has always been that newer units must be added to the coverage of the Program, so that persons with mobility disabilities can have a "meaningful opportunity" to access rent control. Sworn interrogatory responses confirm this theory. (Dkt. 141-1, Ex. A at 8:16-10:8; Ex. B at 1:2-4:7.) Plaintiffs' expert Dr. Shelley Lapkoff's opinions are centered entirely on this theory. (*See, e.g.*, Dkt. 111-32.) The excluded work of defense expert Bryant Sparkman and plaintiff expert Dr. Mark Paul, and the *Daubert* motions pertaining to them, were also premised on this theory. Plaintiffs confirmed this was their theory in opposition to the City's motion to dismiss (Dkt. 23 at 18:3-24:17); confirmed it again in class certification (Dkt. 62 at 1:19-2:1); and sought summary judgment in their favor based on this theory in their first set of summary judgment briefs, and in the most recent set of summary judgment briefs. (Dkt. 111 at 21:11-25:22; Dkt. 143 at 7:14-20:23; Dkt. 190 at 2:1-25:13; Dkt. 201 at 1:1-15:27.)[1] Plaintiffs reconfirmed that this

[1] The City's briefing of every motion, and every step in discovery and settlement, has been premised on the same understanding of the nature of Plaintiffs' claim.

was *always* their theory in opposition to CAA's motion to intervene (Dkt. 173 at 2:25-3:20), and the whole issue of CAA's intervention (and the Attorney General's intervention) was premised on Plaintiffs' challenge to Costa Hawkins. The amicus briefs were addressed to the same theory. And the very extensive settlement efforts over several years were also premised on the claim raised at the outset that the City must add newer units to the Program in violation of state law.

Moreover, Plaintiffs consistently argued at summary judgment that their proposed modification was the *only way* for the class to obtain relief, and (described further below) that any other option was bound to fail. It is impossible to reconcile the about-face that is being proposed, and the City is unaware of any case that has allowed something like it.

As discussed below in the context of undue prejudice under Rule 15 – which is also a consideration under Rule 16 – cash-strapped Oakland has spent immense attorney time and substantial money defending against Plaintiffs' theory, and shaped its litigation strategy in response to that theory. Further, it is a theory in which the City had little stake: for seven years, the City was bootstrapped into a defense of the Costa Hawkins rent-control cut-off date, even though it is not a proponent of that law, because the City nonetheless must comply with both federal and state law. Plaintiffs' theory all along put the City at the center of a problem it did not create. That was *Plaintiffs' choice*.

There cannot be good cause to permit an amendment to change the entire theory of the case, where that theory was a deliberate choice, and no diligence exists and no new facts support the amendment, and where the amendment comes more than three years after the deadline ordered by the Court, and after summary judgment has been granted. Respectfully, it is an abuse of discretion and manifest error for the Court to fail to analyze Rule 16 and the lack of good cause for amendment.

**C. The Rule 15 Standard Cannot Be Satisfied.**

If a party shows good cause for a late amendment, then the party must demonstrate that amendment is proper under Rule 15. *Johnson*, 975 F.2d at 608. "The Court considers five factors in deciding a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended its complaint." *In re*

*Twitter, Inc. Sec. Litig.*, 2020 WL4188787, at *3 (citation omitted). "Of the *Forman* factors, prejudice to the opposing party carries the most weight." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citation omitted); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight.") (citations omitted).

**1. Amendment is unduly prejudicial.**

"Courts have frequently found undue prejudice where plaintiffs seek to add new claims or assert new theories of their case at a late stage in the litigation." *Wilson v. Safeway Inc.*, No. 6:25-cv-00478-MTK, 2026 WL 1649775, at *4 (D. Or. June 8, 2026) (citations omitted); *see also Slavkov v. Fast Water Heater Partners I, LP*, No. 14–cv–04324–JST, 2015 WL 5071933, at *3 (N.D. Cal. Aug. 27, 2015) ("Ninth Circuit case law indicates that a defendant may establish prejudice by demonstrating that a motion to amend was made after the cutoff date for such motions, or when discovery had closed or was about to close.") (citation and quotation omitted); *Williams v. Cal. Dep't of Corr. & Rehab.*, No. 21-cv-09586-JST, 2026 WL 2325183, at *4 (N.D. Cal. Aug. 11, 2026) ("To determine whether an amendment would prejudice a party, the court considers whether the amended complaint would greatly change the parties' positions in the action, and require the assertion of new defenses.") (cleaned up). "While caselaw supports that the time and expense of continued litigation on a new theory, with the possibility of additional discovery causes undue prejudice, the bulk of these cases involve plaintiffs who raise new theories on facts they were already aware of." *Ross v. AT&T Mobility, LLC*, No. 19-cv-06669-JST, 2020 WL 9848733, at *4 (N.D. Cal. Dec. 18, 2020) (cleaned up). This case is squarely part of that "bulk."

As illustrated by the mass of cases below, late amendment of the complaint to change the theory of the case is unduly prejudicial. In many of the cases cited, the amendment came earlier than it will here, and involved far less prejudice to the defendant.

In this case, using conservative approximations, the City has expended over 1,600 combined attorney and paralegal hours, dozens of City staff hours, and over $250,000 in hard costs.[2] (McLaughlin Decl., ¶ 4.) The case has been geared towards one specific type of relief

[2] That money, of course, could have been used for other programs. There is much critical work

throughout this time – a type of relief the City could never voluntarily give Plaintiffs. It was impossible for the City, despite its good faith towards tenants with mobility disabilities and desire to stay out of litigation, to avoid this lawsuit or settle it by agreeing to what Plaintiffs demanded, because the City cannot voluntarily violate state law – a position the Court has now confirmed was correct. And so the City has been dragged through this litigation, without any choice, all based on a theory that had no merit.

The sorts of amendments the Order seems to contemplate would require a re-opening of fact discovery, re-opening of expert discovery, likely new rounds of summary judgment briefing, and potentially additional settlement discussions, a trial, and an appeal.[3] (McLaughlin Decl., ¶ 6.) It is truly a whole new case.[4] Indeed, this would all be in pursuit of new modifications which Plaintiffs previously argued were inadequate, if not impossible – a full 180-turn in the case, and one essentially proposed by the Court, in contravention of the party-presentation principle. *See, e.g., U.S. v. Sineneng-Smith*, 590 U.S. 371, 375-80 (2020) (court cannot reshape the case on a theory different than the one the party advanced).

Leave to amend here involves a unique and particularly acute form of prejudice. In ***reliance*** on the fact that this case has always been a challenge to Costa Hawkins, and on the long-passed deadline to amend the pleadings, the City raised an argument against preemption that identified potential ways in which the ADA and Costa Hawkins can coexist. In response, Plaintiffs argued that these other options are "illusory" (Dkt. 143 at 16:11-24), entirely different programs (Dkt. 201 at 4:7-9), "fundamental alterations to municipal and state rent governance" (Dkt. 222 at 10:13-14), and that "none would provide Plaintiffs and the class with a meaningful opportunity to access City rent control" (Dkt. 201 at 3:23-24). The Order adopts the City's argument, recognizing there is no

for the City's Housing & Community Development Department staff to do in the midst of a local housing and homelessness crisis. Long-running litigation carries significant burdens for the public fisc, and resources are not bottomless – far from it.

[3] The Order recognizes these options "may have complex policy implications." (Dkt. 222 at 9:16.)

[4] In addition, the City has always disputed that Plaintiffs' theory states a viable disparate impact claim, and disputes the Court's finding that Plaintiffs were entitled to summary judgment on the prima facie element of a denial of meaningful access attributable to the rent control program (the only prima facie element that was disputed). Amendment at this juncture will force the City to litigate for years more, without any appellate review of these important issues.

inherent conflict between the two laws. But then, in an extraordinary step, the Court granted Plaintiffs leave to amend their theory of the case, so that they can pursue other proposals *which the City identified*. This turns the City's successful argument on summary judgment into a potential basis for liability.

It is the height of prejudice to allow amendment after summary judgment is granted so that concepts raised as a shield in a defense argument, can be explored for use as a sword of liability. This type of prejudice reaches far beyond the immense costs and delays inherent in changing the entire theory of the case seven years in. There is no suggestion of bad faith by Plaintiffs – they have not even sought leave to amend – but nonetheless, the City has been baited and switched. Plaintiffs should be estopped from changing their theory now.

A sampling of Ninth Circuit opinions affirming denials of late efforts to amend in less extreme circumstances, due to undue prejudice, follows:

- Amendment to "*advance different legal theories and require proof of different facts*" after a case has been "extensively litigated" is unduly prejudicial. "Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990) (cleaned up; emphasis added).

- "Mobil would suffer prejudice if Ascon were allowed to amend its complaint at this late date. Mobil has already incurred substantial litigation costs, which a more careful reading of RCRA by Ascon would have avoided. *To put Mobil through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would cause undue prejudice*." *Ascon Props., Inc. v. Mobil Oil Co*., 866 F.2d 1149, 1161 (9th Cir. 1989) (citations and quotation omitted; emphasis added).

- *"[G]ranting leave to amend would have prejudiced the District by negating its summary judgment victory* and potentially requiring another round of summary judgment briefing." *Hartzell v. Marana Unif. Sch. Dist*., 130 F.4th 722, 745 (9th Cir. 2025) (emphasis added).

- "Allowing Jeney, Gentile and Coleman to proceed with their disparate impact theory after the close of discovery would prejudice Quaker…. Moreover, granting the request to amend the complaint would likely have required reopening discovery so that Quaker could develop its evidence to prepare its defenses to this theory." *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1292-95 (9th Cir. 2000).

- "In the exercise of its discretion, the district court properly considered the delay in the desired amendment, the fact that there was a pending summary judgment motion, and the futility of most of the proposed claims. The timing of the motion, after the parties had conducted discovery and a pending summary judgment motion had been fully briefed,

weighs heavily against allowing leave. *A motion for leave to amend is not a vehicle to circumvent summary judgment.*" *Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991) (citations omitted; emphasis added).

- "We have held that a district court does not abuse its discretion in denying a motion to amend a complaint when the movant presented *no new facts but only new theories* and provided no satisfactory explanation for his failure to fully develop his contentions originally." *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (cleaned up; emphasis added).

- "In this case, however, the district judge was justified in exercising his discretion not to permit the amendment. The delay of nearly two years, while not alone enough to support denial, is nevertheless relevant. *The new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense*…. In light of the radical shift in direction posed by these claims, their tenuous nature, and the inordinate delay, we conclude that the district court did not clearly abuse its discretion in denying leave to amend." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation omitted; emphasis added).

- "Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was tainted, would have *unfairly imposed potentially high, additional litigation costs on Dialysist West that could have easily been avoided had AmerisourceBergen pursued its 'tainted product' theory in its original complaint or reply.*" *AmerisourceBergen Corp*., 465 F.3d at 953 (emphasis added).

- "In the present case the trial court relied on a number of factors in denying leave to amend. It found that there was a delay in making the motion of one and one-half years after the case was filed. No facts, newly discovered in that period, were alleged. The new allegations would totally alter the basis of the action, in that they covered different acts, employees and time periods necessitating additional discovery. Finally, a motion for summary judgment was pending and possible disposition of the case would be unduly delayed by granting the motion for leave to amend. These factors form the basis of a proper exercise of discretion by the trial court in refusing to allow amendment." *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (citations omitted).

- "Here the district court made a specific finding of prejudice to the opposing party, noting that the retaliatory discharge issue was raised at the eleventh hour, after discovery was virtually complete and the Board's motion for summary judgment was pending before the court. Based on the record before us, we cannot say that it was an abuse of the district court's discretion for it to refuse to permit Roberts to add the retaliatory discharge claim." *Roberts v. Ariz. Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981).

- "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (citation omitted).

- It was not an abuse of discretion to deny leave to amend "on the eve of the discovery deadline" which "would have required re-opening discovery, thus delaying the proceedings." *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998).

- "We have also noted that late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Mach. & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (citation omitted).

- *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (no abuse of discretion to deny leave to amend during summary judgment where trial was two months away, discovery was completed, and facts were known from the outset).

- *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th Cir. 1991) (denial of leave to amend affirmed where plaintiff sought leave to amend after discovery was over, four and a half months before the trial date, and after summary judgment had been granted).

The Order grants leave to amend without considering undue prejudice, and, respectfully, the failure to consider this requirement is an abuse of discretion and manifest error of law. If that requirement were considered, the prejudice to the City is immense, and exceeds that which is found prejudicial in controlling precedent.

**2. The amendment is unduly delayed.**

"Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388 (citations omitted). "Although delay is not a dispositive factor in the amendment analysis, it is relevant, especially when no reason is given for the delay. Lockheed's motion to amend came several months after the stipulated deadline for amending or supplementing the complaint. Nothing in the proposed amended complaint relied on facts that were unavailable before the stipulated deadline." *Lockheed Martin Corp.*, 194 F.3d at 986 (cleaned up).

All facts and theories here were known at the time the lawsuit was filed in 2019, or at whatever time Plaintiffs became aware there were other alternatives that could potentially provide relief, which was years ago. The City's Access Improvement Program is public-facing, and the City identified it in responses to written discovery in 2020 (Dkt. 112-6 at 15:3-5),[5] and in its

[5] Plaintiffs were also asked about whether they attempted to utilize the Access Improvement Program at their depositions in 2020. (McLaughlin Decl., ¶ 5.)

opposition to class certification in 2020 (Dkt. 54 at 3:23-4:2) – more than two years before the deadline to amend the complaint – as well as in its summary judgment briefing, and Plaintiffs took a 30(b)(6) deposition about it.

Plaintiffs never amended the complaint to pursue enhancement of the Access Improvement Program, or any other relief, because the whole case was always a challenge to Costa Hawkins. There was nothing learned late in the case that would have changed that. Amending *after summary judgment is granted*, based on facts and theories that were always available, is the archetype of undue delay. Respectfully, the Order's failure to consider this requirement is an abuse of discretion and manifest error of law.

**3. This case is not like other cases where leave to amend was permitted during or after summary judgment.**

Though rare, occasionally leave to amend is granted during or after summary judgment. When this happens, it involves no prejudice to the defendant, which is not the case here.

For example, in *Chudacoff v. Univ. Med. Ctr. of S. Nev*., 649 F.3d 1143, 1152 (9th Cir. 2011), leave to amend was granted after an order granting summary judgment was *reversed*, and a failure to reference section 1983 was a technicality, and the constitutional claims had been litigated as though properly pled. That is not like the contemplated amendment here, where summary judgment has not been reversed, and an entirely new and unlitigated theory is posited.

In *S.E.C. v. Burns*, 614 F. Supp. 1360, 1368 (S.D. Cal. 1985), the district court found no prejudice in allowing an amendment after summary judgment was granted, in order for the SEC to allege scienter in a securities fraud case. But the amendment did not alter the nature of the claim, or the relief sought by the plaintiff – it just filled in a missing element in the complaint. Similarly, in *Cnty. of Mendocino v. Williams Comms*., No. C 05-4429 PJH, 2006 WL 1009029 (N.D. Cal. Apr. 18, 2006), leave to amend in response to summary judgment was granted, because there was no prejudice to the defendant, and because the summary judgment motion was "filed before discovery had even begun[.]" *Id*. at *14.

In other instances, technical amendments are permitted during summary judgment briefing, which do not impact the arguments in the briefs. *See Grisham v. Philip Morris, Inc*., 670 F. Supp.

2d 1014, 1023 (C.D. Cal. 2009) (granting leave to amend during summary judgment, due to lack of prejudice); *Hartung v. Cae Newnes, Inc.*, 229 F. Supp. 2d 1093, 1096 (D. Or. 2002) ("Because the issues raised in Plaintiffs' Amended Complaint have been briefed fully by both sides for the purpose of the summary judgment analysis and the summary judgment record is otherwise complete, the Court deems Defendant's Motion for Summary Judgment as a Motion against the allegations in the Amended Complaint."). That is also not like the contemplated amendment in this case, which is after summary judgment, and changes the entire nature of a seven-year litigation.

## III. CONCLUSION

For the foregoing reasons, Defendant City of Oakland respectfully requests that the Court grant its motion for leave to file a motion for reconsideration of the Court's September 23, 2026 Order Granting Summary Judgment to Defendant, Dkt. 136.

Respectfully submitted,

Dated: October 7, 2026

RYAN RICHARDSON, City Attorney

By: /s/ Kevin P. McLaughlin
Kevin P. McLaughlin, Supervising Deputy City Attorney
Attorneys for Defendant
CITY OF OAKLAND