Sean Betouliere (CA BAR NO. 308645)
Disability Rights Advocates
455 Market St., Ste 1940
PMB 509115
San Francisco, CA, 94105
Tel: (510) 665-8644
Fax: (510) 665-8511
Email: sbetouliere@dralegal.org

Michael Rawson (CA BAR NO. 95868)
Craig Castellanet (CA BAR NO. 176054)
Public Interest Law Project
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel: (510) 891-9794
Fax: (510) 891-9727
Email: mrawson@pilpca.org

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IAN SMITH and MITCH JESERICH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, a public entity,<br><br>Defendant. | **Case No. 19-5398**<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION |

## TABLE OF CONTENTS

I. Introduction ........ 1

II. Legal Standard ........ 1

III. Argument ........ 2

A. The City waited until summary judgment to assert hypothetical "alternative" accommodations with no support in the record, leaving Plaintiffs with no opportunity to test the viability of those assertions. ........ 3

B. There has been no undue delay. ........ 6

C. There is no prejudice to the City. ........ 7

IV. Conclusion ........ 8

## TABLE OF AUTHORITIES

### Cases

*Alexander v. Choate*, 469 U.S. 287 (1985) .......... 7

*Bowles v. Reade*, 198 F.3d 752 (9th Cir. 1999) .......... 2, 6

*Cahill v. Insider Inc.*, 131 F.4th 933 (9th Cir. 2025) .......... 2

*cf. Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*, 870 F.3d 1140 (9th Cir. 2017) .......... 5

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) .......... 5

*Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014) .......... 1, 3

*Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990) .......... 7

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) .......... 2

*Montana Med. Ass'n v. Knudsen*, 119 F.4th 618 (9th Cir. 2024) .......... 4, 5

*Nguyen v. United States*, 792 F.2d 1500 (9th Cir. 1986) .......... 1

*United States v. Emmett*, 749 F.3d 817 (9th Cir. 2014) .......... 1, 2

### Rules

Fed. R. Civ. P. 15 .......... 8

## I. INTRODUCTION

The City's motion for reconsideration should be denied, because the decision to grant amendment is squarely within the Court's discretion, and mere **silence** regarding the applicable legal standard does not mean the wrong legal standard was used. On the contrary, "where a district court issues a discretionary decision without setting forth the legal standard it applied," the Ninth Circuit "will not presume that its decision rested on a misapprehension of the law." *United States v. Emmett*, 749 F.3d 817, 820 (9th Cir. 2014) (citation modified). Because there is no indication that the Court failed to consider the applicable standard before inviting amendment—and no possible prejudice, where amendment would be aimed only at exploring the viability of the City's own late-asserted and hypothetical "alternative" accommodations—the portion of this Court's order inviting amendment should stand. Alternatively, the Court should revise its summary judgment Order (ECF No. 222) to expressly find that there is both good cause for an amendment of Plaintiffs' complaint, and a lack of prejudice to the City.[1]

## II. LEGAL STANDARD

As this Court correctly noted in its Order, "granting leave to amend after summary judgment is allowed at the discretion of the trial court." *Nguyen v. United States*, 792 F.2d 1500, 1503 (9th Cir. 1986) (citation modified). The Ninth Circuit has also made clear that where a party raises a claim in summary judgment that was not raised in the pleadings, or "when issues are raised in opposition to a motion [for] summary judgment that were outside the scope of the complaint," this should be construed as a "request pursuant to Rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (citation modified) (finding that court erred, in not allowing for amendment at the summary judgment stage). The Federal Rules require leave to amend to be "freely given when justice so requires, and this policy is to be applied with **extreme liberality**." *Id.* (citation modified) (emphasis added).

A district court need not articulate any legal standard at all, when issuing a discretionary

[1] Plaintiffs have also brought their own motion for reconsideration of the Court's summary judgment order, which, if granted, may make this one moot. *See* ECF No. 226.

decision. *See Emmett*, 749 F.3d at 819–820 (finding no abuse of discretion, even where district court's order "did not articulate *any* discernable legal standard" or "cite any authority"). However, courts assessing the "propriety of a motion for leave to amend" take five factors into account: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Desertrain*, 754 F.3d at 1154 (citation modified). All five factors weigh in favor of the Court's *sua sponte* decision to allow amendment, here.

Additionally, when a party seeks to amend their complaint after the deadline set by a court's scheduling order, they must establish "good cause." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Id.* Because Plaintiffs did not affirmatively seek or move for amendment, it is doubtful that the "good cause" standard applies. Rather, that standard seeks to prevent the **parties** from "cavalierly" disregarding a court's scheduling orders, which would "undermine the court's ability to control its docket." *Id*. at 610-11. "A district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs," including "the authority to manage its dockets and courtrooms." *Cahill v. Insider Inc.*, 131 F.4th 933, 938 (9th Cir. 2025) (citation modified). The "good cause" standard was not intended to constrain courts in the exercise of this inherent authority, or to prevent them from *sua sponte* modifying their own set deadlines as they see fit. *See id*.

## III. ARGUMENT

The City has conceded that "bad faith" is not at issue, because Plaintiffs "have not even sought leave to amend"—rather, leave was granted *sua sponte* by the Court. ECF No. 224 at 13. The City similarly makes no argument that amendment would be futile, *id*. at 6, and there has been no previous amendment to Plaintiffs' complaint. Caselaw is also clear that "undue delay, by itself. . .is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) ("we have previously reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment."). This leaves prejudice to the City as the only possible factor that could weigh against inviting amendment or establish abuse of discretion by the Court. *See Desertrain*, 754

F.3d at 1154. The City cannot show such prejudice here, where amendment would be aimed solely at exploring the feasibility its own late-asserted and hypothetical "alternatives" to Plaintiffs' proposed reasonable modification.

**A. <u>The City waited until summary judgment to assert hypothetical "alternative" accommodations with no support in the record, leaving Plaintiffs with no opportunity to test the viability of those assertions.</u>**

At summary judgment, the City argued that Plaintiffs' proposed modification—changing the current January 1983 cutoff date for its rent control Program, to bring in later-built units that were required to be accessible when constructed—could not preempt conflicting provisions of the Costa-Hawkins Act in the context of this case, because there were hypothetical alternative accommodations available that would not conflict with that state law.

The first of these supposed alternatives—the Access Improvement Program—is one the Court found was "woefully inadequate" in its current form, and that the City's own witnesses conceded could not help Plaintiffs or class members seeking to move into one of the thousands of inaccessible units currently covered by Oakland's rent control Program. *See* ECF No. 222 (Order) at 8-9 (finding that the Access Improvement Program "has had a backlog of between six months to one year since at least 2020; has an income limit for renter applicants; requires landlords to agree to rigid tenancy restrictions; caps how much an access improvement can cost; and results in a miniscule number of actual improvements" each year); *see also* ECF No. 143 at 16 (detailing issues); ECF No. 143-5 at 23:21-24:3 (conceding that, because of construction timelines and other issues, a disabled renter looking for housing within the next month could not use the Access Improvement Program to install a ramp in a currently-inaccessible rental unit). However, based on the City's arguments about the viability of this supposed alternative accommodation, the Court found that an "expanded, better-funded, and more expedient version" of the Program, with "without income limits," could potentially be "sufficient to render Oakland's [rent adjustment Program] complaint with the ADA." ECF No. 222 at 9. There is, of course, no evidence in the record regarding what this hypothetical "expanded" Access Improvement Program would look like, or whether the City would actually be either willing or able to make the types of changes to it that might be necessary to provide Plaintiffs and the class with the meaningful access to the benefits of Oakland's separate rent control Program that federal law requires.

The second of the City's proposed alternatives, a "subsidy or credit" that "could be provided to disabled tenants in newer units, to make their rents equivalent to rent-controlled rent"—which was never mentioned in discovery, and raised for the first time in its supplemental summary judgment brief—was even more amorphous. The City's brief contains only a single sentence regarding this supposed alternative accommodation. *See* ECF No. 195 at 6. The City has offered no details regarding how its suggested "subsidy or rent credit" might work, how it would be funded or what the total available amount of funds would be, how Plaintiffs or class members would apply for it, or how the City would prevent landlords from raising rent on Plaintiffs and Class members by exorbitant amounts (with the knowledge that the City and its supposed "subsidy" Program has committed to cover the difference between that amount and what they could charge under the restrictions imposed by City rent control).[2] *See id.*; *see also* ECF No. 201 at 4 (noting vague and hypothetical nature of this "alternative").

The City's argument that its hypothetical alternative accommodations stand in the way of preemption, in the context of this case, is based on a profound misreading of *Montana Medical Ass'n v. Knudsen*, 119 F.4th 618, 624 (9th Cir. 2024). Contrary to the City's assertions, *Montana Medical* does not hold that plaintiffs must foreclose hypothetical and nonexistent "alternatives" in all obstacle preemption cases—particularly where, as here, there is nothing in the record to suggest that such alternatives would be feasible or effective. *Montana Medical* merely reaffirmed that preemption requires an **actual** conflict between state and federal law, "not merely a hypothetical or potential conflict," *id*. at 623, and held that because the plaintiffs in that case sought to invalidate a state law "across all health care settings," they had to meet the strict *Salerno* standard applicable to such facial challenges: that there was "**no set of circumstances**" in which a conflict would not exist. *Id*. at 623-624 (emphasis added); *see also id.* at 625-27 (finding no preemption, because plaintiffs had only provided evidence at trial of "hypothetical situation[s]" in which compliance with the state law "might" conflict with the ADA, and did not establish that it would actually "lead to ADA violations in any or all cases").

This case, of course, has never been a facial challenge to Costa-Hawkins—as the City itself has

---

[2] As the Court correctly noted in its order, such a subsidy would almost certainly "adversely incentivize landlords to raise rents excessively as the government foots the bill for rent increases." ECF No. 222 at 9.

acknowledged. *See* ECF No. 141 (City Mot.) at 22 (noting that Plaintiffs contend that parts of the Costa-Hawkins must be preempted "**as the Act applies** to Oakland" and its rent control Program) (emphasis added); *see also, e.g.*, ECF No. 143 (Pls.' Reply) at 19 (discussing preemption "under the circumstances of this particular case"); ECF No. 190 (Pls.' Supp. Brief) at 22-24 (same); ECF No. 201 (Pls.' Supp. Reply) at 1-3 (same). Because Plaintiffs did not bring a facial challenge—meaning that their case would only implicate enforcement of sections 1954.52(a)(1) and (2) Costa-Hawkins against the City of Oakland and its rent control Program going forward (and not against unspecified "third parties")—the "no set of circumstances" standard articulated in *Salerno* and applied in *Montana Medical* has no bearing on this case. *See Montana Med.*, 119 F.4th at 623-24. Instead, Plaintiffs should only have been required to show that "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" "**under the circumstances of [this] particular case**." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (emphasis added) (citation modified); *cf. Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140, 1149 n. 5 (9th Cir. 2017) (finding no preemption, where there was no dispute that non-conflicting alternatives actually existed and were available). And here, the City itself concedes that of sections 1954.52(a)(1) and (2) Costa Hawkins would conflict with any effort to include later-built units that were required to be accessible in its existing rent control Program, which is the only way of providing Plaintiffs with meaningful access to the protections of Oakland's rent control Program that is supported by the record in this case. *See* ECF 111 at § IV(E), ECF No. 143 at § II(D), ECF No. 190 at § III(B)

Because the Court—following the City's misreading of the relevant cases—applied the strict facial challenge standard used in *Salerno* and *Montana Medical* to this as-applied case, and credited the City's arguments about hypothetical alternatives that had no evidentiary support in the record, Plaintiffs have brought their own request for reconsideration of its summary judgment order. *See* ECF No. 226. However, if the Court does not reconsider its holding that a somehow-revised and expanded Access Improvement Program or an entirely new and currently-nonexistent "subsidy" program can stand in the way of preemption, here, Plaintiffs should have an opportunity to explore what those vague and hypothetical "alternative" accommodations —raised for the first time at the summary judgment stage—would actually entail, and whether the City is willing or able to implement either one in a way that

would provide Plaintiffs with the meaningful access to the benefit of its rent control Program that federal law requires.

**B. <u>There has been no undue delay.</u>**

As noted above, "undue delay, by itself. . .is insufficient to justify denying a motion to amend." *Bowles*, 198 F.3d at 758. However, there has been no undue delay here because Plaintiffs could not have anticipated, in advance of its summary judgment briefing, that the City would propose an expanded Access Improvement Program or a wholly-new "subsidy" program as ways of providing Plaintiffs and the class with meaningful access to the protections provided by City rent control.

The record in this case showed that the City had historically funded its Access Improvement Program in such a way that it led to between 0 and 6 completed projects per year. *See* ECF No. 143 at 16; ECF 143-5 at 31:7-34:14 (Access Improvement Program funded at $400,000 per year as of 2024, and has historically led to between 0 and 6 completed projects per year). Even setting aside the other issues that make the current Access Improvement Program "woefully inadequate" to address Plaintiffs' lack of access to City rent control, *see* ECF No. 222 at 8-9, there was nothing in the record to indicate that the City of Oakland could somehow expand the funding for the Access Improvement Program in a way that would (instead of providing access improvements in fewer than 6 units per year) allow it to address barriers in the **tens of thousands** of inaccessible units currently covered by the rent control Program, so as to provide meaningful access to the protections of City rent control for the thousands of people in the certified class.[3] *See* ECF No. 152 at 1, 7-8 (finding that most rental units in Oakland are covered by rent control, and that there is no dispute that between 92.9 and 100% of those covered units are inaccessible); *see also* ECF No. 111 § II (PSOF) at ¶ 2 (rent control Program applies to tens of thousands of City units), ¶¶ 8-12 (inaccessibility of current units subject to the Program); ¶ 23 (thousands of class members).

Despite this, and contrary to all evidence actually in the record, the City argued for the first time

---

[3] This is particularly true because the City's resources are, by its own description, "far from" bottomless. *See* ECF No. 224 at 11 n. 2; *see also* City of Oakland, *Five-Year Financial Forecast: Fiscal Year 2025-26 to 2029-30* at 6-13 (May 27, 2025), https://oakland.legistar.com/View.ashx?M=F&ID=14252305&GUID=40EC09E7-1A2B-4ACF-95F7-883F10C4D820 (projecting revenue shortfalls in excess of $100 million per year, through 2030).

at summary judgment that a vaguely-revised or expanded version of the Access Improvement Program could somehow provide Plaintiffs and the class with a meaningful opportunity to benefit from the protections of City rent control, as federal law requires. Because Plaintiffs could not have anticipated this contrafactual and late-asserted argument, they did not engage in undue delay by not seeking to amend their complaint and explore the viability of this supposed alternative sooner. It was the City's belated contention that precipitated any delay.

Similarly, Plaintiffs did not engage in undue delay by not addressing the City's newly-proposed "subsidy" program specifically for people with disabilities—which was raised for the first time in its supplemental summary judgment brief—at an earlier point in this litigation. Because federal law only requires that the "same benefit" offered to others be made "equally accessible" to people with disabilities, *Alexander v. Choate*, 469 U.S. 287, 308–09 (1985), Plaintiffs ordinarily would not be entitled to a separate "subsidy or credit" that no one else gets and could not originally have asked for the creation of a new subsidy program, specifically for members of the class, as a reasonable accommodation. *See* ECF No. 201 at 4 (pointing out that this would be an "entirely new and separate program"). However, in support of its argument that its vague suggested subsidy is a real alternative to Plaintiffs' proposed modification, the City has taken the position that it could be "part and parcel" of its existing rent control Program. *See* ECF No. 226-2 (May 28, 2026 Hearing Transcript) at 20:25-21:9. Plaintiffs could not have anticipated that the City would propose such a program—or concede that it could somehow be "part and parcel" of the existing City rent control Program to which Plaintiffs seek meaningful access—and thus did not engage in undue delay by not seeking amendment to explore the feasibility of this proposed "alternative" at an earlier point.

**C. <u>There is no prejudice to the City.</u>**

The City cites a number of cases for the proposition that amendment at or following the summary judgment stage is prejudicial, but these cases generally involve 1) an affirmative plaintiff motion, 2) an effort to assert entirely new claims, and 3) extensive additional discovery. *See, e.g.*, *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990). Here, leave to amend was granted *sua sponte*, and an amended complaint would not assert any new claims. Rather, it would seek only to explore whether Oakland's own late-asserted and hypothetical "alternative" accommodations are

actually feasible and would provide Plaintiffs with the meaningful access to the benefit of City rent control that federal disability rights laws require.

Contrary to Oakland's assertions, amendment to address its late-asserted "alternatives" would not lead to a wholesale "reopening of fact and expert discovery," or entail "essentially doing the whole case over." On the contrary, the only discovery that would be necessary would be limited fact discovery into how exactly the City envisions that each of these supposed alternatives would work, and what it would be able or willing to do to implement them—followed by limited additional briefing or an evidentiary hearing regarding whether those alternatives would actually be effective.

The City claims that it would be prejudiced if its hypothetical alternatives, "raised as a shield in a defense argument," could be "explored for use as a sword of liability," but it is in fact the reverse that is true: the City should not be permitted to invoke currently-imaginary alternatives as a "shield" against liability, at the eleventh hour, and then to resist any exploration of whether those imaginary proposed alternatives are actually viable. In this context, justice requires that Plaintiffs be given an opportunity to amend their complaint, and to conduct limited discovery on Oakland's late-asserted alternatives. *See* Fed. R. Civ. P. 15. And if Oakland genuinely believes that either of its proposed "alternative" options could provide Plaintiffs with meaningful access to the benefit of the rent control Program, without conflicting with Costa-Hawkins, it should welcome an opportunity to show that this is actually so.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court should deny the City's motion for reconsideration. Alternatively (if the Court does not grant Plaintiffs' own pending motion for reconsideration, ECF No. 226) the Court should revise its summary judgment Order (ECF No. 222) to expressly find that there is both good cause for an amendment of Plaintiffs' complaint, and a lack of prejudice to the City.

DATED: October 29, 2026 DISABILITY RIGHTS ADVOCATES

By: ______________________

Sean Betouliere
Attorneys for Plaintiffs